USDC APPEAL: 3:21-cv-01130-MPS
Consolidated with USDC APPEAL: 3:21-cv-01130-MPS

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In re HAROLD E. COLE, Debtor

HAROLD COLE, APPELLANT

v.

KARA S. RESCIA, CHAPTER 7 TRUSTEE
OF THE BANKRUPTCY ESTATE OF HAROLD E. COLE, APPELLEE

Appeal from the United States Bankruptcy Court
Bankruptcy Case No. 10-50091 (JAM)

APPELLEE'S BRIEF

KARA S. RESCIA, TRUSTEE
FOR THE BANKRUPTCY ESTATE
OF HAROLD E. COLE

BY HER COUNSEL,

By:/s/ Paige M. Vaillancourt
Paige M. Vaillancourt, Esq. CT30742
Kara S. Rescia, Esq. CT18001
Rescia Law, P.C.
5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Email: kara@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388

1

# **TABLE OF CONTENTS**

Table of Contents ..................................................................... 2

Table of Authorities .................................................................. 4

Jurisdictional Statement ............................................................ 8

Statement of Issues................................................................... 8

Standards of Review ................................................................. 9

Statement of Background........................................................... 10

Summary of Arguments............................................................. 12

Arguments ............................................................................... 13

  I.  Appellant did not have standing to file motions challenging the administration of the bankruptcy estate or appeal the Orders on the Motions........................................................................... 13

  II. Appellant was collaterally estopped from raising issues previously heard and overruled by final orders of the Bankruptcy Court.................................................................................. 17

    a. Appellee sold the property known as 35 Joshua Hill Road, Woodbury, Connecticut in accordance with final orders ............... 20

    b. Appellee sold the Ramase Assets in accordance with final orders.. 21

    c. Appellee sold the antique collections through qualified professionals in accordance with final orders.................................. 26

    d. Appellee did not sell exempt household furnishings...................... 30

  III.The Bankruptcy Court properly exercised its discretion to deny the Motions without evidentiary hearings............................................. 31

    a. Standard for removal of a trustee.................................................... 32

b.  Standard for leave to sue a trustee ................................................... 34

IV. Trustee did not have a conflict of interest with the bankruptcy estate . 39

V. Appellant raises new issues which should not be considered............... 41

a.  Appellee compromised the bankruptcy estate's interest in real estate located at 228 Main Street, Wiscasset, Maine in accordance with final orders ............................................................ 42

b.  Appellee's administration of the bankruptcy estate did not cause Appellant to default on his mortgage for the real estate located at 27 Middle Quarter Road, Woodbury, Connecticut ......... 42

c.  The bankruptcy estate never held funds sufficient to pay the accrued taxes on the Bacon Pond Road and North Main Street lots ...................................................................................................... 43

d.  Appellee did not knowingly make any misrepresentation to or bribe the Bankruptcy Court ............................................................... 45

e.  The Bankruptcy Court was not unfairly adverse to Appellant ........ 45

Conclusion ...................................................................................................... 46

Certificate of Compliance .............................................................................. 48

Certificate of Service ...................................................................................... 49

# TABLE OF AUTHORITIES

## CASES

*In re Acadiana Electrical Serv.*,
  66 Bankr. 164 (Bankr. W.D. La. 1986) ................................................... 32

*In re AFI Holding, Inc.*,
  530 F.3d 832 (9th Cir. 2008) .................................................................. 33

*Baker v. Seeber (In re Baker)*,
  38 Bankr. 705 (D. Md. 1983) .................................................................. 33

*Barton v. Barbour*,
  104 U.S. 126 (1881)................................................................................. 34

*In re Beck Indus., Inc.*,
  725 F.2d 880 (2d Cir. 1984) .................................................................... 10

*In re Bernard L. Madoff Inv. Sec. LLC*,
  440 B.R. 282 (Bankr. S.D.N.Y. 2010)................................................ 35, 36

*In re BH & P, Inc.*,
  103 Bankr. 556 (Bankr. D. N.J. 1989)...................................................... 32

*In re Center Teleproductions, Inc.*,
  112 B.R. 567 (Bankr. S.D.N.Y. 1990)................................. 34–35, 35, 36

*In re Charter Communications, Inc.*,
  691 F.3d 476 (2d Cir. 2012) ...................................................................... 9

*In re Cult Awareness Network, Inc.*,
  151 F.3d 605 (7th Cir. 1998) ................................................. 9, 13, 13–14

*In re DeLorean Motor Co.*,
  991 F.2d 1236 (6th Cir. 1993) .......................................................... 34, 37

*Matter of Freeport Italian Bakery, Inc.*,
  340 F.2d 50 (2d Cir. 1965) ............................................................... 32–33

*Grant v. Banks (In re McKenzie)*,
    716 F.3d 404 (6th Cir. 2013) ................................................................. 10

*Gross v. Rell*,
    695 F.3d 211 (2d Cir. 2012) .................................................................. 35

*Gross v. Russo (Matter of Russo)*,
    18 Bankr. 257 (Bankr. E.D.N.Y. 1982) .................................................. 33

*In re Haugen Constr. Serv., Inc.*,
    104 Bankr. 233 (Bankr. D. N.D. 1989) ............................................. 32, 33

*Matter of Island Amusement, Inc.*,
    74 Bankr. 18 (Bankr. D. P.R. 1987) ....................................................... 32

*Lafleur v. Whitman*,
    300 F.3d 256 (2d Cir. 2002) .................................................................. 18

*Lowenbraun v. Canary (In re Lowenbraun)*,
    453 F.3d 314 (6th Cir. 2002) ..................................................... 35–36, 37

*In re Lundborg*,
    110 B.R. 106 (Bankr. D. Conn. 1990) ................................... 32, 33, 39–40

*In re M & S Grading, Inc.*,
    541 F.3d 859 (8th Cir. 2008) ................................................................. 33

*Maiman v. Spizz (In re Ampal-American Israel Corp.)*,
    554 B.R. 604 (S.D.N.Y. 2016) ................................................................ 9

*In re Miller*,
    302 B.R. 705 (B.A.P. 10th Cir. 2003) ................................................. 9, 10

*In re Mira-Pak, Inc.*,
    72 Bankr. 430 (Bankr. S.D. Tex. 1987) ................................................. 32

*In re Nathurst*,
    207 B.R. 755 (Bankr. M.D. Fla. 1997) .................................................. 34

*In re Paolino*,
   80 Bankr. 341 (Bankr. E.D. Pa. 1987) ...................................................... 32

*Purdy v. Zeldes*,
   337 F.3d 253 (2d Cir. 2003) ................................................. 9, 17, 17–18

*In re Regan*,
   403 B.R. 614 (B.A.P. 8th Cir. 2009) ......................................................... 9

*Matter of Schoen Enter., Inc.*,
   76 Bankr. 203 (Bankr. M.D. Fla. 1987) .................................................. 32

*In re Smith*,
   400 B.R. 370 (Bankr. E.D.N.Y. 2009) .................................................... 35

*Spenlinhauer v. O'Donell*,
   261 F.3d 113 (1st Cir. 2000) .................................................................. 14

*United States ex rel. People's Banking Co. v. Derryberry (In re Hartley)*,
   50 Bankr. 852 (Bankr. N.D. Ohio 1985) ........................................... 32–33

*In re Vargas Realty Enterprises, Inc.*,
   440 B.R. 224 (S.D.N.Y. 2010) ............................................................... 41

*In re Vistacare Grp., LLC*,
   678 F.3d 218 (3rd Cir. 2012) ..................... 9–10, 10, 34, 36–37, 37, 37–38

## STATUTES

11 U.S.C. § 324(a) ........................................................................................ 32

11 U.S.C. § 541 ............................................................................................ 21

11 U.S.C. § 704(a)(1) ................................................................................... 21

11 U.S.C. § 721 ............................................................................................ 21

28 U.S.C. § 157(b)(1) ..................................................................................... 8

28 U.S.C. § 157(b)(2)(A) ............................................................................... 8

28 U.S.C. § 158(a)(1) ........................................................................... 8

28 U.S.C. § 959(a) ............................................................................. 36

28 U.S.C. § 1334 ................................................................................ 8

**RULES**

Fed. R. Bankr. P. 8002 ....................................................................... 8

Fed. R. Bankr. P. 8003 ....................................................................... 8

**OTHER AUTHORITIES**

Handbook for Chapter 7 Trustees,
    U.S. Department of Justice,
    Executive Office for United States Trustees (2012) ......................... 39, 40

## JURISDICTIONAL STATEMENT

Kara S. Rescia, Chapter 7 Trustee for the Bankruptcy Estate of Harold E. Cole ("Appellee") hereby submits this Appellee's Brief regarding the consolidated appeals of the Debtor Harold E. Cole ("Appellant") of the orders denying Appellant's Third Amended Motion to Remove Trustee ("Motion to Remove") (Doc. Id. 1246) and denying Appellant's Motion for Leave of Court to File Amended Civil Action ("Motion for Leave") (Doc. Id. 1247) (together, the "Orders") entered on August 11, 2021 by Judge Julie A. Manning in Case Number 10-50091 (JAM).

The bankruptcy court has jurisdiction in the underlying case pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), and 1334. This Court has jurisdiction over the instant appeal of the Orders pursuant to 28 U.S.C. § 158(a)(1). Appellant filed his Notices of Appeal on August 23, 2021 (Doc. Ids. 1252 and 1253) pursuant to Fed. R. Bankr. P. 8002 and 8003.

## STATEMENT OF ISSUES

1. Did the Appellant have standing to file the Motion to Remove or the Motion for Leave and by extension to appeal the Orders on the Motions?

2. Was Appellant collaterally estopped from raising issues in the Motion to Remove or the Motion for Leave that were the subject of final orders entered by the Bankruptcy Court?

3. Did the Bankruptcy Court abuse its discretion by denying Appellant's

requests for evidentiary hearings on the Motion to Remove or Motion for Leave?

4. Did the Bankruptcy Court abuse its discretion by finding the Trustee did not have a conflict of interest with the bankruptcy estate?

## STANDARDS OF REVIEW

"Generally, in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*." *In re Charter Communications, Inc.*, 691 F.3d 476, 482–83 (2d Cir. 2012). This is the appropriate standard for questions regarding Appellant's standing, *see In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998), and collateral estoppel, *see Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003).

"Removal of a trustee is a matter committed to the sound discretion of the bankruptcy court." *In re Miller*, 302 B.R. 705, 708 (B.A.P. 10th Cir. 2003) (citing *In re BH & P, Inc.*, 949 F.2d 1300, 1313) (3rd Cir. 1991) (additional citations omitted)); *see also In re Regan*, 403 B.R. 614, 620 (B.A.P. 8th Cir. 2009) ("The decision to deny a motion to remove a trustee is reviewed for an abuse of discretion."); *Maiman v. Spizz (In re Ampal-American Israel Corp.)*, 554 B.R. 604 (S.D.N.Y. 2016) ("A bankruptcy court's denial of a motion to remove the trustee under 11 U.S.C. § 324(a) is reviewed for abuse of discretion.") (citation omitted). Likewise, "a bankruptcy court's decision to grant a motion for leave to sue a trustee

9

[is reviewed] under the deferential abuse of discretion standard." *In re Vistacare Grp*., LLC, 678 F.3d 218, 224 (3rd Cir. 2012) (citing *In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998)); *In re Beck Indus., Inc.*, 725 F.2d 880, 889 (2d Cir. 1984)); *see also Grant v. Banks (In re McKenzie)*, 716 F.3d 404, 422 (6th Cir. 2013) (citing *In re Linton*, 136 F.3d at 546; *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886 (B.A.P. 9th Cir. 1995)).

> Reviewing courts should accord significant deference to the determinations of the bankruptcy court, which, given its familiarity with the underlying facts and the parties, is uniquely situated to determine whether a claim against the trustee has merit. The bankruptcy court is also uniquely situated to determine the potential effect of a judgement against the trustee on the debtor's estate.

*In re Vistacare Grp*., LLC, 678 F.3d at 233.

> Under the abuse of discretion standard a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When [the appellate court] appl[ies] the 'abuse of discretion' standard, [it] defer[s] to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

*In re Miller*, 302 B.R. at 708–09 (citations omitted). Accordingly, the appropriate standard of review for questions concerning the Bankruptcy Court's denial of the Motion to Remove and the Motion for Leave is abuse of discretion.

## STATEMENT OF BACKGROUND

On January 12, 2010, Appellant filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On February 5, 2015, upon

motion of a creditor to dismiss or convert after Appellant's failure to make plan payments (Doc. Id. 469), the case was converted to Chapter 7 and Appellee was duly appointed the Chapter 7 Trustee (Doc. Id. 494). Appellant has been represented by counsel throughout the administration of this bankruptcy estate. An extensive summary of the facts leading to the filing of the case and the procedural history thereafter was set forth by the Bankruptcy Court at the hearing held on December 1, 2020 (Transcript of December 1, 2020 Hearing at 3–19) and in the Order entered by the Bankruptcy Court on April 26, 2021 (Doc. Id. 1224 at 2–3). The undersigned respectfully requests that this Court take judicial notice of the facts and procedural history of the case as detailed therein.

Appellant filed the Motion to Remove on January 21, 2021 (Doc. Id. 1186) and the Amended Motion for Leave on April 5, 2021 (Doc. Id. 1216) (together, the "Motions"), as well as a Memorandum of Law on January 29, 2021 ("Memorandum of Law") (Doc. Id. 1187) briefing the issue of Appellant's standing as required by the Bankruptcy Court. Appellee filed her Objection to the Motion to Remove and Response to Memorandum of Law on February 10, 2021 ("Objection and Response") (Doc. Id. 1190) and her Objection to the Motion for Leave on July 16, 2021 (Doc. Id. 1237). The Objection and Response sets forth relevant factual and procedural background, including the orders of the Bankruptcy Court directing and approving the actions of Appellee and her professionals after hearings held

11

throughout the case over the oral and written objections of Appellant. Appellant did not appeal any of those orders. The Objection to the Motion for Leave describes the legal insufficiency of the Motion for Leave and lack of basis for the relief sought. The United States Trustee filed a response to the Motion to Remove in support of Appellee on February 2, 2021 (Doc. Id. 1188). On August 10, 2021, the Bankruptcy Court held a hearing on the Motions and denied Appellant relief for reasons set forth in the hearing. Transcript of August 10, 2021 Hearing at 49–51. The Bankruptcy Court thereafter entered the Orders that are the subjects of this appeal.

## <u>SUMMARY OF ARGUMENTS</u>

As a threshold matter, Appellant did not have standing to file the Motions. The bankruptcy estate does not have a surplus of funds available after all creditors are paid in full. Therefore, Appellant does not have a pecuniary interest in the bankruptcy estate and has no standing to intervene in its administration nor appeal orders concerning its administration. Second, the Bankruptcy Court entered numerous orders over the objections of Appellant after hearings held that addressed the issues raised in the Motions. Appellant was therefore collaterally estopped from attempting to relitigate those issues through the Motions. Third, it was within the sound discretion of the Bankruptcy Court to decide whether to hold an evidentiary hearing on the Motions given the nature of the Motions and that Appellant failed to prove a prime facie case. Additionally, the bankruptcy estate does not have a cause

of action against Appellee and therefore no conflict of interest exists which would necessitate Appellee to vacate her position as trustee. Finally, Appellant should not be allowed to raise new issues on appeal as neither of the two exceptions to the general rule against such consideration apply. The Bankruptcy Court is intimately familiar with the substantial history and docket of the case, including the actions of all parties. It thoroughly considered all facts and arguments before it. Accordingly, the Orders should stand.

## **ARGUMENTS**

I.   <u>APPELLANT DID NOT HAVE STANDING TO FILE MOTIONS CHALLENGING THE ADMINISTRATION OF THE BANKRUPTCY ESTATE OR APPEAL THE ORDERS ON THE MOTIONS</u>

As a preliminary matter, Appellant lacked standing to file motions challenging the administration of the bankruptcy estate. By extension, Appellant therefore lacked standing to appeal orders entered concerning the administration of the bankruptcy estate. Appellant recites a portion of the legal standard for debtor standing (Appellant's Brief at 15), which Appellee articulated in her Objection to Debtor's Second Amended Motion for Specific Accounting from Bankruptcy Trustee filed on August 31, 2020 (Doc. Id. 1101 at 5) and rearticulated in her Objection and Response (Doc. Id. 1190 at 19–20). However, Appellant omits key aspects of this standard.

"Bankruptcy standing is narrower than Article III standing." *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998). If there is not a surplus

available to the estate after all creditors are paid in full, a debtor has limited standing given that a Chapter 7 trustee is the legal representative of the estate charged with its administration. *See id.* at 608. "Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of the property." *Spenlinhauer v. O'Donell*, 261 F.3d 113, 118 (1st Cir. 2000) (citations omitted). Without that pecuniary interest, a chapter 7 debtor is not a person aggrieved and lacks any standing regarding the disposition of estate assets. *Id.*[1] Likewise,

> [u]nder the Bankruptcy Code, standing to appeal from a final bankruptcy court order is accorded only to a 'person aggrieved.' The 'person aggrieved' paradigm, which delimits appellate jurisdiction even more stringently than the doctrine of Article III standing, bestows standing only where the challenged order directly and adversely affects an appellant's pecuniary interests.

*Id.* at 117 (internal citations omitted). "As in other jurisdictional contexts, of course, the party asserting appellate jurisdiction—here, the chapter 7 debtor—bears the burden." *Id.* at 118 (citations omitted).

The Bankruptcy Court provided Appellant with an opportunity to brief the issue of debtor standing. Appellant filed his Memorandum of Law purporting to

---

[1] Appellant has been aware of this standard throughout the case. *See* Transcript of August 10, 2021 Hearing at 11 ("[A]s we've discussed in prior hearings, the case law is very clear that in a Chapter 7 case, a debtor doesn't have standing to raise issues unless there is going to be some surplus from the estate, and we've had this discussion on several occasions, including back to when Mr. Berillo [sic] represented Mr. Cole, before Ms. Heminway was involved.").

address it (Doc. Id. 1187). The Bankruptcy Court found in the Order entered April 26, 2021 (Doc. Id. 1224) that "the arguments in the Memorandum of Law attempting to establish the Debtor's standing are without merit." The Bankruptcy Court further found that Appellant "ha[d] not made a showing that there is at least a reasonable possibility that this could be a surplus case. Without making such a showing, the Debtor has not demonstrated that he has standing" (Doc. Id. 1224). The Bankruptcy Court entered this Order after the third and final asset sale, which took place on February 13, 2021, after which sale the amount of funds available for distribution to creditors was discernible.

Appellant contends that he would be able to prove that this would have been a surplus estate given the opportunity to present evidence to the Bankruptcy Court. However, Appellant has not indicated at any point in this case what additional evidence he would present other than certain documents filed on the docket which allegedly support his position, the substance of which has already been considered by the Bankruptcy Court on numerous occasions. On his Amended Schedule B filed on April 5, 2010, Appellant listed the total fair market value of all of the antique assets as $300,750 (Doc. Id. 52 at 1). Appellant did not further amend his Schedule B at any time during the Chapter 11 or after conversion. As the Bankruptcy Court stated, "There is no evidence in the record that . . . these assets will produce enough money to pay off creditors in full. In fact the Chapter 7 Trustee has produced

15

evidence that it won't pay off creditors in full." Transcript of August 10, 2021 Hearing at 27.[2] Appellee has addressed and refuted through responses and objections, as well as at hearings, all of Appellant's allegations, which have been raised repeatedly in his various objections and in the Motions.[3]

Appellant offers Doc. Ids. 1136 and 1147, which are his Exhibits 7 and 18 respectively, as the only support for his assertion that Appellee liquidated an excess of assets. The figures in Doc. Id. 1136 are not appraisal estimates, as labeled in Appellant's Brief, but initial gross listing prices from 2015 for certain real estate of Appellant and a portion of the assets of the bankruptcy estate valued by the Bankruptcy Court-appointed auctioneer, The Hamilton Group, LLC ("The Hamilton Group"). This document has no relevance to the question of standing as the figures do not contemplate the current fair market value of the assets of the bankruptcy estate, nor the various secured claims against the real estate and accrued and delinquent real estate taxes. Appellee made good faith efforts to sell the real estate, but was unable to sell all but one parcel, described more fully infra II.a. The figures

---

[2] *See also* Transcript of December 1, 2020 Hearing at 29 ("You haven't put forth any evidence to show that there will be any money left over at the end of the day for this debtor.").

[3] *See, e.g.*, Objection and Response (Doc. Id. 1190); Objection to Motion for Leave (Doc. Id. 1237); Response to Debtor's Objection to Final Application by Auctioneer for Compensation and Reimbursement of Expenses filed on April 2, 2021 (Doc. Id. 1215).

in Doc. Id. 1147 were prepared by Appellant, not an accountant for the bankruptcy estate, and are grossly inaccurate. For example, those figures do not reflect the accumulated Chapter 7 and Chapter 11 administrative expenses, nor several disbursements authorized by the Bankruptcy Court related to various asset sales, including but not limited to secured creditor claims, sales tax, real estate tax, and real estate broker and auctioneer commissions and expenses.

Appellant has not produced any fact, Bankruptcy Code provision, or case which would imbue Appellant with the standing necessary to file motions challenging the administration of the estate or appeal orders denying those motions, let alone entitle him to an evidentiary hearing on those issues.

II.  APPELLANT WAS COLLATERALLY ESTOPPED FROM RAISING ISSUES PREVIOUSLY HEARD AND OVERRULED BY FINAL ORDERS OF THE BANKRUPTCY COURT

Even if Appellant had standing, he was collaterally estopped from raising issues previously heard and overruled by final orders of the Bankruptcy Court. "The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)).

Under federal law, collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support

17

a valid and final judgment on the merits.'

*Id.* (citing *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)). As to the first prong, "once an *issue* is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits *based on a different cause of action* involving a party to the prior litigation." (alteration in original) (internal quotations removed) *Lafleur v. Whitman*, 300 F.3d 256, 273 (2d Cir. 2002) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). As to the second and fourth prongs, a court may make determinations based on a rational analysis of the record and such determinations must be necessary to support the court's judgment on the merits. *Id.* at 273–74. The third prong, which is distinct from the requirement that an issue be "actually litigated," requires a court to examine whether the party opposing collateral estoppel "was fully able to raise the same factual and legal issues . . . assert[ed in the prior proceeding]." *Id.* at 274.

Appellant objected to almost every action Appellee took to administer the bankruptcy estate.[4] Appellee detailed at length the majority of the final orders of the

---

[4] *See* Debtor's Objection to Trustee's Motion for Order Authorizing and Approving Private Sale of Property of the Estate Free and Clear of All Liens and Encumbrances filed on September 6, 2016 (Doc. Id. 664); Debtor's Objection to Trustee's Amended Expedited Motion for Authority to Sell Property at Public Auction filed on September 6, 2016 (Doc. Id. 665); Debtor's Objection to Trustee's Motion to Expand Retention Order of the Auctioneer filed on December 6, 2016 (Doc. Id. 720); Debtor's Objection to Motion to Sell Debtor's Interest in

Bankruptcy Court—which disposed of the majority of Appellant's arguments made here—in her Objection and Response (Doc. Id. 1190). Subsequent to the filing of that Objection and Response, on April 26, 2021, the Bankruptcy Court entered the Order approving The Hamilton Group's Final Application for Compensation and Expenses reviewing many of the orders relating to Appellant's arguments made here (Doc. Id. 1224). These orders were entered after hearings held, at which Appellant appeared and was heard. Appellant has not appealed any of these orders. The

---

the "Ramase Assets" filed on January 5, 2017 (Doc. Id. 740); Debtor's Preliminary Objection to Application for Compensation of the Hamilton Group, LLC filed on February 7, 2017 (Doc. Id. 759); Debtor's Response and Partial Objection to Trustee's Application to Employ Auctioneer to Sell Personal Collection of Antiques and Remaining Personal Property of Debtor filed on June 25, 2019 (Doc. Id. 895); Debtor's Objection to Trustee's Amended Motion to Compel Debtor to Cooperate in Sale of and for Authority to Gain Access to Debtor's Personal Antique Collection and Remaining Personal Property filed on June 25, 2019 (Doc. Id. 897); Debtor's Response and Partial Objection to Trustee's Motion for Authority to Sell Personal Collection of Antiques and Remaining Personal Property of Debtor at Public Auction Filed by Margaret Heminway, Interested Party filed on August 22, 2019 (Doc. Id. 981); Debtor's Response and Partial Objection to Trustee's Notice of Trustee's Intention to Sell at Public Auction with Bidder Participation on the Internet Filed by Margaret Heminway, Interested Party filed on August 22, 2019 (Doc. Id. 982); Debtor's Objection to Trustee's Motion for Order to Show Cause Why Debtor and Debtor's Authorized Agents Should Not Be Held in Contempt filed on January 14, 2020 (Doc. Id. 1016); Debtor's Objection to Trustee's Motion to Compel Debtor and Debtor's Agents to Cooperate with Administration of the Estate and Motion for Expedited Determination on Trustee's Motion to Compel Debtor and Debtor's Agents to Cooperate with Administration of the Estate filed on July 31, 2020 (Doc. Id. 1078); Debtor's Objection to Final Application for Compensation and Reimbursement of Expenses for The Hamilton Group, LLC filed on March 3, 2021 (Doc. Id. 1213).

Bankruptcy Court rationally relied on the extensive record, including its prior orders, in order to rule on the Motions. *See* Transcript of August 10, 2021 Hearing at 49–51. Accordingly, the issues in the Motions were fully and actually litigated and the Orders were entered upon the Bankruptcy Court's rational review of the robust record. Appellee will specifically address those sections of Appellant's Brief to which final orders of the Bankruptcy Court apply.

    a. <u>Appellee sold the property known as 35 Joshua Hill Road, Woodbury, Connecticut ("Joshua Hill Property") in accordance with final orders.</u>

On July 13, 2015, the Court granted the application to appoint the realtor to sell the Joshua Hill Property (Doc. Id. 535). The real estate agent thereof reported to the Court and Appellant through counsel his marketing and listing efforts. Throughout the Section 363 sale process, Appellant had opportunity to present higher and better offers to Appellee, but no timely offers were forthcoming. On September 26, 2016, the Bankruptcy Court entered an initial order approving the Motion to Sell the property and authorized payment of the broker's real estate commissions (Doc. Id. 670). On October 7, 2016, the Bankruptcy Court entered a revised order approving the sale and authorizing payment to the real estate broker (Doc. Id. 680). Accordingly, Appellee sold the Joshua Hill Property in accordance with final orders of the Bankruptcy Court over Appellant's objection (Doc. Id. 664). Appellant did not appeal any of these orders.

b.  Appellee sold the Ramase Assets in accordance with final orders.

Appellant operated a woodworking business known as Ramase, LLC ("Ramase") in which he had a 100% membership interest. A Chapter 7 trustee cannot operate a debtor's business without bankruptcy court authority, which may only be granted if operation of the business is in the best interest of the bankruptcy estate and "consistent with the orderly liquidation of the estate." 11 U.S.C. § 721. In accordance with her primary duties as set forth in 11 U.S.C. § 704(a)(1), Appellee determined that operation of Ramase was not conducive to expeditious closure of the bankruptcy estate and therefore reduced to money the assets of Ramase ("Ramase Assets"), as property of the bankruptcy estate pursuant to 11 U.S.C. § 541. Appellant did not raise any issue of exemption in his objection (Doc. Id. 740) to the sale of the Ramase Assets, nor did Appellant claim any exemption in his membership interest.[5]

Prior to the consummation of the sale of the Joshua Hill Property, which is where the Ramase Assets were originally located, Appellee arranged for a public auction of the Ramase Assets in accordance with the request of the prospective Joshua Hill Property buyer. On October 17, 2016, in order to accommodate the

---

[5] *See* Doc. Id. 44 at 2. Appellee contends that even if Appellant had raised those issues, the exemptions were not properly or appropriately claimed. The exemption referred to in Appellant's Brief at 29 was not linked to any sufficiently described or valued asset.

request of the prospective buyer, Appellee filed a Motion to Expand Retention Order of The Hamilton Group to sell the Ramase Assets (Doc. Id. 683) and an Expedited Motion to Sell the Ramase Assets at a public auction, stating that all Ramase Assets would be removed by November 30, 2016 (Doc. Id. 684). On October 28, 2016, the prospective buyer objected to those motions (Doc. Id. 698) and a hearing on the Expedited Motion to Sell the Ramase Assets was set for December 7, 2016 (Doc. Id. 706), which delayed the sale of the Ramase Assets. On December 6, 2016, the day before that hearing, Appellant objected to the Motion to

Expand Retention Order (Doc. Id. 720).

After several hearings held, the Bankruptcy Court entered an order on December 14, 2016 granting the Motion to Expand Retention Order of the Auctioneer (Doc. Id. 726). On December 16, 2016, Appellee withdrew the Expedited Motion to Sell the Ramase Assets (Doc. Id. 728) and filed a new Motion to Sell the Debtor's Interest in the Ramase Assets (Doc. Id. 729). On January 5, 2017, Appellant objected to the Motion to Sell (Doc. Id. 740). Appellant would not agree to terms of sale in accordance with the Bankruptcy Code or rules of the Bankruptcy Court. Therefore, Appellee negotiated with Appellant through counsel to have the Ramase Assets moved from the Joshua Hill Property to an adjacent property known as Bacon Pond Road ("Bacon Pond Road") where Appellant arranged to have them stored at his direction and expense since moving and storing the Ramase Assets at another

location would have been cost prohibitive to the bankruptcy estate.

Thereafter, Appellant represented that he would be able to secure funding for a global compromise which would satisfy the bankruptcy estate in full. Accordingly, on April 21, 2017, Appellee filed a Motion to Compromise the Remaining Nonexempt Equity in All Remaining Assets of the Bankruptcy Estate with the Debtor ("Global Compromise") (Doc. Id. 788). On June 7, 2017, the Bankruptcy Court entered an order approving the Global Compromise (Doc. Id. 799). Appellant failed to consummate the Global Compromise and on August 10, 2017, Appellee filed a Certificate of Debtor's Noncompliance with Order Entered Granting Trustee's Motion for Authority to Compromise the Remaining Nonexempt Equity in All Remaining Assets of the Bankruptcy Estate with the Debtor ("Certificate of Noncompliance with Global Compromise") (Doc. Id. 804).[6]

On June 5, 2019, after Appellant failed to consummate the Global

---

[6] Appellant was unable to consummate the Global Compromise because the lender for the payoff contemplated in the Global Compromise, despite repeated requests, had not received accurate payoffs of the various real estate taxes owed until very late in the final loan approval process, and once the substantial balances were revealed, Appellant was unable or unwilling to satisfy the remaining conditions of loan approval. Appellant's Exhibit 24 at 15, 20, 24–25 (Doc. Id. 1153), details and supports the Appellee's assertions that she spoke at length with the lender regarding the financing and that Appellant's Attorney in Fact was aware that the lender needed additional documentation from her and not Appellee to close. The result that Appellant was unable to secure financing was not due to any delay on the part of Appellee.

Compromise and failed to obtain a zoning change necessary to develop certain property,[7] which allegedly would have satisfied the bankruptcy estate in full, Appellee filed a second Application to Employ The Hamilton Group, LLC as Auctioneer to Sell Personal Collection of Antiques and Remaining Property of Debtor (Doc. Id. 879), which included the Ramase Assets. On that date, Appellee also filed an Amended Motion to Compel Debtor to Cooperate in Sale of and for Authority to Gain Access to Debtor's Personal Antique Collection and Remaining Personal Property ("Motion to Compel") (Doc. Id. 882) as Appellant refused over an extended period of time to turnover possession of the remaining assets of the bankruptcy estate. As a result of this and Appellant's failure to provide certain documentation requested by Appellee, Appellee was unable to obtain insurance coverage for the assets.

On June 25, 2019, Appellant filed objections to the Application to Employ (Doc. Id. 895) and the Motion to Compel (Doc. Id. 897). On July 30 and 31, 2019, after hearing held, the Bankruptcy Court entered orders approving the Application to Employ (Doc. Id. 944) and the Motion to Compel (Doc. Id. 949). The order on the Motion to Compel set forth all of the remaining property to be sold and stated,

> The Debtor and/or the person authorized to act on behalf of the Debtor have not cooperated with the Chapter 7 Trustee's efforts to sell the Estate Personal Property and the Estate Property and have taken action to frustrate, block, stall, impede, hinder, delay, and/or stop the Chapter 7 Trustee from selling the

---

[7] See V.c infra for a discussion of this process.

Estate Personal Property and the Estate Property.

(Doc. Id. 949 at 2–3). The Bankruptcy Court further entered an Order to Appear and Show Cause Why Debtor and/or Any Person Authorized to Act on Behalf of the Debtor Should Not be Sanctioned for Failure to Comply with Debtor's Duties as Required by the Bankruptcy Code and Rules (Doc. Id. 950).

On August 8, 2019, Appellee filed the Motion to Sell Personal Collection of Antiques and Remaining Personal Property of the Debtor Free and Clear of Liens at Public Auction ("Second Sale Motion") (Doc. Id. 968). On August 22, 2019, Appellant objected to the Second Sale Motion (Doc. Id. 981). After hearing held, the Bankruptcy Court entered an order granting the Second Sale Motion (Doc. Id. 986), which included authority to sell the Ramase Assets. This order also included language setting forth that Appellee and The Hamilton Group had "sole and exclusive discretion as to all aspects of marketing, preparation for, and conduct of the sale and auction." (Doc. Id. 986 at 3). It also mirrored language found in the previously entered order on the Motion to Compel, which directed Appellant and his authorized agents to cooperate with the sale and not "act in any way to frustrate, block, stall, impede, hinder, delay and/or stop the Trustee from conducting an inventory and selling the Property." (Doc. Id. 986 at 5). The Bankruptcy Court has recounted Appellant's lack of cooperation. Transcript of December 1, 2020 Hearing at 15–16. On January 3, 2020, The Hamilton Group filed its Amended Report of

Sale (Doc. Id. 976). Any delay in liquidation of the Ramase Assets was a direct result of Appellant's actions. Appellee sold the Ramase Assets in accordance with final orders of the Bankruptcy Court.[8] Appellant did not appeal any of these orders.

### c. Appellee sold the antique collections through qualified professionals in accordance with final orders.

As set forth in the order entered by the Bankruptcy Court on April 26, 2021 on The Hamilton Group's final application for compensation, Appellant's bankruptcy estate contained a volume of antiques located in both Connecticut and Maine (Doc. Id. 1224 at 2). *See also* Doc. Id. 986 at 1–2 (setting forth the scope of assets of the bankruptcy estate). The Bankruptcy Court entered orders employing The Hamilton Group to sell the antiques at auction over Appellant's objections (Doc. Ids. 720, 726, 895, 944) after hearings held. As set forth in Appellee's Objection and Response, Robert Glass of The Hamilton Group is an antiques expert with over 45 years of experience (Doc. Id. 1190 at 8). He has conducted thousands of auctions within that time. *Id.* Robert Glass had also been independently employed by the bankruptcy estate to provide appraisals of bankruptcy estate assets.[9]

---

[8] For the Bankruptcy Court's discussion of these orders and Appellant's actions as it relates to them, see Transcript of December 1, 2020 Hearing at 14–19.

[9] *See* Application to Employ Robert Glass Auctions, LLC as Appraiser filed on June 2, 2015 (Doc. Id. 526); U.S. Trustee's Statement of No Objection to Application to Employ Robert Glass Auctions, LLC as Appraiser filed on June 16, 2015 (Doc. Id. 530); Order Granting Application to Employ Robert Glass Auctions, LLC as Appraiser entered on June 18, 2015 (Doc. Id. 531); Application

Appellant provided no evidence to Appellee or the Bankruptcy Court which would cause Appellee or the Bankruptcy Court to question whether Robert Glass or The Hamilton Group is qualified or experienced in this type of auction sale. If there were assets which required a specific expertise to value that The Hamilton Group could not provide, The Hamilton Group obtained expert opinions from third-parties.[10] The Bankruptcy Court entered orders approving compensation for The Hamilton (Doc. Ids. 767, 774, 1014, 1224) over Appellant's objections (Doc. Ids. 759, 1213) after hearings held.

Appellee consulted with each auction house suggested by Appellant to conduct the auction sales and none were willing to comply with the terms and conditions required by the Bankruptcy Code and rules of the Bankruptcy Court. *See* Transcript of August 6, 2019 Hearing at 74, 70–71. An example of this can be found in Appellant's Exhibit 23, which is an email from Chris Barber of Skinner's, an

---

to Increase Maximum Amount of Compensation Payable to Robert Glass Auctions, LLC filed on December 18, 2015 (Doc. Id. 574); Application for Compensation of Robert Glass Auctions, LLC filed on December 18, 2015 (Doc. Id. 575); Order Approving Application for Compensation of Robert Glass Auctions, LLC entered on January 29, 2016; Order Approving Trustee's Application to Increase Maximum Allowable Compensation Payable to Robert Glass Auctions, LLC as Personal Property Appraiser for the Estate entered on February 10, 2016 (Doc. Id. 588).

[10] *See* Order entered January 8, 2020 (Doc. Id. 1014) approving expenses for Tom Riley who provided expert valuations for duck decoys and Joseph D. ReReisi of Urban Miners, LLC who provided expert valuations for antique wood.

auction house suggested by Appellant and solicited by Appellee, detailing auction terms and conditions which were non-compliant (Doc. Id. 1152 at 6–7). *See also* Transcript of December 1, 2020 Hearing at 13, 14.

Appellant incorrectly asserts that Appellee failed to inventory the assets. The Hamilton Group created photographic inventories of the volumes of assets for all sales as well as detailed written inventories and video inventories for later sales in both the Maine and Connecticut locations. Transcript of August 6, 2019 Hearing at 12–22, 82–83; Order entered August 4, 2020 (Doc. Id. 1091); Itemization of Selected Remaining Assets filed on August 19, 2020 (Doc. Id. 1097). Because of these inventories, Appellee was able to identify various assets which went missing between sales. *See* Transcript of August 6, 2019 Hearing at 12–22. Appellee was also able to identify several groups of assets which were concealed from The Hamilton Group or moved between Appellant's properties without notice to Appellee. *See id*, 80–81.

Contrary to Appellant's assertions, Appellee did not sell assets she was not authorized to sell. Appellee met with Appellant and his Attorney in Fact extensively throughout the bankruptcy case regarding administration of the estate and sale of the assets. Transcript of August 10, 2021 Hearing at 32. Appellee agreed to review any documentation regarding ownership of any disputed assets that Appellant could provide. *Id.* Appellee set forth a clear standard on the record for proof which would

28

be acceptable to her in determining whether a disputed asset was property of the bankruptcy estate. Transcript of August 6, 2019 Hearing at 83–84. On December 10, 2020, after hearing held during which all parties conferred on the process for the third auction sale, the Bankruptcy Court docketed a Notice of Sale stating Appellee had the sole discretion to determine which disputed assets were not property of the bankruptcy estate based on the documentation provided by Appellant (Doc. Id. 1183 at 2). Any item for which sufficient proof of ownership or post-conversion purchase was provided timely to Appellee was released back to Appellant. Transcript of November 24, 2020 Hearing at 8–10; Transcript of August 10, 2021 Hearing at 15–16, 34–36. The docketed records of the third asset sale evidence this. Itemization of Selected Remaining Assets filed on August 19, 2020 (Doc. Id. 1097); Notice of Intent to Sell at Public Auction with Bidder Participation on the Internet (Doc. Id. 1181); Report of Sale filed on March 9, 2021 at 2–3 (Doc. Id. 1194). Appellant had ample time to provide Appellee with sufficient proof throughout this case. Transcript of December 1, 2020 Hearing at 26–27, 56–58.[11]

The qualifications of The Hamilton Group and the auction sale process were discussed at length throughout the hearing held on August 6, 2019, during which hearing Appellant's Attorney in Fact made the same arguments regarding The

---

[11] See also Doc. Id. 1190 at 12–16 for a summary of this process and standard of proof set forth by Appellee.

Hamilton Group and the auction sales that are articulated in Appellant's Brief. During that hearing, Appellant's former counsel expressed his "profound disagreement with many [of the] statements made by [Appellant's Attorney in Fact] on the record" and that he "did not want there to be any kind of misleading record." Transcript of August 6, 2019 Hearing at 90–91. The three auction sales conducted by The Hamilton Group brought funds equal to or in excess of the original appraisal estimates for the bankruptcy estate.[12] Appellee has no legal obligation to consider the appraisals of a Chapter 7 debtor over those of a qualified and court-appointed professional. *See* Transcript of August 6, 2019 Hearing at 70. The Bankruptcy Court authorized the auction sale of the antiques in orders entered October 7, 2016 (Doc. Id. 680) and August 28, 2019 (Doc. Id. 986) over Appellant's objections (Doc. Ids. 665, 981) after hearings held. Appellee acted in accordance with those orders and dispatched her duties to the benefit of the bankruptcy estate.

      d.  <u>Appellee did not sell exempt household furnishings.</u>

Appellant incorrectly asserts that Appellee improperly sold exempt household furnishings. The two-thirds of assets referred to in Appellant's Brief encompassed the entirety of the antique assets sold in the third auction sale where of the 641 lots originally cataloged to be sold, 231 were released to Appellant, and 410 lots were

---

[12] *See* Reports of Sale filed December 13, 2016 (Doc. Id. 724); January 3, 2020 (Doc. Id. 1007); March 9, 2021 (Doc. Id. 1194).

sold. *See* Report of Sale filed March 9, 2021 at 2–3 (Doc. Id. 1194) (detailing the extensive efforts of Appellee to release non-estate assets back to Appellant). Appellee did not sell any household furnishings in any sale. Appellee sold assets of a collectible nature in accordance with orders of the Bankruptcy Court. *See* Orders entered October 7, 2016 (Doc. Id. 680) and August 28, 2019 (Doc. Id. 986). Several hundred items were abandoned back to Appellant. *See* Report of Abandonment field on March 30, 2021 (Doc. Id. 1214). Appellant has not made any allegation regarding any specific household furnishings he claims were improperly sold.

III.    THE BANKRUPTCY COURT PROPERLY EXERCISED ITS DISCRETION TO DENY THE MOTIONS WITHOUT EVIDENTIARY HEARINGS[13]

Issues of standing and collateral estoppel aside, it was within the Bankruptcy Court's discretion to hold an evidentiary hearing before denying a motion to remove a trustee or motion for leave to sue a trustee. Although Appellant articulates portions of the standards set forth originally in Appellee's Objection and Response (Doc. Id. 1190), Appellee will recite them here.

---

[13] Although Appellant articulates a portion of the standard for removal of a Chapter 7 trustee which was originally articulated in Appellee's Objection and Response (Doc. Id. 1190), his statement of issues on appeal specifically address the Bankruptcy Court's refusal to hold evidentiary hearings on the Motion to Remove and the Motion for Leave. Accordingly, those are the issues Appellee will focus on.

a.  Standard for Removal of a Trustee

11 U.S.C. § 324(a) states, "The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." *In re Lundborg* is the leading case in this District on the issue of removal of a trustee. 110 B.R. 106 (Bankr. D. Conn. 1990). The decision sets forth the standard to be used: Bankruptcy Code Section 324(a) provides that "the court, after notice and a hearing, may remove a trustee . . . . for cause." Cause, which is not defined by the Code, must be determined by courts on an ad hoc basis. *In re Haugen Constr. Serv., Inc.*, 104 Bankr. 233, 240 (Bankr. D. N.D. 1989)*.* Cause has been found to exist, *inter alia,* where the trustee is not disinterested, *In re BH & P, Inc.*, 103 Bankr. 556, 561 (Bankr. D. N.J. 1989), *aff'd in part and vacated on other grounds*, 199 B.R. 35 (D. N.J. 1990), *aff'd*, 949 F.2d 1300 (3rd Cir. 1991); *In re Paolino*, 80 Bankr. 341, 344 (Bankr. E.D. Pa. 1987), and where the trustee fails to perform his or her duties, *Matter of Schoen Enter., Inc.*, 76 Bankr. 203, 206 (Bankr. M.D. Fla. 1987), or unreasonably delays in the performance of those duties. *Matter of Island Amusement, Inc.*, 74 Bankr. 18, 19 (Bankr. D. P.R. 1987); *In re Mira-Pak, Inc.*, 72 Bankr. 430, 431 (Bankr. S.D. Tex. 1987).

In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud. *In re Acadiana Electrical Serv.*, 66 Bankr. 164, 165 (Bankr. W.D. La. 1986); *United States ex rel. People's Banking Co. v.*

*Derryberry (In re Hartley)*, 50 Bankr. 852, 859 (Bankr. N.D. Ohio 1985); s*ee also Matter of Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965). A trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances, *In re Haugen Constr. Serv., Inc.*, 104 Bankr. at 240, and courts should consider the best interests of the estate, rather than those of a single movant-creditor, when determining whether to remove a trustee. *Baker v. Seeber (In re Baker)*, 38 Bankr. 705, 708 (D. Md. 1983); *Gross v. Russo (Matter of Russo)*, 18 Bankr. 257, 273 (Bankr. E.D.N.Y. 1982).

The burden of proof is on the moving party to show cause, which must be supported by specific facts, for the removal of a trustee. *In re AFI Holdings, Inc.*, 530 F.3d 832, 845 (9th Cir. 2008). "In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud." *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990). "While the Bankruptcy Code provides that a hearing is required before a trustee can be removed . . . the Code is silent on whether a hearing is required before a court can deny a motion to remove a trustee." *In re M & S Grading, Inc.*, 541 F.3d 859, 867 (8th Cir. 2008). A bankruptcy court thus does not abuse its discretion to deny a motion to remove a trustee when there are no credible facts on the record that would suggest a trustee should be removed. *See id.*

Appellant brought forth no fact to show Appellee was not disinterested, failed

to perform her duties, or unreasonably delayed in the performance of her duties. Appellant brought forth no fact to show actual injury or fraud. The Bankruptcy Court considered and rationally relied on a substantial amount of information on the record and found Appellant's arguments in the Motion to Remove to be unsupported by any evidence. Transcript of August 10, 2021 Hearing at 37, 49–51.

    b. <u>Standard for Leave to Sue a Trustee</u>

       The *Barton* Doctrine, which was established by the Supreme Court states, "[B]efore suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 128 (1881). "The *Barton* Court explained that a court approval requirement was necessary to ensure a consistent and equitable administration of receivership property." *In re Vistacare Grp., LLC*, 678 F.3d 218, 224 (3rd Cir. 2012). Protections afforded to receivers by the *Barton* Doctrine have been extended to bankruptcy trustees, s*ee id.* (joining numerous circuits in cases cited therein), as well as their counsel and other professionals employed on behalf of the Estate. *See In re Nathurst*, 207 B.R. 755, 758 (Bankr. M.D. Fla. 1997); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240–41 (6th Cir. 1993). According to the *Barton* Doctrine, "A party seeking leave of court to sue a trustee 'must make a prima facie case against the trustee, showing that its claim is not without foundation.'" *In re Vistacare Group, LLC*, 678 F.3d at 232.

       To prove a breach of fiduciary duty, a plaintiff must show a bankruptcy trustee

did not "treat all creditors fairly and [] exercise that measure of care and diligence that an ordinary prudent person under similar circumstances would exercise . . . [a]lthough a trustee is not liable in any manner for mistake of judgment where discretion is allowed." *In re Center Teleproductions, Inc.*, 112 B.R. 567, 576–77 (Bankr. S.D.N.Y. 1990) (quoting *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983)). In the Second Circuit, this standard for breach of fiduciary duty is extremely limited by a bankruptcy trustee's quasi-judicial immunity to certain narrow circumstances. *See id.* at 576–78. "A bankruptcy trustee is charged with safeguarding the assets of the bankruptcy estate under court supervision and thus has responsibilities both toward the estate and the court. Bankruptcy trustees are generally immune to the extent that they are acting with the approval of the court." *Gross v. Rell*, 695 F.3d 211, 216 (2d Cir. 2012) (citations omitted). "The law in this circuit is clear. '[A] bankruptcy trustee is immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order.'" *In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009) (quoting *In re Center Teleproductions*, 112 B.R. at 578; *see In re Bernard L. Madoff Inv. Sec. LLC*, 440 B.R. 282, 290–94 (Bankr. S.D.N.Y. 2010). Therefore, acts "performed in good faith and within the scope of [a trustee's] statutory and court-appointed duties" qualify the trustee for immunity from personal liability. *See In re Bernard L. Madoff Inv. Sec.*, 440 B.R. at 290. There is a

presumption in favor of the trustee that a trustee's actions were within the scope of their duties unless a plaintiff initially alleges facts demonstrating otherwise, making a prima facie case against the trustee. *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 322 (6th Cir. 2002).

"Where the trustee negligently fails to discover his agent's negligence, negligently obtains a court order, or negligently or willfully carries out a court order he knew or should have known he wrongfully procured, however, personal liability will attach." *In re Center Teleproductions*, 112 B.R. at 578. Mere mistakes in the trustee's judgment and discretion are not enough to defeat immunity. *See In re Bernard L. Madoff Inv. Sec.*, 440 B.R. at 292 ("A trustee should be shielded from liability for his lawful exercises of judgment and discretion . . ."). "If immunity applied only to decisions that turned out to be proper, there would be no need for the doctrine of immunity." *Id.*

There are two exceptions to the *Barton* Doctrine. The first is a limited exception set forth by 28 U.S.C. § 959(a), which states trustees may be sued without leave of the appointing court for acts or transactions directly related to carrying on business connected to property held or managed by the trustee. "[W]here a trustee or receiver is actually operating the business, and the acts complained of involved the trustee's 'conducting the debtor's business in the ordinary sense of the words or [his] pursuing that business as an operating enterprise,'" the aggrieved party may

file suit in another forum without leave. *In re Vistacare Grp.*, 678 F.3d at 227 (quoting *In re Crown Vantage, Inc.*, 421 F.3d 963, 971–72 (9th Cir. 2005)). "This exception does not apply to suits against the trustee for actions taken while administering the estate." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) (citing *In re Campbell*, 13 B.R. 974, 976 (Bankr. D. Idaho 1981)). "Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." *Id.* (citing *In re Campbell*, 13 B.R. at 976)).

The second exception is set forth by the language of the *Barton* Doctrine itself. A trustee may be sued without leave of the appointing court where the trustee has acted outside the scope of their authority. However, the Barton Doctrine will bar suit in a nonappointing court if a plaintiff does not plead at the outset sufficient facts to support an allegation that a trustee exceeded the scope of an authorizing order. *In re Lowenbraun*, 453 F.3d at 322.

"[G]iven [the bankruptcy court's] familiarity with the underlying facts and the parties, [it] is uniquely situated to determine whether a claim against the trustee has merit. The bankruptcy court is also uniquely situated to determine the potential effect of a judgment against the trustee on the debtor's estate," *In re Vistacare Grp.*, 678 F.3d at 233, as any judgment against a trustee in their capacity as a trustee would

37

take assets out of the hands of the estate for the benefit of one creditor or claimant which would otherwise benefit all creditors and claimants. *See id.* at 224 (citing *Barton*, 104 U.S. at 128–29).

Because the allegations in the Motion for Leave were substantially similar to those in the Motion to Remove,[14] the Bankruptcy Court also denied the Motion for Leave as Appellant failed to prove his prima facie case based on the information on the record, on which the Bankruptcy Court rationally relied. Transcript of August 10, 2021 Hearing at 37–38, 49–51. Appellant did not satisfy the *Barton Doctrine* or show one of the exceptions applied. Appellant failed to show that Appellee breached her fiduciary duty. Appellant failed to show that Appellee acted outside the scope of her authority or negligently or willfully to the detriment of the bankruptcy estate, all of which has been discussed at length in this Appellee's Brief.[15] Appellee acted in accordance with her duties and orders of the Bankruptcy Court. Although there has

---

[14] *Compare* Motion to Remove, *with* Amended Complaint attached to Motion for Leave (illustrating the similar nature of the allegations and arguments contained therein). It should be noted that the Motion for Leave was legally insufficient, as discussed in Appellee's Objection to the Motion for Leave (Doc. Id. 1200). The Motion for Leave failed to allege any basis for leave and instead required the Bankruptcy Court and Appellee to extrapolate Appellant's arguments from the proposed state court complaint attached thereto.

[15] One of Appellant's assertions in his brief not addressed elsewhere herein is that Appellee took exempt funds from Appellant. Appellant's Brief at 17–18. Appellee addressed this allegation at length in her Objection and Response (Doc. Id. 1190 at 3–4).

been no finding of such by the Bankruptcy Court, Appellee cannot be held liable for a mere mistake in judgment or discretion. The Bankruptcy Court was familiar with the underlying facts and actions of the parties in this case and was best situated to make a determination of whether Appellant's allegations had any merit. Accordingly, the Bankruptcy Court did not abuse its discretion by denying to hold an evidentiary hearing on either the Motion to Remove or the Motion for Leave.

IV.   **THE TRUSTEE DID NOT HAVE A CONFLICT OF INTEREST WITH THE BANKRUPCY ESTATE**

The Bankruptcy court did not abuse its discretion in determining that Appellee did not have a conflict of interest with the bankruptcy estate. Subsection 4K(1) of the Handbook for Chapter 7 Trustees issued by the U.S. Department of Justice Executive Office for United States Trustees ("Trustee Handbook") instructs, "If a trustee discovers a conflict of interest or lack of disinterestedness after accepting the appointment, the trustee shall immediately resign from the case." Included in the list of circumstances which would present an actual or potential conflict of interest is whether "[t]he estate has a potential cause of action against the trustee[ or] an employee of the trustee." Trustee Handbook at 2-7.

Appellant incorrectly asserts that Appellee should have immediately resigned as trustee once he filed the Motions. However, the debtor of a non-surplus bankruptcy estate is not the bankruptcy estate. *See* Transcript of August 10, 2021 Hearing at 37. As stated in Appellee's Objection and Response (Doc. Id. 1190), "A

trustee is the fiduciary of all of the creditors of a bankruptcy estate, but owes a primary duty to unsecured creditors" and is charged with exercising a reasonable standard of care in the liquidation of assets for the benefit of those creditors. *In re Lundborg*, 110 B.R. 106, 109 (Bankr. D. Conn. 1990). The bankruptcy estate does not have a cause of action against Appellee. Transcript of August 10, 2021 Hearing at 37. No conflict of interest exists.

By the phrasing of his issues on appeal, Appellant also suggests that the Trustee Handbook has precedential weight which a bankruptcy court must give deference to and enforce, assuming a conflict exists. As Appellant references,

> This Handbook is intended to establish or clarify the views of the United States Trustee Program (Program) on the duties owed by a chapter 7 trustee to the debtors, creditors, other parties in interest, and the United States Trustee. The Handbook does not present a full and complete statement of the law; it should not be used as a substitute for legal research and analysis.

Trustee Handbook, Page 1-1. Accordingly, the Trustee Handbook may provide guidance for a court, but does not bear any precedential weight.

The United States Trustee has participated extensively in the administration of this case and has not raised any concerns about Appellee's actions or a potential conflict of interest. Transcript of August 10, 2021 Hearing at 10, 31.[16] There was no

---

[16] *See also*, U.S. Trustee's Statement of No Objection to Application to Employ Robert Glass Auctions, LLC as Appraiser filed on June 16, 2015 (Doc. Id. 530); U.S. Trustee's Statement of No Objection to Application to Employ Keller Williams Greater Hartford as Real Estate Broker field on July 8, 2015 (Doc. Id. 534); U.S. Trustee's Statement of No Objection to Compensation of the Auctioneer

information or evidence submitted to the Bankruptcy Court which would suggest the

bankruptcy estate had a cause of action against Appellee. *Id.* at 37. Therefore, the

Bankruptcy Court did not abuse its discretion in finding no conflict of interest exists.

V.    APPELLANT RAISES NEW ISSUES WHICH SHOULD NOT BE
      CONSIDERED

Appellant raises new issues which should not be considered in this appeal as

neither exception to the general rule applies. "Generally, an appellate court will not

consider a claim that is raised for the first time on appeal. . . . However, a court

sitting on the appellate level has discretion to hear a new issue when necessary to

avoid a manifest injustice or where the issue is purely legal and does not require

additional fact-finding." *In re Vargas Realty Enterprises, Inc.*, 440 B.R. 224, 233–

34 (S.D.N.Y. 2010) (citations omitted). Many of the new allegations Appellant raises

relate to final orders of the Bankruptcy Court or are unfounded in any fact on the

record.

---

with Request for Evidentiary Hearing on Expenses filed on February 10, 2017
(Doc. Id. 764); U.S. Trustee's Statement of No Objection to Application to Employ
The Hamilton Group, LLC as Auctioneer field on June 24, 2019 (Doc. Id. 894);
U.S. Trustee's Statement of No Objection to Auctioneer's Amended Interim
Application for Compensation and Reimbursement of Expenses filed on January 7,
2020 (Doc. Id. 1011); U.S. Trustee's Response to Debtor's Motion to Remove
Chapter 7 Trustee filed on August 31, 2020 (Doc. Id. 1099); U.S. Trustee's
Response to Debtor's Third Amended Motion to Remove Trustee and
Memorandum of Law filed on February 2, 2021 (Doc. Id. 1188); U.S. Trustee's
Statement of No Objection to Auctioneer's Final Application for Compensation
and Reimbursement of Expenses, filed on March 23, 2021 (Doc. Id. 1209).

a. Appellee compromised the bankruptcy estate's interest in real estate located at 228 Main Street, Wiscasset, Maine ("Wiscasset Property") in accordance with final orders.

As set forth in the Motion for Authority to Compromise filed November 10, 2016 (Doc. Id. 711), Appellee compromised the non-exempt equity in the Wiscasset Property. Appellee attempted to market the Wiscasset Property through a broker approved by the Bankruptcy Court (Doc. Id. 522), but due to its poor condition, which included the heavy presence of asbestos, was unable to find a buyer (Doc. Id. 711 at 2). Appellant did not claim an exemption in the Wiscasset Property (Doc. Id. 44 at 2). The Wiscasset Property was listed at $189,000 without success and the mortgage against it had a balance of $156,000. Appellee agreed to accept the sum of $10,000 from the mortgage holder in exchange for an abandonment of the bankruptcy estate's interest in the Wiscasset Property given its failure to sell at list price (Doc. Id. 711 at 2). On December 16, 2016, the Bankruptcy Court entered an order approving the compromise after hearing held (Doc. Id. 728). Appellant did not object to the compromise and did not appeal the order.

b. Appellee's administration of the bankruptcy estate did not cause Appellant to default on his mortgage for the real estate located at 27 Middle Quarter Road, Woodbury, Connecticut ("Woodbury Property").

On February 15, 2019, the mortgage lender for the Woodbury Property moved for relief from stay (Doc. Id. 856). At the time that motion was filed, the total amount of arrears was $104,922.62 for a period of non-payment beginning in December of

2015, which date is well before the first auction sale and within a year of the date the case was converted.[17] In its Affidavit of Non-Compliance filed on July 30, 2019, the mortgage holder details that Appellant failed to complete a trial modification due to non-payment and Appellant failed to file a new loan modification application after ample opportunity to do so (Doc. Id. 943). On August 1, 2019, the Bankruptcy Court entered an order granting the mortgage holder for the Woodbury Property relief from the automatic stay to foreclose (Doc. Id. 953). Accordingly, the allegation that Appellee's administration of the estate caused Appellant to default on his mortgage has no basis in fact.

  c. <u>The bankruptcy estate never held funds sufficient to pay the accrued taxes on the Bacon Pond Road and North Main Street lots.</u>

  As discussed in Subsection II.b supra, Appellant failed to consummate the court-approved Global Compromise and failed to develop certain property, which included the Bacon Pond Road and North Main Street lots, which Appellant represented would satisfy the bankruptcy estate in full. After Appellee filed her Certificate of Noncompliance with the Global Compromise, which was August 10, 2017 (Doc. Id. 804), Appellee allowed Appellant a period of almost two years to obtain approval from the Town of Woodbury to have certain lots rezoned so they could be sold to a developer. Appellee allowed Appellant all of this time for

---

[17] This case was converted from Chapter 11 to Chapter 7 on February 5, 2015.

Appellant to go through this process with the expectation based on Appellant's representations that Appellant would be able to satisfy the bankruptcy estate in full. When it was clear Appellant's efforts failed, Appellee began the process for the second auction sale and filed her Amended Motion to Compel Debtor to Cooperate in Sale of and for Authority to Gain Access to Debtor's Personal Antique Collection and Remaining Personal Property, which was June 5, 2019 (Doc. Id. 882). Appellee did not abandon the lots through administration of the bankruptcy estate in the event that Appellant obtained the zoning change to the benefit of the bankruptcy estate.

The bankruptcy estate never held funds sufficient to pay the accrued taxes in full on those lots. On June 12, 2017, the town of Woodbury filed its motion for relief from stay (Doc. Id. 818) for the Bacon Pond Road and North Main Street lots, among other properties of Appellant. In that motion, counsel for the town represented, "The Debtor is the largest delinquent tax payor in the Town with a total past due of $421,041.40. Taxes have been delinquent since 2006 or twelve (12) years on four (4) of the five (5) parcels and since 2008 or ten (10) years on the fifth." That figure increased to $427,641.83 in the town of Woodbury's Amended Motion for Relief from Stay filed July 30, 2018 (Doc. Id. 835). On October 8, 2018, Appellant entered into a stipulation with the town (Doc. Ids. 845, 848). According to information Appellee received from counsel for the town of Woodbury, the last payment Appellant made in accordance with the stipulation was in February of 2019.

Transcript of August 6, 2019 Hearing at 51–52. Accordingly, as it was not in the best interest of the bankruptcy estate, Appellee did not seek court approval to pay any of these real estate taxes from bankruptcy estate funds as it would have depleted funds available for distribution to unsecured creditors without any benefit being returned to the bankruptcy estate.

      d. <u>Appellee did not knowingly make any misrepresentation to or bribe the Bankruptcy Court.</u>

Appellant's allegations that Appellee knowingly and fraudulently made false claims to or bribed the Bankruptcy Court are wholly unfounded, not supported by any fact on the record, and frivolous. Appellant does not include reference to one instance of either alleged act. As Appellee's Brief details, the record of this case reflects Appellee's best efforts to administer this bankruptcy estate to benefit of creditors in accordance with her duties and final orders of the Bankruptcy Court.

      e. <u>The Bankruptcy Court was not unfairly adverse to Appellant.</u>

The Bankruptcy Court commented in various hearings on the numerous opportunities it afforded Appellant to either produce funds sufficient to satisfy the bankruptcy estate in full or resolve disputed assets. Transcript of August 6, 2019 Hearing at 7–8; Transcript of November 24, 2020 Hearing at 15, 17–18; Transcript of December 1, 2020 Hearing at 12; Transcript of August 10, 2021 Hearing at 11–12. The Bankruptcy Court also commented on Appellant's lack of cooperation with the administration of the bankruptcy estate, which is also reflected in its orders.

Transcript of August 6, 2019 Hearing at 10–12, 63; Transcript of December 1, 2020 Hearing at 6–8, 15–16, 18; Doc. Ids. 949 and 986. The summary of these sentiments is that "by letting the Chapter 7 debtor . . . be solicitous in some respect we've now created a monster which is that this Chapter 7 debtor thinks that they control the administration and the liquidation of this estate." Transcript of November 24, 2020 Hearing at 19. The Bankruptcy Court afforded Appellant significant latitude in this case and any fact finding done by the Bankruptcy Court was the result of its experience throughout many years of this case, the facts on the record, and the history reflected on the docket.

Appellant should not be allowed to raise these issues as neither exception to the general rule applies. There is no basis for any of his allegations relating to these issues on the record and they are not purely legal. There is no indication that it is necessary for the appellate court to hear these issues to avoid a manifest injustice. Accordingly, these issues should not be considered by this Court.

## CONCLUSION

The Orders should stand. Appellant has been represented by counsel throughout the administration of this bankruptcy estate. This case has been open for nearly twelve years and has been post-conversion for almost seven of those years—which is highly unusual. The Bankruptcy Court is familiar with the parties, their actions, the extensive record, and the course of the administration of this case.

Appellant had no standing to file the Motions or appeal the Orders entered on the Motions. Appellant was afforded the opportunity to prove he had standing and did not sustain his burden. Appellant attempts to collaterally attack final orders of the Bankruptcy Court through the Motions. Appellant's allegations have no basis in fact and the Bankruptcy Court properly exercised its discretion to deny to hold evidentiary hearings on the Motions. Appellee does not have a conflict of interest with the bankruptcy estate and is the proper party to continue its administration. For all the reasons stated herein, the Orders should be affirmed and Appellant's requests for relief should be denied.

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Fed. R. Bankr. P. 8014(b), the undersigned hereby certifies that the foregoing Appellee Brief complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(b) because, excluding all parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 10,522 words and complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 Version 15.0.5153.1000 in 14 point Times New Roman.

Dated at Enfield, Connecticut this 16th day of December, 2021.

/s/ Paige M. Vaillancourt
Paige M. Vaillancourt, Esq. CT30742
Rescia Law, P.C.
5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Fed. R. Bankr. P. 8011(d), the undersigned hereby certifies that on the 16th day of December, 2021, a true and correct copy of the foregoing Appellee's Brief and the attached Appendix were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of the filing will be sent via email to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated at Enfield, Connecticut this 16th day of December, 2021.

/s/ Paige M. Vaillancourt
Paige M. Vaillancourt, Esq. CT30742
Rescia Law, P.C.
5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388
