## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 7 |
| | : | |
| Harold Cole | : | CASE NO. 10-50091 (JAM) |
|     Debtor, Appellant | : | DCKT. NO. 3:21-CV-01130 (MPS) |
| | : | |
| Kara Rescia | : | |
|     Trustee, Appellee | : | |
| | : | January 18, 2022 |

### REPLY BRIEF OF THE APPELLANT, HAROLD COLE

THE MOVANT / APPELLANT
Harold E. Cole

By: _/s/ Neal P. Rogan_
Neal Rogan, Esquire
LAW OFFICES OF NEAL Rogan, LLC
315 Post Road West
Westport, CT 06880
(203) 341-8783 - phone
(203) 341-8560 - fax

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . 2

Table of Authorities  . . . . . . . . . . . . . . . . . 3

Summary of Arguments  . . . . . . . . . . . . . . . . . 4

Arguments . . . . . . . . . . . . . . . . . . . . . . . 7

      I.   Appellant has and had standing as defined by law . . 7
           a.   Documenting and valuing the bankruptcy estate . 8
           b.   Accuracy of values and competency to sell . . . 10
           c.   Operation of business . . . . . . . . . . . . . 12
           d.   Acting ultra vires  . . . . . . . . . . . . . . 13

      II.  Collateral Estoppel . . . . . . . . . . . . . . . . 15
           a.   Sale of Joshua Hill Road  . . . . . . . . . . . 16
           b.   The sale of Ramase assets . . . . . . . . . . . 17
           c.   Sale of antiques  . . . . . . . . . . . . . . . 19
           d.   Sale of exempt household furnishings  . . . . . 21

      III.  Bankruptcy Court Discretion  . . . . . . . . . . . 22

      IV.  Conflict of Interest  . . . . . . . . . . . . . . . 22

      V.   New Issues . . . . . . . . . . . . . . . . . . . . . 23
           a.   Compromise of Wiscasset, Maine  . . . . . . . . 24
           b.   Appellee contribution to Appellant's mortgage
               default  . . . . . . . . . . . . . . . . . . . 24
           c.   Payment of property taxes . . . . . . . . . . . 25
           d.   Misrepresentation . . . . . . . . . . . . . . . 25
           e.   The Bankruptcy Court was unfairly adverse to
               Appellant . . . . . . . . . . . . . . . . . . . 29

Conclusion  . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Compliance . . . . . . . . . . . . . . . 33

Certificate of Service  . . . . . . . . . . . . . . . . 33

## TABLE OF AUTHORITIES

### Cases

*In re Phillips*,
2012 WL 1232008 *2 (Bankr. D.N.J. April 12, 2012) . . . . . . 6

*In re Tarrer*, 273 B.R. at 730-31 . . . . . . . . . . . . . 6

*In re Cult Awareness Network, Inc.,*
151 F.3d 605, 607 (7th Cir. 1998) . . . . . . . . . . . . . 7

### Statues

11 U.S.C. § 704(a)(7) . . . . . . . . . . . . . . . . . . . 13

### Rules

Fed. R. Bankr. P. 2015(a)(1) . . . . . . . . . . . . . . . . 7

### Other Authorities

U.S. Department of Justice
Handbook for Chapter 7 Trustees
(Trustee's Handbook)

4. Duties of a Trustee in the Administration of a case

at p. 4-5 . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

## SUMMARY OF ARGUMENTS

From the start of the administration of this bankruptcy estate, Appellee has displayed a callous disregard for the rights of the Appellant, knowingly or negligently ignoring legal and fiduciary duties. She made no effort to fully document the assets of the estate or to establish their fair market value. Without this information her claims regarding standing are arbitrary and not supported by fact or law.

The Appellee is legally responsible to protect Appellant's interest in exempt assets. She had a specific period of time to object to any claimed exemption(s) if doing so would benefit the estate or they are deemed allowed. She filed no objections yet took possession of exempt cash and sold exempted tools and household furnishings.

Appellee claims she determined operation of the Ramase business was not conducive to the closure of the bankruptcy estate, yet she failed to familiarize herself with the business, examine the records or

interview anyone involved in the operation of the business.  It must be concluded that this decision was also arbitrary.  The same is true for Appellant's antiques business.

The legally sanctioned process for liquidating assets required the Appellee to make an independent investigation to determine whether property had value that would result in a meaningful distribution to creditors. This requires establishing fair market value and estimating the costs required to recover and sell the property. The Appellee not only failed to follow these legal requirements, she refused to.

The law clearly holds a trustee responsible for the behavior of the professionals she employs. Appellee's real estate agent failed to properly market Appellant's properties and her appraiser/auctioneer was not competent to appraise early American antiques or to present them accurately for sale thus was not capable of achieving highest and best value.

The Appellee claims to have administered this estate for the primary benefit of the unsecured creditors yet she made a $100,000 payment to a secured creditor and incurred excess administrative fees, primarily as a result of denying the Appellant his legal right to standing, potentially at a cost to the bankruptcy estate exceeding estate claims.

Appellee's brief continues a pattern of behavior offering inaccurate and misleading information and characterizing Appellant's expectation that the law would be followed, and his rights honored, as being uncooperative.  A fair and complete investigation will show the Appellee consistently and knowingly or negligently violated the bankruptcy code, her fiduciary responsibilities and abused her discretion. This resulted in actual injury, traceable to the conduct at issue for which the Appellant has the legal right to seek relief.

Although many of the matters set forth in the briefs for this appeal pertain to issues that can only

be resolved by the presentation of evidence, many are
direct matters of law and require no additional fact
finding and as such, the Appellant's motion to have the
Appellee removed as trustee and his request to file a
civil action should be granted.  The civil venue is
best suited to resolve the evidentiary issues and
identify appropriate relief.

## ARGUMENTS

I.   APPELLANT HAD AND HAS STANIDNG AS DEFINED BY LAW

    Standing is conferred by Article III of the
Constitution providing, "a party wishing to participate
in a bankruptcy proceeding must: 1) have suffered an
actual injury or show the imminence of such injury; 2)
establish that the injury is fairly traceable to the
conduct at issue; and 3) demonstrate that the requested
relief is likely to redress the injury." *In re
Phillips*, 2012 WL 1232008 *2 (Bankr. D.N.J. April 12,
2012); *In re Tarrer*, 273 B.R. at 730-31.

    Bankruptcy standing is often interpreted narrower,
however, "Occasionally a debtor might be able to

satisfy all debts with the assets from the estate and
be left with some amount remaining.  If the debtor can
show a reasonable possibility of a surplus after
satisfying all debts, then the debtor has shown a
pecuniary interest and has standing..." *In re Cult
Awareness Network, Inc.,* 151 F.3d 605, 607 (7th Cir.
1998)

Although it may be unusual for a Chapter 7 Debtor
to have a surplus estate, it does happen, and laws are
in place to protect such a Debtor.  One of the first
duties of a Trustee is to document and value all of the
assets of the estate.  This documentation will clearly
show when a Debtor has standing and what is and is not
part of the bankruptcy estate.

As more fully set out in Section IV of Appellant's
Brief (p. 14-21) the Appellee failed to perform many of
her statutory and fiduciary responsibilities.

a.   Documenting and valuing the bankruptcy estate

Appellee denies her failure to document and value
the bankruptcy estate and provides a description of

what was done (Appellee Brief p.28).  This Appellate
Court should find it telling the "evidence" presented
was gathered in 2019 and 2020, four and five years
after the start of the Chapter 7 case, and in violation
of the Bankruptcy Code requirement that a trustee file
a complete inventory of the property of the debtor
within 30 days after qualifying as a trustee (Fed. R.
Bankr. P. 2015(a)(1)).  What is more disturbing is her
willingness to present this information to try to
create the appearance that she complied with the law.

When determining whether to administer an asset, a
trustee must consider fair market value and estimated
costs necessary to the liquidation as further detailed
in the Trustee's Handbook p. 4-5.  Of the partial
inventories done, Appellee claims her figures were,
"not appraisal estimates" and "do not contemplate the
current fair market value..."  (Appellee Brief p. 16).
As no other valuations were provided, it is reasonable
to conclude the Appellee failed to perform her
statutory duty.

In the one inventory done, Appellee's claim fair market value was not contemplated is false.  The appraisal states, a market or sales approach to value was used (Doc 1151, p. 13).  Fair market value, however, was not achieved due to appraiser incompetence as further detailed in Section I(b) below.

Appellee also failed to appraise Appellant's Ramase assets, refused to appraise his household furnishings and personal collection and failed appraise the assets in the third sale prior to administering them.

b.   Accuracy of values and competency to sell

Appellant challenged the accuracy of the Appellee's and her appraiser/auctioneer's ability to accurately present Appellant's inventory for sale.  Appellee claims Appellant has not indicated what additional evidence he would present while in the same sentence acknowledging, "other than certain documents filed on the docket."  Although she makes light of these documents and claims the substance was already considered by the Bankruptcy Court (Appellee's Brief p.

15) it would not be possible for someone unfamiliar with the antiques business (and Appellee has repeatedly acknowledged she was not) to understand what these documents represent without the explanations that would have been presented in an evidentiary hearing.

Appellee claims she used qualified professionals and Robert Glass of the Hamilton Group is an antiques expert.  She further states that Appellant provided no evidence to cause her to question their qualification (Appellee Brief p. 26).  Appellant provided extensive documentation of their inability to properly describe and thus research and identify fair market value (Docs 1151 and 1152 all pages), including an irrefutable direct comparison of a sheep weathervane.  Failure to properly describe assets will also prevent online buyers from even locating them and misleads buyers as to the age, origin and condition—all critical elements to the decision to purchase and what price to pay.

A reasonably prudent person would question the Hamilton Group's qualifications. It is a simple matter

in the current online marketplace to determine how many full sales of early American furniture they ran in the years preceding the liquidation and how their expertise compared to the galleries recommended by the Appellant. Since the Hamilton Group had zero sales dedicated to early American, it can only be concluded that the Appellee did no due diligence and arbitrarily ignored Appellant's legitimate concerns.

Appellee acknowledges the Hamilton Group sought expert opinions (Appellee Brief p. 26).  This need alone should have alerted her to look into the Appellant's concerns especially since Glass under appraised and sold decoys in the first sale similar to those he used an expert for in the second.  The examination of evidence provided by the Appellant and witness testimony would also prove, one if not both of the experts employed are not experts at all.

c.   Operation of businesses

Appellee claims to have determined that the operation of Ramase was not conductive to expeditious

closure of the bankruptcy estate (Appellee Brief p. 21), yet she failed to familiarize herself with the business, examine the records or interview anyone involved in the operation of this business to make this determination. She characterizes Ramase as a woodworking business (Appellee Brief p. 21), which it was not. In addition, she let the assets sit on an unimproved lot for over two years exposed to the weather and refused to allow retail sales which would have far exceeded liquidation values and would have expedited closing the bankruptcy estate (as further detailed in Appellant's Brief Section IV(6) p. 21-25).

d.  Acting Ultra Vires

Appellee acted Ultra Vires when she failed to protect Appellant's interest in exempted assets as set out in Schedule C (1137 p.1). Appellee took $1,000 in exempted cash, sold exempted equipment and exempted home furnishings. Appellant made the Appellee aware of the exemption for the Ramase equipment prior to Appellee liquidating them. Appellee misrepresented the

status of the equipment to the court to gain permission to sell them (Appellant Brief p. 22-23).  There was no order from the court exempting the Appellee from filing a timely objection to exemptions.

Appellee sold post chapter 7 assets abusing her discretion and ignoring accurate, auditable accounting documents of Appellant's business as more fully set out in Appellant's Brief Section IV(9) p. 30-31.

As set forth in Section II(c) below, the appraisals of Bruce Gamage and Julia's, which were known to the Appellee clearly show that there was a "reasonable possibility" that this could be a surplus case and as such Appellant had and has standing. Appellee's claim that she, "has no legal obligation to consider the appraisals of a Chapter 7 debtor," (Appellee's brief p. 30) is in conflict of the recommendation of the Trustees Handbook p. 4-5 which encourages consulting with the debtor and ignores her responsibility to obtain accurate values.

## II. COLLATERAL ESTOPPEL

Appellee states, "Collateral Estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior hearing," (Appellee Brief p. 17) and this court is required "to examine whether the party opposing collateral estoppel "was fully able to raise the same factual and legal issues... assert[ed in the prior proceeding]." (Appellee Brief p. 18).

Given the Courts refusal to receive evidence and testimony, it is unreasonable to believe the matters were "fully and fairly litigated." As the Appellant was not fully able to raise the factual and legal issues, he should not be collaterally estopped from presenting them.

The Appellee indicates the, "Bankruptcy Court rationally relied on the extensive record..." Again, by trusting in the testimony of the Appellee and refusing to receive evidence to prove the record was

inaccurate, the information relied upon was not reliable.

The Appellant is not seeking to relitigate but to exercising his right to seek damages resulting from the Trustee's failure to meet her legal obligations. It is noteworthy that the Appellant's Chapter 7 Bankruptcy Proceeding has been discharged.  A suit against a trustee can be initiated for a period of up to two years after the close of the bankruptcy case so clearly final orders of the court do not preclude a debtor from seeking damages.

a.  Sale of 35 Joshua Hill

Appellee state she made good faith efforts to sell the real estate (Appellee's Brief p. 16).  She claims, "The real estate agent thereof reported to the Court and Appellant through counsel his marketing and listing efforts." (Appellee Brief p. 20) Appellant never received any such information, nor does Appellee's claim reference a document filed with the court. Appellant documented efforts to learn the list prices

which including requesting the information from the
Trustee, calling the realtor's office and online
searches.  The Trustee failed to provide the
information in conflict with 11 U.S.C. § 704(a)(7), as
more fully detailed in Appellant's Brief p. 20. Lynn at
the realtor's office claimed they did not have the
listing and Appellant was unable to find the listings
online (Doc 1154 p. 18-23).

b.  The sale of Ramase assets.

Appellee claims to have arranged for a public
auction of the Ramase assets prior to the consummation
of the sale of the Joshua Hill Property (Appellee Brief
p. 21). A review of court hearings will show this is
false, and that Appellee forced the closing prior to
securing or selling the assets thereon despite the in-
court request by the Buyer and Appellant that the
assets be sold before closing.  Appellee threatening to
take the buyers deposit if he did not close, yet this
sale would not produce adequate funds to pay off the
Chapter 7, thus time was not of the essence.

The Appellee sites various motions to liquidate the Ramase assets (Appellee Brief p. 22). A review of these motions will show the Appellee ultimately proposed to sell in excess of $1.5 million dollar's worth of assets at retail, as appraised by an expert in antique building materials (Doc 1155 p.4), in a bulk bid process, which would knock out most if not all buyers, and proposed to allow the buyer of the property to end out with the inventory and equipment for a net of $12,5000 (Doc 1155 p.3). This cannot be misconstrued as being in the best interest of the bankruptcy estate or obtaining highest and best value.

"Appellant would not agree to terms of sale in accordance with the Bankruptcy Code or rules of the Bankruptcy court." (Appellee Brief p. 22) This statement is un-factual and inflammatory, intended solely to promote the false impression that Appellant was uncooperative. If they were enforceable, Appellee would have enforced them or filed an additional motion to hold the Appellant in contempt, as she did when

Appellant asked that assets be appraised before being administered (Doc 1002).

Appellee acknowledged that the cost of "moving and storing the Ramase Assets at another location would have been cost prohibitive to the bankruptcy estate." (Appellee Brief p. 22-23) The Appellant was required by law to obtain these cost estimates prior to making the determination to administer the assets and certainly before selling the land out from under them.

The balance of Section II(b) provides an justification not based in law for the Trustee's failure to immediately liquidate these assets when she could not insure them or protect them.

c.   Sale of antiques

A bankruptcy trustee is required to sell assets such that highest and best value will be achieved, and the court ordered her to do so.  In May of 2015 Appellant provided Appellee with a proposal from Bruce Gamage to liquidate his antiques inventory (Doc 1151 p. 1-2).  When it was rejected, the Appellant asked that

Julia's handle the sale.  The Appellee claims she,

"consulted with each auction house... and none were

willing to comply with the terms and conditions

required by the bankruptcy court." (Appellee Brief p.

27) Witness testimony would show this statement untrue.

In addition, highest and best value relates the amount

received for an item not the commission rate.  Bruce

Gamage averaged 10-11 sales of antiques comparable to

the Appellant's per year so had actual knowledge of

what he could achieve for them.  He proposed to sell

them for $600,000-800,000 at a flat rate cost of 20%.

This would have resulted in a net of $480,000-640,000

to the bankruptcy estate by November of 2015 closing

the estate six years ago.  Julia's, one of the top

galleries in this industry, had a policy of advancing

50% of their low estimate to their consignors.  They

were willing to advance $200,000 to the Appellee prior

to the sale and the balance needed to pay off the

bankruptcy estate after the sale (Doc 1154 p. 2-7).

The Appellant had a zero commission agreement with

Julia's (Doc 1157 p. 1), much lower than that allowed by the bankruptcy court. If only the $200,000 advance was achieved the bankruptcy estate would have netted over $65,000 more than seller selected by the Appellee netted. Appellee's had actual knowledge she would not receive highest and best value as she was notified in advance by the Hamilton Group that they would achieve less than $200,000 thus she knowingly made a decision which damaged creditors as well as the Appellant.

d.   Sale of exempt household furnishings

Appellee denies selling exempt home furnishings by attempting to redirect the court's attention to assets sold in the third sale. Appellant's home furnishings were sold in the second sale.

As set out in Sections II(a)-(c) above, there is no court order exempting the Appellee from properly advertising 35 Joshua Hill or properly accessing whether the business there on should be run. There is no order exempting the Appellee from determining the cost to move valuable inventory and to sell the

property out from under it.  There is no order granting
permission to abandon estate assets to the buyer of the
real estate or leave inventory and equipment out of
doors to deteriorate. Although the court gave the
Appellee sole discretion in the review of post Chapter
7 assets, that should not be misconstrued as permission
to violate the laws or fail to do appropriate due
diligence related to Post Chapter 7 assets. As such,
her arguments do not support a finding of Collateral
Estoppel.

III. BANKRUPTCY COURT DISCRETION.

Both the laws regarding the removal of a trustee
for cause and to file a civil suit against a trustee,
place the burden of proof on the moving party. The
court refusal to allow the Appellant to present the
very proofs the law requires is clearly in conflict
with the law and as such was an abuse of discretion.

IV. CONFLICT OF INTEREST

Appellee's foundation for her claim that she had no
conflict of interest is once again seated in her claim

that Appellant did not have standing.  Appellant did

and does have standing as more fully detailed in

Section I above.  As such he has a pecuniary interest

in the bankruptcy estate and the right to seek damages.

Appellee did and does have a conflict of interest as

more fully detailed in Appellant's Brief, Section V p.

31-33 and thus should have withdrawn.

Appellee incorrectly asserts that Appellant

suggests the Trustee Handbook has precedential weight

(Appellee Brief p. 40) in a manner which seems to

suggest that she did not have a legal obligation to

withdraw. Appellant clearly documented he cites the

Trustees Handbook because it is not in conflict with

law, provides clarifications and establishes that the

Appellee knew or should have known of these

responsibilities (Appellant Brief p. 13-14).

V.   NEW ISSUES

Appellee proposes that Appellate raises new issues

which should not be considered but acknowledges

existing exceptions (Appellee Brief p. 41).  Appellant

contends that the issue raised must be considered to avoid a manifest injustice and/or the issues are purely legal and do not require additional fact-finding.

a.  Compromise of Wiscasset, Maine.

Bankruptcy law is clear, as more fully set out in Appellant's Brief at p. 18, the Trustee is required to abandon property that if fully encumbered.  The Appellee did not.  Bankruptcy law also requires a trustee, as more fully set out in Appellant's Brief at p. 19, to pay property taxes or abandon the property. The Appellee did not.

b.  Appellee contribution to Appellant's mortgage default.

The failure of the Appellee to sell assets for highest and best value, her actions which caused assets to be lost and devalued, the sale of exempt assets and the sale of assets not part of the bankruptcy estate as further set out within, prevented Appellant from meeting trial payments after approval for a mortgage modification.

c.   Payment of property taxes.

Appellant's position in regard to his property

taxes did not relieve the Appellee from following

Bankruptcy law.  As more fully set out in Appellant's

Brief p. 21, a Trustee is required to pay real estate

taxes as an administrative expense, or she must abandon

the property.  She did not.  Appellee here again

references the Appellant's failure to close a loan with

Sachem Capital which would have paid off the Chapter 7.

Appellee was directly responsible for the failure of

this loan to close as more fully documented in Section

V(d)(2) below.  Raising this issue is once again

intended to create the illusion that Appellee acted

correctly when in fact no action on the part of the

Appellant released the Appellee from her legal

responsibility to pay the taxes or abandon the

property.

d.   Misrepresentations

Like most if not all of Appellee's previous filing,

this brief contains many misrepresentations.  They are

so extensive it is not possible within the limits of
the appeal format to present them all, but examples are
as follows:

1.  As more fully set out in Section II(a) above,
Appellee represents work done four and five years into
the bankruptcy case as fulfilling her requirement to
inventory the assets of the estate within 30 days after
qualifying as trustee.

2.  In numerous places in her Brief, Appellee
claims Appellant's failure to close a loan with Sachem
Capital had nothing to do with her.  In footnote 6
(Appellee Brief p. 23) she claims accurate tax pay off
information was not provided.  It was provided by Linda
Lewis, Woodbury's tax collector on 12/16/16 as required
by the lender prior to issuing the loan commitment (Doc
1153, p. 14) and was updated every month that the
Appellee refused to provide a court approved final
statement required by the lender to insure he would be
able to secure the property at the close.  Two and a
half months after it was requested, the Appellee

provided a statement which was marked up by hand and clearly not court approved (Doc 1153, p. 18).  When the Trustee made this claim during the engagement with Sachem, the lender confirmed they could close within 5 days of receiving her statement (Doc 1153, p. 24).  Due to the Appellee's refusal to provide the needed document for a prolonged period of time, new taxes and increased interest drove the payoff amount above the loan to value ratio allowed by the lender and they had to withdraw their commitment.

Had the Appellee abandoned the property, or provided the statement required by the lender, Appellant could have closed the loan and his bankruptcy in January of 2017, five years ago.

3.  Appellee claims Appellant's failure to turn over assets prevented her from obtaining insurance. Appellant did not fail to turn over assets and even if he had it would not impact Appellee's ability to insure what was in her possession.

4.   "Appellee met with Appellant and his Attorney in Fact extensively throughout the bankruptcy case regarding administration of the estate and sale of the assets." (Appellee Brief p. 28) The truth is the Appellee refused repeated requests to meet and ultimately refused to meet unless Appellant agreed not to object to any fees or expenses of the auctioneer (Doc 1130, p. 12).

5.   Appellee claims, several groups of assets were concealed (Appellee's brief p. 28).   A review of the underlying documents in which the Appellee first made these claims will show that she is speaking of a storage area on the second floor of Appellant's shop and his "game room."   The storage area encompassed two thirds of the second floor of the shop.   The auctioneers had free access to this building and cleaned out the other third of the second for the first sale.   Appellant was unaware and should not be faulted for the auctioneer's failure to open the door.   This was a "parts room" and when the auctioneers went

through it for a subsequent sale they found only 3 items worth brining to sale.  The game room was attached to the area where the auctioneers took most of the picture frames for the first sale.  There is no door between the two rooms.  The items in the game room were part of the Appellant's personal collection and the first sale was compromised solely of inventory.  In addition, Appellant was prepared to present a witness who watched Appellant show off the head mounts from his African and Alaskan hunts to the Appellee on her first visit.

Again, the above represent a very small sample of the misrepresentations made in the Appellee's Brief and prior filings, as made necessary by the format restrictions for this brief.

e.  The Bankruptcy Court was unfairly adverse to Appellant.

The Bankruptcy Court pronouncements are based solidly in the representations of the Appellee and were adverse to the Appellant.  Refusing to receive proofs

with necessary testimony/explanations prior to judgement shows a bias to the Appellee that is not based in law.  Essentially the findings against the Appellant have been made, "Because the Trustee said so."

## CONCLUSION

Appellee's failure to adhere to the bankruptcy code has had far reaching negative impacts on the bankruptcy estate including but not limited to the loss of irreplaceable items, extensive unnecessary litigation, prolonging the duration of the bankruptcy and damaging creditors.  From the start of this case, the Appellee violated her fiduciary duties and acted ultra vires. Ultimately, she liquidated a substantial number of post Chapter 7 assets. These actions were not mistakes in judgement but an established pattern of behavior.

The purpose of bankruptcy is to give the debtor a fresh start. Appellate has been forced to watch his businesses systematically destroyed, his real estate portfolio lost, his inventory lost, destroyed, devalued

or improperly liquidated and after struggling to restart his antiques business his post Chapter 7 assets taken, destroying his ability to support himself rather than giving him a fresh start.

Although many of the matters presented in the briefs for this appeal can only be resolved by the presentation of evidence, many are direct matters of law that require no additional fact finding. Even one instance of acting contrary to the law is adequate to allow the Appellant to seek relief.  When many of the very foundational aspects of the bankruptcy process have been ignored or violate it makes it undeniable that the Appellate has suffered actual injury fairly traceable to the conduct at issue.

Because the Bankruptcy Court failed to allow the Appellant a single evidentiary hearing to present evidence or witness testimony, this court should not defer to the trial court's judgement as it has failed to obtain a first-hand view of the witnesses or

evidence with which to assess credibility and probative value.

It should be of great legal significance to this Appellate Court, that despite the Appellee's brief and voluminous 600+ pages of appendices, the Appellee cannot point to anywhere in the record where the Bankruptcy Court allowed the Appellant an actual evidentiary hearing on Appellant's motion to remove the Chapter 7 Trustee or to allow a hearing on Appellant's motion to initiate a civil action against the Chapter 7 Trustee.

By granting the Appellant his "day in court" complete with the appropriate discovery process, the actual facts can established and the extent of his damages be determined, such that the requested relief is likely to redress the injury. For reasons set forth herein, the Appellant asks that his motions to remove the trustee and to file a civil action be granted.

## Certificate of Compliance with Type-Volume Limit

Pursuant to Federal Rule of Bankruptcy Procedure 8015(7)(i)(h) the undersigned as counsel for the Appellant certifies that he has relied on the word count of the word processing system used to prepare this brief and further certifies that the total number of words contained in the brief are 4,602. Further This document complies with the typeface requirements of Ded R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 16.43 and using *Courier New* Font with a font size of 14.

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the courts electronic filing system or by mail to anyone unable to accept electronic filing as

indicated on the notice of electronic filing.  Parties

may access this filing through the courts CM/ECF

System.

By:   /s/ Neal P. Rogan
Neal Rogan, Esquire