## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
                                                    )
In re:                                              )
HAROLD E. COLE                                      )        BANKR. CASE NO.
                                                    )            10-50091 (JAM)
Debtor                                              )
_____)
Appellant:                                          )
    HAROLD E. COLE                               )
v.                                                  )
                                                    )
Notice:                                             )
    U.S. TRUSTEE                                 )        USDC CASE NO.
                                                    )            3:21-cv-01130-MPS
v.                                                  )        Consolidated with
                                                    )            3:21-cv-01131-MPS
Appellee:                                           )
    KARA S. RESCIA                               )
    Chapter 7 Trustee                            )        FEBRUARY 1, 2022
_____)

## <ins>APPELLEE'S MOTION FOR LEAVE TO FILE SUR-REPLY</ins>

Pursuant to Fed. R. Bankr. P. 8013, Fed. R. App. P. 27, and D. Conn. L. Civ.

R. 7(d), Kara S. Rescia, Chapter 7 Trustee for the Bankruptcy Estate of Harold E.

Cole ("Appellee"), hereby respectfully moves this Court for leave to file a sur-reply

to address certain new allegations raised and misrepresentations made by Harold E.

Cole ("Appellant") in the Reply Brief of the Appellant, Harold Cole filed on January

18, 2022 (Doc. Id. 30) ("Reply Brief"). In support hereof, Appellee states:

1. Appellant filed the Reply Brief in support of the Brief of the Appellant, Harold

Cole, which was filed on November 17, 2021 (Doc. Id. 26).

2.  The Reply Brief raises certain arguments for the first time with regard to the duties of Appellee as trustee and makes certain misrepresentations which Appellee respectfully contends are material to the appeal at hand.

3.  Although Appellee emphatically disagrees with the gross majority of the Reply Brief, Appellee seeks only to briefly clarify the duties of a Chapter 7 bankruptcy trustee and address the more egregious misrepresentations made therein.

4.  Appellee asserts that good cause exists to address these issues posed by the Reply Brief in order to correct the record and has accordingly drafted a proposed sur-reply, which is attached hereto as Exhibit A.

**WHEREFORE**, Appellee respectfully requests this Court grant this Motion, docket the sur-reply attached hereto or in the alternative set a reasonable deadline for Appellee to do so, and grant any further relief which this Court deems just and proper.

Respectfully submitted,

KARA S. RESCIA, TRUSTEE

FOR THE BANKRUPTCY ESTATE OF
HAROLD E. COLE

BY HER COUNSEL,

By:/s/ Paige M. Vaillancourt
    Paige M. Vaillancourt, Esq. CT30742
    Kara S. Rescia, Esq. CT18001
    Rescia Law, P.C.

5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Email: kara@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388

Dated February 1, 2022

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. Bankr. P. 8013(f), the undersigned hereby certifies that the foregoing Appellee's Motion for Leave to File Sur-Reply complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(b) and Fed. R. App. P. 32(a)(7) because, excluding all parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 261 words and complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 Version 15.0.5153.1000 in 14 point Times New Roman.

Dated at Enfield, Connecticut this 1st day of February, 2022.

/s/ Paige M. Vaillancourt
Paige M. Vaillancourt, Esq. CT30742
Rescia Law, P.C.
5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Fed. R. Bankr. P. 8011(d), the undersigned hereby certifies that on the 1st day of February, 2022, a true and correct copy of the foregoing Appellee's Motion for Leave to File Sur-reply with Exhibit A were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of the filing will be sent via email to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated at Enfield, Connecticut this 1st day of February, 2022.

/s/ Paige M. Vaillancourt
Paige M. Vaillancourt, Esq. CT30742
Rescia Law, P.C.
5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388



USDC APPEAL: 3:21-cv-01130-MPS
Consolidated with USDC APPEAL: 3:21-cv-01131-MPS

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In re HAROLD E. COLE, Debtor

HAROLD COLE, APPELLANT

v.

KARA S. RESCIA, CHAPTER 7 TRUSTEE
OF THE BANKRUPTCY ESTATE OF HAROLD E. COLE, APPELLEE

Appeal from the United States Bankruptcy Court
Bankruptcy Case No. 10-50091 (JAM)

APPELLEE'S SUR-REPLY

KARA S. RESCIA, TRUSTEE
FOR THE BANKRUPTCY ESTATE
OF HAROLD E. COLE

BY HER COUNSEL,

By:/s/ Paige M. Vaillancourt
Paige M. Vaillancourt, Esq. CT30742
Kara S. Rescia, Esq. CT18001
Rescia Law, P.C.
5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Email: kara@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388

1

# **TABLE OF CONTENTS**

Table of Contents ............................................................................ 2

Table of Authorities ....................................................................... 3

Introduction ................................................................................... 4

    I.     Sale of Real Estate Pursuant to 11 U.S.C. § 363 ............................ 5

    II.    Misrepresentation Regarding Administrative Expenses of the Bankruptcy Estate ............................................................ 6

    III.   Trustee's Duty to Inventory and Report Pursuant to Fed. R. Bankr. P. 2015(a)(1) .............................................................. 6

    IV.   Standing of a Chapter 7 Debtor ....................................................... 7

    V.    Misrepresentations Made Regarding Bankr. Doc. Ids. 1136 and 1147 ................................................................................... 8

    VI.   Trustee's Ability to Operate the Business of a Chapter 7 Debtor... 8

    VII.  Appellee Acted in Accordance With Her Duties and Final Orders of the Bankruptcy Court .................................................. 9

    VIII. Trustee's Lack of Obligation to Consider Information Provided by a Chapter 7 Debtor .......................................................... 9

    IX.   Trustee's Duties Pursuant to 11 U.S.C. § 704(a)(7)..................... 10

    X.    Appellee's Motion to Show Cause ................................................ 11

    XI.   Appellant's Request for Relief ..................................................... 11

Conclusion ................................................................................... 12

Certificate of Compliance ............................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Kohout v. Nationstar Mortgage, LLC*,
    576 B.R. 290 (Bankr. N.D.N.Y. 2017) ............................................. 11–12

*In re Lundborg*,
    110 B.R. 106 (Bankr. D. Conn. 1990) .................................................... 10

**STATUTES**

11 U.S.C. § 363 .................................................................................... 5–6
11 U.S.C. § 704(a)(7) ............................................................................... 10
11 U.S.C. § 721 ........................................................................................ 9

**RULES**

Fed. R. Bankr. P. 2015(a)(1) .................................................................... 6
Conn. L. R. Bankr. P. 6004-2 ................................................................... 11

**OTHER AUTHORITIES**

Handbook for Chapter 7 Trustees,
U.S. DOJ Executive Office for United States Trustees ....................... 7, 9–10

## **INTRODUCTION**

Kara S. Rescia, Chapter 7 Trustee for the Bankruptcy Estate of Harold E. Cole ("Appellee"), hereby respectfully submits this sur-reply to the Reply Brief of the Appellant, Harold Cole ("Appellant"), filed on January 18, 2022 (Doc. Id. 30) ("Reply Brief"), for the purpose of correcting the record as to certain new allegations raised and misrepresentations made therein which are material to the instant appeal.

Appellee does not concede any factual or legal assertion made by Appellant in the Reply Brief and emphatically disagrees with the gross majority of those assertions made therein. Appellee respectfully requests that this Court refer to Appellee's Brief, filed on December 16, 2021 (Doc. Id. 27) ("Appellee Brief"), for Appellee's position on any assertion made by Appellant within the Reply Brief which is not specifically addressed in this sur-reply. In rendering the orders denying Appellant's Third Amended Motion to Remove Trustee (Bankr. Doc. Id. 1246) and Appellant's Motion for Leave of Court to File Amended Civil Action (Bankr. Doc. Id. 1247) (together, the "Orders"), the Bankruptcy Court considered the actual history of this case, which is extensive, including Appellant's numerous objections for which he had a generous amount of time and opportunity to present his arguments with support, despite his failure to meet his burden and establish that he has standing. *See* Appellee Brief at 13–17; Transcript of August 10, 2021 Hearing at 14–37[1].

---

[1] At this hearing, the Bankruptcy Court explicitly afforded Appellant the

Accordingly, Appellee respectfully requests this Court affirm the Orders of the Bankruptcy Court and deny Appellant's requests for relief.

I.      Sale of Real Estate Pursuant to 11 U.S.C. § 363

In an allegation raised for the first time in the Reply Brief, Appellant incorrectly asserts that Appellee improperly paid a secured creditor to the detriment of unsecured creditors of the bankruptcy estate in violation of her duties as trustee. Reply Brief at 6. Pursuant to 11 U.S.C. § 363, Appellee was required to pay the secured creditor referenced in the Reply Brief at 6, as well as tax claims secured against the property located at 35 Joshua Hill Road, Woodbury, Connecticut ("Joshua Hill Property"), in order to consummate said sale of estate property free and clear of liens in accordance with the Motion for Order Authorizing and Approving Private Sale of Property of the Estate Free and Clear of All Liens and Encumbrances ("Motion to Sell Joshua Hill Property") (Bankr. Doc. Id. 622) and the order approving same (Bankr. Doc. Id. 670). Because valid liens attach to the

---

opportunity to provide specific examples to support his allegations, as it had during numerous other hearings, stating, "Point me to one example, and I'm giving you the benefit of the doubt here because I don't believe you've established standing. But give me an example where Attorney Rescia has acted outside of her statutory authority or the authority provided in a court order with the regard to the retention of auctioneers and the sale of the assets." *See* Transcript of August 10, 2021 Hearing at 14. After hearing Appellant's proffer, the Bankruptcy Court concluded, "Aside from the issues with regard to the standing, which I again believe your client has not established that it has standing to make the arguments, nonetheless, the Court has allowed it for years in this case, and now a Chapter 7 case. Those arguments all fail, they are without merit, and your motion is denied." *Id.* at 37.

proceeds of a § 363 sale, in order for a bankruptcy estate to realize any benefit, those liens must be paid in full first. However, in this case, the secured creditor referenced by Appellant agreed to accept less than half of the payoff amount of the lien, which brought significant benefit to the Bankruptcy Estate, as set forth in the Motion to Sell Joshua Hill Property. Appellee dispensed with her duty in accordance with this statute to the benefit of the Bankruptcy Estate.

II.     Misrepresentation Regarding Administrative Expenses of the Bankruptcy Estate

Appellant alleges that Appellee incurred "excess administrative fees, primarily as a result of denying the Appellant his legal right to standing." Reply Brief at 6. The majority of the administrative expenses were incurred in this case due to its highly adversarial nature. These expenses continue to accrue with every objection and litigious action by Appellant.

III.    Trustee's Duty to Inventory and Report Pursuant to Fed. R. Bankr. P. 2015(a)(1)

In another allegation raised for the first time in the Reply Brief, Appellant incorrectly asserts that Appellee failed to report the results of her inventory of property of the Bankruptcy Estate to the Bankruptcy Court, citing Fed. R. Bankr. P. 2015(a)(1). Reply Brief at 9. Federal Rule of Bankruptcy Procedure 2015(a)(1) requires a trustee to inventory property of a bankruptcy estate and transmit said inventory to the United States Trustee within 30 days of appointment, unless such

inventory has been filed. Subsection 4(C)(3)(a) of the Trustee Handbook interprets the trustee's duty under this rule. It states that a trustee may accept a debtor's schedules of real and personal property as an inventory unless it lacks sufficient detail to determine the nature of the assets for the purpose of administration. Trustee Handbook at 4-3. It further states that a debtor has a duty to cooperate with the trustee in the creation of such inventory. *Id.* Appellee complied with this duty and has performed it to the best of her abilities despite Appellant's lack of cooperation, which includes the concealment of assets, as documented throughout the docket of this case. *See* Motion for an Order to Show Cause Why Debtor and Debtor's Authorized Agents Should Not Be Held in Contempt, filed on December 27, 2019 (Bankr. Doc. Id. 1002) ("Motion to Show Cause"). Appellee made the appropriate initial report to the United States Trustee and has timely provided all subsequent reports to the United States Trustee throughout this case in accordance with this duty. The United States Trustee, which has been intimately involved in the administration of this case, has not made any allegation that Appellee failed to fulfill this or any other duty. *See* Appellee Brief at 40–41.

IV.   Standing of a Chapter 7 Debtor

Appellant continues to fail to demonstrate that he has standing and patently misinterprets the nature of a Chapter 7 debtor's standing. Reply Brief at 7–8, 23. The issue of standing is discussed at length in Appellee's Brief at 13–17 and will not be

reiterated here for the sake of brevity. Appellant has alleged no fact in the Reply Brief which would imbue him with standing. Reply Brief at 7–8. Moreover, Appellant incorrectly asserts that because he allegedly has standing, he has a pecuniary interest in the Bankruptcy Estate and the right to seek damages. Reply Brief at 23. A debtor must first demonstrate that they have a pecuniary interest in order to have standing and, even then, a debtor must satisfy the Barton Doctrine and overcome a trustee's immunity in order to bring suit against a trustee for damages. *See* Appellee Brief 13–17, 32–39 and cases cited therein. Appellant had ample opportunity to meet his burdens of proof and has not met those burdens to date.

V.    Misrepresentations Made Regarding Bankr. Doc. Ids. 1136 and 1147

In the Reply Brief, Appellant misrepresents Bankr. Doc. Ids. 1136 and 1147 as "partial inventories" done by Appellee. Reply Brief at 9. These two documents are discussed in Appellee's Brief at 16–17. They are documents created and filed on the docket by Appellant. They were not created by Appellee. They are not an accurate representation of the actual inventories done by Appellee. This is a gross misrepresentation of fact by Appellant.

VI.    Trustee's Ability to Operate the Business of a Chapter 7 Debtor

Appellant misunderstands a trustee's ability to operate the business of a Chapter 7 debtor and makes a number of misrepresentations which will not be addressed in this sur-reply. Reply Brief at 12–13. The Appellee Brief addressed this issue at 21–

26, but Appellee further offers that 11 U.S.C § 721 provides that a trustee may operate the business of a Chapter 7 debtor "for a limited period." Even if Appellee had determined in her business judgment after her extensive investigation that it was in the best interest of the Bankruptcy Estate to operate the Ramase business as a going concern for a limited period and sought Court approval of same, such operation would not be in accordance with the expectations of Appellant. Most importantly, Appellant is collaterally estopped from raising this issue as the Ramase assets were sold in accordance with final orders of the Bankruptcy Court (Bankr. Doc. Id. 896).

VII.    <u>Appellee Acted in Accordance With Her Duties and Final Orders of the Bankruptcy Court</u>

Appellant has not made any showing of any ultra vires act taken by Appellee. Appellee addressed the allegations regarding the sale of exempt assets on a number of occasions. Appellee Brief at 21, 30–31, 38 at n. 15; *see, e.g.*, Transcript of August 31, 2021 Hearing at 50–51. Appellant has not provided any example of any asset which was improperly sold or possessed by Appellee. Appellant acted and sold assets of the Bankruptcy Estate in accordance with her duties and final orders of the Bankruptcy Court, which were not appealed by Appellant.

VIII.    <u>Trustee's Lack of Obligation to Consider Information Provided by a Chapter 7 Debtor</u>

Appellant incorrectly asserts that the Trustee Handbook imposes a legal

obligation on trustees to consider information furnished by a debtor. Reply Brief at 14. As discussed in Appellee's Brief at 40, the Trustee Handbook is not law, but rather a guidebook for trustees. Despite there being no legal obligation to do so and despite Appellant's misrepresentation to the contrary, Appellee met extensively with Appellant and his representative and did consider a volume of information provided by Appellant. *See* Appellee Brief at 27–30. That Appellee ultimately did not use the auction houses or valuations suggested by Appellant and rejected a number of Appellant's claims does not mean Appellee did not act in accordance with her duties. This issue is touched on in Appellee's Objection to the Motion to Remove and Response to Memorandum of Law, filed on February 10, 2021 ("Objection and Response") (Bankr. Doc. Id. 1190), in the discussion of *Lundborg*, in which case the allegations made were substantially similar. Objection and Response at 17–19. Appellant acted and sold assets of the Bankruptcy Estate in accordance with her duties and final orders of the Bankruptcy Court, which were not appealed by Appellant.

## IX.    Trustee's Duties Pursuant to 11 U.S.C. § 704(a)(7)

In an additional allegation raised for the first time in the Reply Brief, Appellant asserts, without stating any clear basis, that Appellee failed to provide Appellant with requested information in violation of 11 U.S.C. § 704(a)(7). Reply Brief at 17. Appellant does not state what information Appellee failed to provide to him.

Appellee therefore cannot adequately respond to this allegation. However, it appears that this allegation relates to the final order of the Bankruptcy Court authorizing the sale of the Joshua Hill Property (Bankr. Doc. Id. 670), which was not appealed by Appellant.

X.    Appellee's Motion to Show Cause

Appellant appears to allege for the first time in the Reply Brief that Appellee filed the Motion to Show Cause in retaliation for Appellant asking for an appraisal of assets before their administration. Reply Brief at 18–19. Appellee filed the Motion to Show Cause for a variety of reasons, including Appellant's lack of cooperation with Appellee's inventory of assets. *See* Motion to Show Cause. In making this allegation, Appellant by extension alleges that Appellee sold assets without valuing them. Reply Brief at 18–19. In accordance with Conn. L. R. Bankr. P. 6004-2, Appellee filed sale motions which included the gross auction values for all assets to be sold in each sale. These sale motions were approved by the Bankruptcy Court in final orders, as set forth in the Order Granting Final Application for Compensation and Reimbursement of Expenses, entered on April 26, 2021 (Bankr. Doc. Id. 1224), all of which Appellant did not appeal.

XI.    Appellant's Request for Relief

Appellant requests relief in the Reply Brief which cannot be granted by an appellate court. As stated in the Appellant Brief, "On an appeal, 'a district court may

affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Kohout v. Nationstar Mortgage, LLC*, 576 B.R. 290, 295 (N.D.N.Y. 2017); *see* Appellant Brief at 4, Doc. Page 11. Despite this recital, Appellant "asks that his motions to remove the trustee and to file a civil action be granted." Reply Brief at 32. Appellant specifically requests inappropriate relief which cannot be granted by a district court on appeal.

Additionally, Appellant misstates the current status of the bankruptcy case. Appellant states that the case "has been discharged" and as such he is entitled to seek damages for a period of two years following the closure of the case. Reply Brief at 16. Although an Order of Discharge has been entered in this case, the case is not closed as administration is not complete. Appellee has not yet filed her final report in this case. Regardless, Appellant fails to understand that the Barton Doctrine and principals of trustee immunity[2] would require him to seek leave from the Bankruptcy Court to file a state court action against Appellee, even after the case is closed. Appellant has not met his burden proscribed by these legal principals.

## CONCLUSION

The Reply Brief loses sight of the issues in this appeal and mires them in misrepresentations and new allegations. Appellant has not shown that he had standing to file the Third Amended Motion to Remove Trustee or the Motion for

---

[2] *See* Appellee Brief at 32–39.

Leave of Court to File Amended Civil Action or, alternatively, why this appeal is not a collateral attack on issues which were subject to final orders of the Bankruptcy Court. Appellant has not shown how Appellee has a conflict of interest with the Bankruptcy Estate. Appellant has not shown how the Bankruptcy Court abused its discretion by denying Appellant's requests for evidentiary hearings after its consideration of the "facts and circumstances of this case, the orders of [the Bankruptcy Court], the history of this proceeding, the docket and record of this case, and the fact that [Appellant's] arguments did not meet [his] burden . . ." Transcript of August 10, 2021 Hearing at 50.

Appellant has had his day in court. Despite Appellant's failure to establish standing, the Bankruptcy Court heard and considered Appellant's arguments, which have essentially been the same allegations rephrased in a number of ways throughout the years of this case. Appellant has had ample opportunity to prove his case and has failed. This Bankruptcy Estate has been severely burdened by protracted and frivolous litigation to the detriment of creditors and it should not be allowed to continue. Therefore, Appellee respectfully requests that this Court affirm the Orders of the Bankruptcy Court and deny Appellant's requests for relief.

## **CERTIFICATE OF COMPLIANCE**

In accordance with Fed. R. Bankr. P. 8014(b), the undersigned hereby certifies that the foregoing Appellee's Sur-Reply complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(b) and Fed. R. App. P. 32(a)(7) because, excluding all parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 2,511 words and complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 Version 15.0.5153.1000 in 14 point Times New Roman.

Dated at Enfield, Connecticut this 1st day of February, 2022.

/s/ Paige M. Vaillancourt
Paige M. Vaillancourt, Esq. CT30742
Rescia Law, P.C.
5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388

USDC APPEAL: 3:21-cv-01130-MPS
Consolidated with USDC APPEAL: 3:21-cv-01131-MPS

---

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

In re HAROLD E. COLE
Debtor

---

HAROLD COLE, APPELLANT

v.

KARA S. RESCIA, CHAPTER 7 TRUSTEE
OF THE BANKRUPTCY ESTATE OF HAROLD E. COLE, APPELLEE

---

Appeal from the United States Bankruptcy Court
Bankruptcy Case No. 10-50091 (JAM)

---

APPELLEE'S SUPPLEMENTAL APPENDIX

---

KARA S. RESCIA, TRUSTEE
FOR THE BANKRUPTCY
ESTATE OF HAROLD E. COLE

BY HER COUNSEL,

By:/s/ Paige M. Vaillancourt
Paige M. Vaillancourt, Esq. CT30742
Kara S. Rescia, Esq. CT18001
Rescia Law, P.C.
5104A Bigelow Commons
Enfield, CT 06082
Email: paige@ctmalaw.com
Email: kara@ctmalaw.com
Tel No.: (860) 452-0052
Fax: (888) 970-8388

## <u>TABLE OF CONTENTS</u>

**CASES**

*Kohout v. Nationstar Mortgage, LLC*,
    576 B.R. 290, 295 (Bankr. N.D.N.Y. 2017) ..................................................................3

**STATUTES**

11 U.S.C. § 363 .............................................................................................................9

11 U.S.C. § 704(a)(7) ...................................................................................................14

**RULES**

Fed. R. Bankr. P. 2015(a)(1) ........................................................................................16

Conn. L. R. Bankr. P. 6004-2
    As amended March 2021 ..........................................................................................19

**OTHER AUTHORITIES**

Handbook for Chapter 7 Trustees,
    U.S. DOJ Executive Office for United States Trustees ..............................................27

**DOCUMENTS AND ORDERS OF RECORD**

Bankr. Doc. Id. 622,
    Motion for Order Authorizing and Approving Private Sale of Property of the
    Estate Free and Clear of All Liens and Encumbrances ..............................................30

576 B.R. 290

**Kevin J. KOHOUT; and Susan R. Kohout, Appellants,**
**v.**
**NATIONSTAR MORTGAGE, LLC; and Ch. 13 Trustee, Appellees.**

**3:16–CV–1372**

**United States District Court, N.D. New York.**

**Signed September 11, 2017**

[576 B.R. 291]

LAW OFFICES OF STEVEN R. DOLSON, STEVEN R. DOLSON, ESQ., OF COUNSEL, 126 N. Salina St., Suite 3B, Syracuse, NY 13202, Counsel for Appellants.

SANDELANDS EYETT, LLP, LAURENCE P. CHIRCH, ESQ., MATTHEW T. EYET, ESQ., OF COUNSEL, 1545 U.S. Highway 206, Suite 304, Bedminster, NJ 07921, Counsel for Appellee Northstar Mortgage, LLC.

OFFICE OF THE CHAPTER 13 TRUSTEE, MARK W. SWIMELAR, ESQ., OF COUNSEL, 250 South Clinton Street, Suite 203, Syracuse, NY 13202.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

Currently before the Court, in this bankruptcy proceeding commenced by Kevin J. Kohout and Susan R. Kohout ("Debtors"), is an appeal filed by Debtors seeking review of an Order by United States Bankruptcy Judge Diane Davis dated November 10, 2016, denying Debtors' motion seeking a judgment declaring the mortgage lien held by Nationstar Mortgage, LLC ("Creditor" or "Nationstar") void by operation of 11 U.S.C. § 506(d). (Dkt. No. 1.) For the reasons that follow, the appeal is denied and Bankruptcy Judge Davis's Order is affirmed.

## I. RELEVANT BACKGROUND

### A. Events Alleged in Debtors' Adversary Complaint

Generally, in their Adversary Complaint, Debtors allege as follows. (Dkt. No. 5, Attach. 11.) On April 14, 2010, Debtors filed a voluntary Chapter 13 petition and Chapter 13 plan. (*Id.*, ¶ 5.) On August 4, 2010, the plan was confirmed by the Bankruptcy Court. (*Id.*, ¶ 6.) On June 14, 2010, Bridgefield Corp. ("Bridgefield"), the company servicing Debtors' mortgage on property located at 16200 Main Street (a/k/a 16200 State Highway 23), Davenport, New York (the "Property"), filed a Proof of Claim that alleged a debt of $127,123.67 with an arrearage claim of $19,665.63. (*Id.*, ¶ 7.) The Proof of Claim was docketed as Claim # 13. (*Id.*) On September 16, 2010, Aurora Bank, FSB ("Aurora") filed a transfer of claim other than for security, which transferred Claim # 13 from Bridgefield to Aurora. (*Id.*, ¶ 8.) On October 14, 2010, the Chapter 13 Trustee, Mark W. Swimelar, filed a Notice of Claim that included Claim # 13. (*Id.*, ¶ 9.)

On December 3, 2010, Debtors filed an objection to the Proof of Claim that was filed by Bridgefield. (*Id.*, ¶ 10.) The basis for the objection was that (a) the Proof of Claim did not include any documentation showing that Bridgefield had a secured interest in the Property, and (b) Debtors did not believe that the arrearage amount was accurately stated. (Dkt. No. 4, Attach. 1.) On January 27, 2011, the Court issued an Order disallowing Claim # 13. (Dkt. No. 5, Attach. 11, ¶ 11.) The Order stated, as the basis for the disallowance of the claim, that "[n]o opposition was filed and no hearing was held." (Dkt. No. 4, Attach. 3.) On April 25, 2011, Aurora filed a motion for relief from the automatic stay but it withdrew its motion on July 22, 2011. (Dkt. No. 5, Attach. 11, ¶ 12.) On July 15, 2012, a transfer of claim other than for security was filed, transferring Claim # 13 from Aurora to Nationstar, after Nationstar took over the servicing of the mortgage loan. (*Id.*, ¶ 13.)



## B. Proceedings Following the Filing of the Adversary Complaint

On June 18, 2015, Debtors filed their Adversary Complaint seeking a determination

[576 B.R. 292]

of whether the mortgage lien held by Nationstar was void by operation of 11 U.S.C. § 506(d) as well as whether the lien was dischargeable. (Dkt. No. 5, Attach. 11.) On August 5, 2015, Nationstar filed its Answer with affirmative defenses. (Dkt. No. 5, Attach. 12.)

On March 21, 2016, Nationstar filed a motion for summary judgment, seeking an Order dismissing the Adversary Proceeding and allowing its secured first-priority mortgage lien to pass through bankruptcy. (Dkt. No. 6, at 51–67.) On the same date, Debtors also moved for summary judgment, seeking a judgment declaring the mortgage lien held by Nationstar void by operation of 11 U.S.C. § 506(d). (Dkt. No. 6, Attach. 1.) The parties filed a joint statement of facts in connection with their respective motions. (Dkt. No. 5, Attach. 13.)

On April 4, 2016, Nationstar filed its opposition to Debtors' motion. (Dkt. No. 6, Attach. 2.) On April 5, 2016, Debtors filed their opposition to Nationstar's motion. (Dkt. No. 6, Attach. 3.) On April 13, 2016, Nationstar filed its reply memorandum of law. (Dkt. No. 6, Attach. 4.) On April 21, 2016, Bankruptcy Judge Davis heard oral argument on the parties' respective motions. (Dkt. No. 6, Attach. 7.) On November 10, 2016, the Bankruptcy Court issued its Memorandum–Decision and Order granting Nationstar's motion and denying Debtors' motion. (Dkt. No. 2, at 8–21.) On November 16, 2016, Debtors filed a Notice of Appeal. (*Id.* at 22–23.)

## C. Parties' Arguments on Appeal

### 1. Debtors' Brief-in-Chief

Generally, liberally construed, Debtors' appellate brief asserts three arguments. (Dkt. No. 9 [Debtors' Mem. of Law].)

First, Debtors argue that the disallowance of Claim # 13 should be treated the same way as a disallowance under 11 U.S.C. § 502(b)(1) because Nationstar's predecessor-in-interest (i.e., Aurora or Bridgefield) failed to present evidence substantiating its Proof of Claim after Debtors filed an objection. (*Id.* at 12–13.)[1] Furthermore, Debtors argue that the Bankruptcy Court erred in its analysis when it determined that their objection was procedural rather than substantive. (*Id.* at 14.) Debtors rely primarily on *In re Blendheim*, 803 F.3d 477 (9th Cir. 2015), and argue that, in that case, the Ninth Circuit held that a creditor's lien was properly voided by the bankruptcy court under 11 U.S.C. § 506(d) after the creditor filed a timely proof of claim and received timely service of the debtors' claim objection but failed to contest the disallowance of its claim. (*Id.* at 14–15.) Debtors argue that Nationstar, similar to the creditor in *Blendheim*, simply forfeited its claim by failing to present any evidence of its validity and slept on its rights. (*Id.* at 15–16.)

Second, Debtors argue that assuming, *arguendo*, that there was not an adequate basis to disallow Nationstar's claim under 11 U.S.C. § 502, this should be irrelevant to this Court's analysis because a bankruptcy court has an obligation to ensure that its orders comply with applicable law, even when matters are presented on a default basis. (*Id.* at 16.) In other words, Debtors argue that, because the Bankruptcy Court in this case made a final ruling that Nationstar's claim was disallowed, and because this ruling was never appealed, it should be treated as final and binding. (*Id.* at 17–18.) Therefore, Debtors argue, because the Bankruptcy Court's order disallowed Nationstar's claim, Nationstar's lien

[576 B.R. 293]

should be voided because " § 506(d)'s function is reduced to voiding a lien whenever a claim secured by the lien itself has not been allowed."



(*Id.* at 18 [quoting *Bank of Am., N.A. v. Caulkett*, ––– U.S. ––––, 135 S.Ct. 1995, 1999, 192 L.Ed.2d 52 (2015) ].)

Third, and finally, Debtors argue that equitable considerations do not warrant a divergence from the clear legal consequences of the disallowance of Nationstar's Proof of Claim. (*Id.* at 18.) Specifically, Debtors distinguish the following cases from the present case: *In re Tarnow*, 749 F.2d 464 (7th Cir. 1984), *In re Hamlett*, 322 F.3d 342 (4th Cir. 2003), and *In re Shelton*, 735 F.3d 747 (8th Cir. 2013). (*Id.*) Debtors argue that, in all three of these cases, a creditor filed an *untimely* proof of claim, which the courts held was tantamount to not filing a claim at all. (*Id.*) Debtors argue that the courts in these cases were concerned about the equity of allowing a mortgage creditor to lose its *in rem* rights by filing an untimely claim when the merits and validity of those rights would never be addressed. (*Id.*) Debtors argue that the same equity concerns are not present in this case because a *timely* Proof of Claim was filed and Nationstar's predecessor-in-interest chose to ignore a properly noticed objection to its claim. (*Id.*)

Furthermore, Debtors argue that they have been affected by Nationstar's failure to defend the validity of its Proof of Claim because it prevented them from curing secured claims under 11 U.S.C. § 1322(c)(1). (*Id.* at 19.) Debtors argue that they have completed their Chapter 13 plan and received a discharge from the Bankruptcy Court by using all of their disposable income to pay off debt under the terms of their Chapter 13 plan. (*Id.*) Because Nationstar's claim was disallowed, Debtors argue that other creditors received more money than they would have otherwise received had Nationstar's claim been paid through the Chapter 13 plan. (*Id.*) Finally, Debtors argue that affirming the Bankruptcy Court's ruling would create fundamental inequities between the rights of creditors and debtors, such as encouraging creditors to ignore the bankruptcy process. (*Id.* at 20.)

**2. Nationstar's Response Brief**

Generally, Nationstar's response brief asserts three arguments. (Dkt. No. 12 [Nationstar's Opp'n Mem. of Law].)

First, Nationstar argues that the Bankruptcy Court properly found that the narrow textual reading of 11 U.S.C. § 506(d) urged by Debtors runs contrary to both nationwide legal precedent and longstanding bankruptcy principles. (*Id.* at 12–13.) Specifically, Nationstar argues that well-established legal precedent dictates that § 506(d) may not be used to void a lien that has not been found to be invalid in substance. (*Id.* at 13.) Because Nationstar argues that this issue is one of first impression in the Second Circuit, Nationstar relies on five cases in support of its argument that § 506(d) cannot be used as a mechanism for voiding an otherwise valid secured lien simply because the creditor's proof of claim was disallowed for reasons other than on the merits: *In re Tarnow*, 749 F.2d at 464 ; *In re Hamlett*, 322 F.3d at 342 ; *In re Shelton*, 735 F.3d at 747 ; *In re Be–Mac Transport Co., Inc.*, 83 F.3d 1020 (8th Cir. 1996), and *In re Oudomsouk*, 483 B.R. 502 (Bankr. M.D. Tenn. 2012). (*Id.* at 13–17.)

With regard to Debtors' reliance on *In re Blendheim*, Nationstar argues that the Bankruptcy Court properly found that the case was not applicable to this case. (*Id.* at 19.) Specifically, Nationstar argues that the failure to respond to Debtors' objection was not "akin to a concession of error" because (a) Debtors' objection did not challenge the validity of the Proof of Claim,

[576 B.R. 294]

and (b) Debtors acknowledged in the adversary proceeding that Nationstar holds a perfected security interest by virtue of its mortgage lien. (*Id.* at 19–20.) Furthermore, Nationstar argues that its predecessor-in-interest did not "sleep on its rights" by failing to respond to Debtors' objection because, as the Bankruptcy Court correctly noted in its Memorandum–Decision and Order, the predecessor-in-interest's conduct reflected a reasonable reliance on "the longstanding rule that a creditor can ignore the claims allowance process

and later pursue its *in rem* rights." (*Id.* at 20.) Nationstar argues that this is distinguishable from *Blendheim* because, in that case, the creditor repeatedly ignored court directives to file a motion to reconsider or make some other appropriate request for relief. (*Id.*) Nationstar also argues that, in *Blendheim*, the debtors' objection to the proof of claim contained challenges to the merits of the creditor's lien, which resulted in the bankruptcy court finding "good cause" for entry of its order that voided the creditor's lien. (*Id.* at 21.)

Second, Nationstar argues that the disallowance of its Proof of Claim was procedural and not on the merits for the following four reasons: (1) claims can be disallowed under 11 U.S.C. § 502 only when the objection falls under one of the enumerated categories set forth in § 502(b), which do not include an alleged lack of documentation or a dispute as to the amount of money owed; (2) the Bankruptcy Court stated in its Memorandum–Decision and Order that its ruling was based on procedural grounds and that it did not examine the merits of Debtors' objection; (3) the disallowance of the Proof of Claim in this case is not akin to a disallowance under § 502 because (a) Debtors did not cite any provision of § 502(b) in their objection, (b) Debtors acknowledge that Nationstar holds a valid perfected mortgage lien, and (c) Debtors have acknowledged that the *only* substantive grounds for disallowance of a claim are expressly set forth in the Bankruptcy Code itself; and (4) whether or not the Bankruptcy Court's order disallowing the Proof of Claim was a "final order" is irrelevant to whether the order can be used as a basis for voiding Nationstar's lien pursuant to § 506(d). (*Id.* at 22–26.)

Third, and finally, Nationstar argues that the balance of the equities favors preservation of its lien for the following five reasons: (1) the Bankruptcy Court's Memorandum–Decision and Order is in accord with *Hamlett, Shelton, Tarnow,* and *Oudomsouk* because, as in those cases, the underlying claim was disallowed without any opportunity for the court to examine the merits of the claim or the substantive validity

of the lien; (2) Nationstar has affirmatively shown that it has a valid perfected secured mortgage lien; (3) Debtors' argument (that they have lost the right to cure secured claims if Nationstar's lien is preserved) is disingenuous because it was Debtors who objected to the Proof of Claim in the first instance; (4) Debtors are not being harmed or prejudiced by the preservation of the lien because Nationstar is simply exercising its right to allow its mortgage lien to pass through bankruptcy and pursue its underlying *in rem* rights; and (5) Debtors have benefitted from being allowed to live at the subject premises for approximately eight years without making a single mortgage payment. (*Id.* at 26–28.)

### 3. Debtors' Reply Brief

Generally, in their reply brief, Debtors argue that 11 U.S.C. § 502(b) is unambiguous and a plain reading of that provision dictates that disallowance of Nationstar's Proof of Claim could have occurred only under § 502(b) and not because of a lack of documentation. (Dkt. No. 13, at 7 [Debtors'

[576 B.R. 295]

Reply Mem. of Law].) Specifically, Debtors argue that, under § 502(b), the Bankruptcy Court must determine the amount of a claim and allow it unless one of the exceptions to § 502(b) applies. (*Id.* at 8.) Debtors argue that the comment to Fed. Bankr. R. Civ. P. 3001 specifically states that lack of required documentation cannot provide a basis for disallowance. (*Id.*) Accordingly, Debtors appear to argue that the Bankruptcy Court's order that disallowed Nationstar's claim must have been made under § 502(b) regardless of the Bankruptcy Court's stated basis for disallowing the claim. (*Id.*) If this premise is accepted then Debtors argue that voiding Nationstar's lien is mandatory under § 506(d). (*Id.* at 10.)

### II. GOVERNING LEGAL STANDARD

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a). On an appeal, "a district court may affirm, modify, or reverse a bankruptcy



judge's judgment, order, or decree or remand with instructions for further proceedings." *Verna v. U.S. Bank Nat'l Ass'n*, 15–CV–1127, 2016 WL 5107115, at *2 (N.D.N.Y. Sept. 20, 2016) (Kahn, J.) (citing former Fed. R. Bankr. P. 8013 ); *accord, W. Milford Shopping Plaza, LLC v. The Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, 14–CV–4170, 2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015).[2] The bankruptcy court's legal conclusions are subject to de novo review. *See Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 318 F.3d 432, 435 (2d Cir. 2003). The court reviews mixed questions of law and fact "either de novo or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings, Inc.)*, 415 B.R. 77, 83 (S.D.N.Y. 2009) (quoting *Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 554 F.3d 300, 316 n.11 [2d Cir. 2009] ).

### III. ANALYSIS

After carefully considering the matter, the Court affirms Bankruptcy Judge Davis's Order granting Nationstar's motion for summary judgment and denying Debtors' motion for summary judgment for the reasons stated in Judge Davis's Memorandum–Decision and Order as well as for the reasons stated in Nationstar's response brief. (Dkt. No. 12, at 13–28 [Nationstar's Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

As an initial matter, the Court notes that Debtors' arguments are well taken and that the issue in this case presents a close call. Indeed, as the Bankruptcy Court noted, "the plain language of § 506(d) appears to support Debtors' argument when read literally and in isolation[.]" (Dkt. No. 1, Attach. 1, at 12 [Bankruptcy Ct. Decision and Order].) Furthermore, the Ninth Circuit's decision in *Blendheim* provides persuasive support for Debtors' position. However, the Court agrees for the reasons stated by the Bankruptcy Court that *Blendheim* is sufficiently distinguishable from the

present case because the creditor in *Blendheim* clearly slept on its rights and there was a substantive challenge to the creditor's proof of claim. (*Id.* at 11.)

[576 B.R. 296]

More importantly, the Court finds that, in the present case, the Bankruptcy Court did not make a determination regarding the merits of Nationstar's Proof of Claim. "The fundamental purpose of the claims allowance process and the various rules for filing proofs of claim and allocating burdens of proof is to provide a fair and inexpensive procedure for the proper determination of claims *on the merits*." *In re Shank*, 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004) (emphasis added); *see also Hamlett*, 322 F.3d at 348 ("[ Section] 506 [d] only empowers the bankruptcy court to void liens supporting disallowed claims if it judges those liens to be invalid *in substance*.") (emphasis added). Here, "Debtors did not cite a specific provision of § 502(b) in their claim objection and they concede that they could not have done so because Nationstar is a proper mortgagee with respect to the Property." (Dkt. No. 1, Attach. 1, at 9 [Bankruptcy Ct. Decision and Order].) *See In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("[T]he only substantive grounds for disallowance of a claim are expressly set forth in the Bankruptcy Code ... [and] lack of the documentation required by Rule 3001(c) ... is not a *substantive* ground for disallowing a claim."). Nonetheless, the Bankruptcy Court disallowed Nationstar's claim based upon its failure to respond to Debtors' objection rather than relying on one of the specific provisions under § 502(b). However, courts in this Circuit have found disallowance of a claim to be appropriate on procedural grounds where a creditor has failed to respond to an objection that was based on insufficient documentation. *See In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010) ("[I]n certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically



enumerated reason under 11 U.S.C. § 502 [b], because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim."); *Porter*, 374 B.R. at 480 ("[U]nder some circumstances lack of ... documentation [required by Rule 3001(c) ] followed by a creditor's failure to appear or otherwise respond to an objection ... made on the grounds of insufficient annexed documentation may result in a disallowance of the claim on procedural (i.e., default) grounds.").

Accordingly, for the foregoing reasons, the Court affirms the decision of the Bankruptcy Court. The Court notes that it does not condone a creditor's failure to respond to a debtors' objection after the creditor has filed a timely proof of claim. Although Nationstar's predecessor-in-interest did not have to file a proof of claim to preserve its lien, it chose to do so, thereby subjecting itself to the jurisdiction of the Bankruptcy Court and its rules. Nationstar's predecessor-in-interest therefore should have remained vigilant in defending the validity of its lien once Debtors filed an objection instead of deciding, without warning, that it would rely on the longstanding rule that a creditor can ignore the claims allowance process without losing its *in rem* rights. Indeed, it is only because no determination was made as to the validity of Nationstar's lien and the fact that Debtors conceded that Nationstar holds a valid perfected mortgage lien that Nationstar does not now face the same consequences as the creditor in *Blendheim*.

**ACCORDINGLY**, it is

**ORDERED** that Debtors' appeal is **DENIED** , and Bankruptcy Judge Davis's Order is **AFFIRMED** .

--------

Notes:

[1] Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

[2] Although Fed. R. Bankr. P. 8013 was amended in 2014 and no longer explicitly states, *inter alia*, that a district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree," "logic still compels the same conclusion with respect to the appellate powers of the District Court." *In re Great Atl. & Pac. Tea Co.*, 2015 WL 6395967, at *2 & n.1.

--------



made under any Federal or State law, before Dec. 12, 2006, see section 7 of Pub. L. 109–390, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1990 AMENDMENT

Pub. L. 101–508, title III, §3007(a)(3), Nov. 5, 1990, 104 Stat. 1388–28, provided that: ''The amendments made by this subsection [amending this section and section 541 of this title] shall be effective upon date of enactment of this Act [Nov. 5, 1990].''

Pub. L. 101–508, title III, §3008, Nov. 5, 1990, 104 Stat. 1388–29, provided that the amendments made by subtitle A (§§3001–3008) of title III of Pub. L. 101–508, amending this section, sections 541 and 1328 of this title, and sections 1078, 1078–1, 1078–7, 1085, 1088, and 1091 of Title 20, Education, and provisions set out as a note under section 1078–1 of Title 20, were to cease to be effective Oct. 1, 1996, prior to repeal by Pub. L. 102–325, title XV, §1558, July 23, 1992, 106 Stat. 841.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 257 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by section 283 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554.

Pub. L. 99–509, title V, §5001(b), Oct. 21, 1986, 100 Stat. 1912, provided that: ''The amendments made by subsection (a) of this section [amending this section] shall apply only to petitions filed under section 362 of title 11, United States Code, which are made after August 1, 1986.''

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

REPORT TO CONGRESSIONAL COMMITTEES

Pub. L. 99–509, title V, §5001(a), Oct. 21, 1986, 100 Stat. 1911, directed Secretary of Transportation and Secretary of Commerce, before July 1, 1989, to submit reports to Congress on the effects of amendments to 11 U.S.C. 362 by this subsection.

§ 363. Use, sale, or lease of property

(a) In this section, ''cash collateral'' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—

(A) such sale or such lease is consistent with such policy; or

(B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—

(i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

(ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

(2) If notification is required under subsection (a) of section 7A of the Clayton Act in the case of a transaction under this subsection, then—

(A) notwithstanding subsection (a) of such section, the notification required by such subsection to be given by the debtor shall be given by the trustee; and

(B) notwithstanding subsection (b) of such section, the required waiting period shall end on the 15th day after the date of the receipt, by the Federal Trade Commission and the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, of the notification required under such subsection (a), unless such waiting period is extended—

(i) pursuant to subsection (e)(2) of such section, in the same manner as such subsection (e)(2) applies to a cash tender offer;

(ii) pursuant to subsection (g)(2) of such section; or

(iii) by the court after notice and a hearing.

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection

9

VerDate Oct 09 2002   10:15 Oct 12, 2021   Jkt 000000   PO 00000   Frm 00087   Fmt 5800   Sfmt 5800   D:\OLRC\DATA\PRINT\2018SUPP220\OUTPUT\PCC\FOLIOS\USC11.20   PROD

(e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section—

(1) in the case of a debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation or trust; and

(2) only to the extent not inconsistent with any relief granted under subsection (c), (d), (e), or (f) of section 362.

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(g) Notwithstanding subsection (f) of this section, the trustee may sell property under subsection (b) or (c) of this section free and clear of any vested or contingent right in the nature of dower or curtesy.

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

(i) Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

(k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

(l) Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, 12, or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

(n) The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages

in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

(*o*) Notwithstanding subsection (f), if a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

(p) In any hearing under this section—

(1) the trustee has the burden of proof on the issue of adequate protection; and

(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2572; Pub. L. 98–353, title III, § 442, July 10, 1984, 98 Stat. 371; Pub. L. 99–554, title II, § 257(k), Oct. 27, 1986, 100 Stat. 3115; Pub. L. 103–394, title I, § 109, title II, §§ 214(b), 219(c), title V, § 501(d)(8), Oct. 22, 1994, 108 Stat. 4113, 4126, 4129, 4144; Pub. L. 109–8, title II, §§ 204, 231(a), title XII, § 1221(a), Apr. 20, 2005, 119 Stat. 49, 72, 195; Pub. L. 111–327, § 2(a)(13), Dec. 22, 2010, 124 Stat. 3559; Pub. L. 116–54, § 4(a)(6), Aug. 23, 2019, 133 Stat. 1086.)

### HISTORICAL AND REVISION NOTES

#### LEGISLATIVE STATEMENTS

Section 363(a) of the House amendment defines "cash collateral" as defined in the Senate amendment. The broader definition of "soft collateral" contained in H.R. 8200 as passed by the House is deleted to remove limitations that were placed on the use, lease, or sale of inventory, accounts, contract rights, general intangibles, and chattel paper by the trustee or debtor in possession.

Section 363(c)(2) of the House amendment is derived from the Senate amendment. Similarly, sections 363(c)(3) and (4) are derived from comparable provisions in the Senate amendment in lieu of the contrary procedure contained in section 363(c) as passed by the House. The policy of the House amendment will generally require the court to schedule a preliminary hearing in accordance with the needs of the debtor to authorize the trustee or debtor in possession to use, sell, or lease cash collateral. The trustee or debtor in possession may use, sell, or lease cash collateral in the ordinary course of business only "after notice and a hearing."

Section 363(f) of the House amendment adopts an identical provision contained in the House bill, as opposed to an alternative provision contained in the Senate amendment.

Section 363(h) of the House amendment adopts a new paragraph (4) representing a compromise between the House bill and Senate amendment. The provision adds a limitation indicating that a trustee or debtor in possession sell jointly owned property only if the property is not used in the production, transmission, or distribution for sale, of electric energy or of natural or synthetic gas for heat, light, or power. This limitation is intended to protect public utilities from being deprived of power sources because of the bankruptcy of a joint owner.

Section 363(k) of the House amendment is derived from the third sentence of section 363(e) of the Senate amendment. The provision indicates that a secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof in the event the creditor is undersecured, with respect to property that is subject to a lien that secures the allowed claim of the sale of the property.

#### SENATE REPORT NO. 95–989

This section defines the right and powers of the trustee with respect to the use, sale or lease of property and the rights of other parties that have interests in the property involved. It applies in both liquidation and reorganization cases.

Subsection (a) defines "cash collateral" as cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest, such as a lien or a co-ownership interest. The definition is not restricted to property of the estate that is cash collateral on the date of the filing of the petition. Thus, if "non-cash" collateral is disposed of and the proceeds come within the definition of "cash collateral" as set forth in this subsection, the proceeds would be cash collateral as long as they remain subject to the original lien on the "non-cash" collateral under section 552(b). To illustrate, rents received from real property before or after the commencement of the case would be cash collateral to the extent that they are subject to a lien.

Subsection (b) permits the trustees to use, sell, or lease, other than in the ordinary course of business, property of the estate upon notice and opportunity for objections and hearing thereon.

Subsection (c) governs use, sale, or lease in the ordinary course of business. If the business of the debtor is authorized to be operated under § 721, 1108, or 1304 of the bankruptcy code, then the trustee may use, sell, or lease property in the ordinary course of business or enter into ordinary course transactions without need for notice and hearing. This power is subject to several limitations. First, the court may restrict the trustee's powers in the order authorizing operation of the business. Second, with respect to cash collateral, the trustee may not use, sell, or lease cash collateral except upon court authorization after notice and a hearing, or with the consent of each entity that has an interest in such cash collateral. The same preliminary hearing procedure in the automatic stay section applies to a hearing under this subsection. In addition, the trustee is required to segregate and account for any cash collateral in the trustee's possession, custody, or control.

Under subsections (d) and (e), the use, sale or lease of property is further limited by the concept of adequate protection. Sale, use, or lease of property in which an entity other than the estate has an interest may be effected only to the extent not inconsistent with any relief from the stay granted to that interest's holder. Moreover, the court may prohibit or condition the use, sale, or lease as is necessary to provide adequate protection of that interest. Again, the trustee has the burden of proof on the issue of adequate protection. Subsection (e) also provides that where a sale of the property is proposed, an entity that has an interest in such property may bid at the sale thereof and set off against the purchase price up to the amount of such entity's claim. No prior valuation under section 506(a) would limit this bidding right, since the bid at the sale would be determinative of value.

Subsection (f) permits sale of property free and clear of any interest in the property of an entity other than the estate. The trustee may sell free and clear if applicable nonbankruptcy law permits it, if the other entity consents, if the interest is a lien and the sale price of the property is greater than the amount secured by the lien, if the interest is in bona fide dispute, or if the other entity could be compelled to accept a money satisfaction of the interest in a legal or equitable proceeding. Sale under this subsection is subject to the adequate protection requirement. Most often, adequate

protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale.

At a sale free and clear of other interests, any holder of any interest in the property being sold will be permitted to bid. If that holder is the high bidder, he will be permitted to offset the value of his interest against the purchase price of the property. Thus, in the most common situation, a holder of a lien on property being sold may bid at the sale and, if successful, may offset the amount owed to him that is secured by the lien on the property (but may not offset other amounts owed to him) against the purchase price, and be liable to the trustee for the balance of the sale price, if any.

Subsection (g) permits the trustee to sell free and clear of any vested or contingent right in the nature of dower or curtesy.

Subsection (h) permits sale of a co-owner's interest in property in which the debtor had an undivided ownership interest such as a joint tenancy, a tenancy in common, or a tenancy by the entirety. Such a sale is permissible only if partition is impracticable, if sale of the estate's interest would realize significantly less for the estate that sale of the property free of the interests of the co-owners, and if the benefit to the estate of such a sale outweighs any detriment to the co-owners. This subsection does not apply to a co-owner's interest in a public utility when a disruption of the utilities services could result.

Subsection (i) provides protections for co-owners and spouses with dower, curtesy, or community property rights. It gives a right of first refusal to the co-owner or spouse at the price at which the sale is to be consummated.

Subsection (j) requires the trustee to distribute to the spouse or co-owner the appropriate portion of the proceeds of the sale, less certain administrative expenses.

Subsection (k) [enacted as (*l*)] permits the trustee to use, sell, or lease property notwithstanding certain bankruptcy or ipso facto clauses that terminate the debtor's interest in the property or that work a forfeiture or modification of that interest. This subsection is not as broad as the anti-ipso facto provision in proposed 11 U.S.C. 541(c)(1).

Subsection (*l*) [enacted as (m)] protects good faith purchasers of property sold under this section from a reversal on appeal of the sale authorization, unless the authorization for the sale and the sale itself were stayed pending appeal. The purchaser's knowledge of the appeal is irrelevant to the issue of good faith.

Subsection (m) [enacted as (n)] is directed at collusive bidding on property sold under this section. It permits the trustee to void a sale if the price of the sale was controlled by an agreement among potential bidders. The trustees may also recover the excess of the value of the property over the purchase price, and may recover any costs, attorney's fees, or expenses incurred in voiding the sale or recovering the difference. In addition, the court is authorized to grant judgment in favor of the estate and against the collusive bidder if the agreement controlling the sale price was entered into in willful disregard of this subsection. The subsection does not specify the precise measure of damages, but simply provides for punitive damages, to be fixed in light of the circumstances.

### Editorial Notes

#### REFERENCES IN TEXT

Section 7A of the Clayton Act, referred to in subsec. (b)(2), is classified to section 18a of Title 15, Commerce and Trade.

The Truth in Lending Act, referred to in subsec. (*o*), is title I of Pub. L. 90–321, May 29, 1968, 82 Stat. 146, as amended, which is classified generally to subchapter I (§1601 et seq.) of chapter 41 of Title 15, Commerce and Trade. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of Title 15 and Tables.

#### AMENDMENTS

2019—Subsec. (c)(1). Pub. L. 116–54 inserted ''1183, 1184,'' after ''1108,''.

2010—Subsec. (d). Pub. L. 111–327, §2(a)(13)(A), struck out ''only'' before dash at end of introductory provisions.

Subsec. (d)(1). Pub. L. 111–327, §2(a)(13)(B), amended par. (1) generally. Prior to amendment, par. (1) read as follows: ''in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust; and''.

Subsec. (d)(2). Pub. L. 111–327, §2(a)(13)(C), inserted ''only'' before ''to the extent''.

2005—Subsec. (b)(1). Pub. L. 109–8, §231(a), substituted '', except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—'' and subpars. (A) and (B) for period at end.

Subsec. (d). Pub. L. 109–8, §1221(a), substituted ''only—'' and pars. (1) and (2) for ''only to the extent not inconsistent with any relief granted under section 362(c), 362(d), 362(e), or 362(f) of this title.''

Subsecs. (*o*), (p). Pub. L. 109–8, §204, added subsec. (*o*) and redesignated former subsec. (*o*) as (p).

1994—Subsec. (a). Pub. L. 103–394, §214(b), inserted ''and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties'' after ''property''.

Subsec. (b)(2). Pub. L. 103–394, §§109, 501(d)(8)(A), struck out ''(15 U.S.C. 18a)'' after ''Clayton Act'' and amended subpars. (A) and (B) generally. Prior to amendment, subpars. (A) and (B) read as follows:

''(A) notwithstanding subsection (a) of such section, such notification shall be given by the trustee; and

''(B) notwithstanding subsection (b) of such section, the required waiting period shall end on the tenth day after the date of the receipt of such notification, unless the court, after notice and hearing, orders otherwise.''

Subsec. (c)(1). Pub. L. 103–394, §501(d)(8)(B), substituted ''1203, 1204, or 1304'' for ''1304, 1203, or 1204''.

Subsec. (e). Pub. L. 103–394, §219(c), inserted at end ''This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).''

1986—Subsec. (c)(1). Pub. L. 99–554, §257(k)(1), inserted reference to sections 1203 and 1204 of this title.

Subsec. (f). Pub. L. 99–554, §257(k)(2), inserted reference to chapter 12.

1984—Subsec. (a). Pub. L. 98–353, §442(a), inserted ''whenever acquired'' after ''equivalents'' and ''and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title'' after ''interest''.

Subsec. (b). Pub. L. 98–353, §442(b), designated existing provisions as par. (1) and added par. (2).

Subsec. (e). Pub. L. 98–353, §442(c), inserted '', with or without a hearing,'' after ''court'' and struck out ''In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection''.

Subsec. (f)(3). Pub. L. 98–353, §442(d), substituted ''all liens on such property'' for ''such interest''.

Subsec. (h). Pub. L. 98–353, §442(e), substituted ''at the time of'' for ''immediately before''.

Subsec. (j). Pub. L. 98–353, §442(f), substituted ''compensation'' for ''compensation''.

Subsec. (k). Pub. L. 98–353, §442(g), substituted ''unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder'' for ''if the holder''.

Subsec. (*l*). Pub. L. 98–353, §442(h), substituted "Subject to the provisions of section 365, the trustee" for "The trustee", "condition" for "conditions", "or the taking" for "a taking", and "interest" for "interests".

Subsec. (n). Pub. L. 98–353, §442(i), substituted "avoid" for "void", "avoiding" for "voiding", and "In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection" for "The court may grant judgment in favor of the estate and against any such party that entered into such agreement in willful disregard of this subsection for punitive damages in addition to any recovery under the preceding sentence".

Subsec. (o). Pub. L. 98–353, §442(j), added subsec. (o).

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF 2019 AMENDMENT

Amendment by Pub. L. 116–54 effective 180 days after Aug. 23, 2019, see section 5 of Pub. L. 116–54, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 2005 AMENDMENT

Pub. L. 109–8, title XII, §1221(d), Apr. 20, 2005, 119 Stat. 196, provided that: "The amendments made by this section [amending this section and sections 541 and 1129 of this title and enacting provisions set out as a note under this section] shall apply to a case pending under title 11, United States Code, on the date of enactment of this Act [Apr. 20, 2005], or filed under that title on or after that date of enactment, except that the court shall not confirm a plan under chapter 11 of title 11, United States Code, without considering whether this section would substantially affect the rights of a party in interest who first acquired rights with respect to the debtor after the date of the filing of the petition. The parties who may appear and be heard in a proceeding under this section include the attorney general of the State in which the debtor is incorporated, was formed, or does business."

Amendment by sections 204 and 231(a) of Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

CONSTRUCTION OF SECTION 1221 OF PUB. L. 109–8

Pub. L. 109–8, title XII, §1221(e), Apr. 20, 2005, 119 Stat. 196, provided that: "Nothing in this section [see Effective Date of 2005 Amendment note above] shall be construed to require the court in which a case under chapter 11 of title 11, United States Code, is pending to remand or refer any proceeding, issue, or controversy to any other court or to require the approval of any other court for the transfer of property."

## §364. Obtaining credit

(a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

(e) The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

(f) Except with respect to an entity that is an underwriter as defined in section 1145(b) of this title, section 5 of the Securities Act of 1933, the Trust Indenture Act of 1939, and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security does not apply to the offer or sale under this section of a security that is not an equity security.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2574; Pub. L. 99–554, title II, §257(*l*), Oct. 27, 1986, 100 Stat. 3115; Pub. L. 103–394, title V, §501(d)(9), Oct. 22, 1994, 108 Stat. 4144; Pub. L. 116–54, §4(a)(7), Aug. 23, 2019, 133 Stat. 1086; Pub. L. 116–260, div. N, title III, §320(a), (f)(2)(A)(i), Dec. 27, 2020, 134 Stat. 2015, 2016.)

13

VerDate Oct 09 2002   10:15 Oct 12, 2021   Jkt 000000   PO 00000   Frm 00091   Fmt 5800   Sfmt 5800   D:\OLRC\DATA\PRINT\2018SUPP220\OUTPUT\PCC\FOLIOS\USC11.20   PROD

AMENDMENTS

1984—Subsec. (b). Pub. L. 98–353, §472(a), inserted "held" after "meeting of creditors".

Subsec. (c)(1). Pub. L. 98–353, §472(b)(1), inserted "of a kind" after "claims".

Subsec. (c)(2). Pub. L. 98–353, §472(b)(2), substituted "for a trustee" for "for trustee".

Subsec. (d). Pub. L. 98–353, §472(c), substituted "this section" for "subsection (c) of this section".

1982—Subsec. (a)(1). Pub. L. 97–222 substituted "726(a)(4), 752(a), 766(h), or 766(i)" for "or 726(a)(4)".

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 322, 546, 557, 701, 703, 705, 1104 of this title.

## § 703. Successor trustee

(a) If a trustee dies or resigns during a case, fails to qualify under section 322 of this title, or is removed under section 324 of this title, creditors may elect, in the manner specified in section 702 of this title, a person to fill the vacancy in the office of trustee.

(b) Pending election of a trustee under subsection (a) of this section, if necessary to preserve or prevent loss to the estate, the United States trustee may appoint an interim trustee in the manner specified in section 701(a).

(c) If creditors do not elect a successor trustee under subsection (a) of this section or if a trustee is needed in a case reopened under section 350 of this title, then the United States trustee—

(1) shall appoint one disinterested person that is a member of the panel of private trustees established under section 586(a)(1) of title 28 to serve as trustee in the case; or

(2) may, if none of the disinterested members of such panel is willing to serve as trustee, serve as trustee in the case.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2605; Pub. L. 98–353, title III, §473, July 10, 1984, 98 Stat. 381; Pub. L. 99–554, title II, §216, Oct. 27, 1986, 100 Stat. 3100.)

HISTORICAL AND REVISION NOTES

SENATE REPORT NO. 95–989

If the office of trustee becomes vacant during the case, this section makes provision for the selection of a successor trustee. The office might become vacant through death, resignation, removal, failure to qualify under section 322 by posting bond, or the reopening of a case. If it does, creditors may elect a successor in the same manner as they may elect a trustee under the previous section. Pending the election of a successor, the court may appoint an interim trustee in the usual manner if necessary to preserve or prevent loss to the estate. If creditors do not elect a successor, or if a trustee is needed in a reopened case, then the court appoints a disinterested member of the panel of private trustees to serve.

AMENDMENTS

1986—Subsec. (b). Pub. L. 99–554 amended subsec. (b) generally, substituting "the United States trustee may appoint" for "the court may appoint" and "manner specified in section 701(a)" for "manner and subject to the provisions of section 701 of this title".

Subsec. (c). Pub. L. 99–554 amended subsec. (c) generally, substituting "this section or" for "this section, or", "then the United States trustee" for "then the court", designating part of existing provisions as par. (1), and, as so designated, substituting "586(a)(1)" for "604(f)", "in the case; or" for "in the case.", and adding par. (2).

1984—Subsec. (b). Pub. L. 98–353 substituted "and subject to the provisions of section 701 of this title" for "specified in section 701(a) of this title. Sections 701(b) and 701(c) of this title apply to such interim trustee".

EFFECTIVE DATE OF 1986 AMENDMENT

Effective date and applicability of amendment by Pub. L. 99–554 dependent upon the judicial district involved, see section 302(d), (e) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 322, 557 of this title.

## § 704. Duties of trustee

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2605; Pub. L. 98–353, title III, §§311(a), 474, July 10, 1984, 98 Stat. 355, 381; Pub. L. 99–554, title II, §217, Oct. 27, 1986, 100 Stat. 3100.)

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 704(8) of the Senate amendment is deleted in the House amendment. Trustees should give construc-

tive notice of the commencement of the case in the manner specified under section 549(c) of title 11.

SENATE REPORT NO. 95–989

The essential duties of the trustee are enumerated in this section. Others, or elaborations on these, may be prescribed by the Rules of Bankruptcy Procedure to the extent not inconsistent with those prescribed by this section. The duties are derived from section 47a of the Bankruptcy Act [section 75(a) of former title 11].

The trustee's principal duty is to collect and reduce to money the property of the estate for which he serves, and to close up the estate as expeditiously as is compatible with the best interests of parties in interest. He must be accountable for all property received, and must investigate the financial affairs of the debtor. If a purpose would be served (such as if there are assets that will be distributed), the trustee is required to examine proofs of claims and object to the allowance of any claim that is improper. If advisable, the trustee must oppose the discharge of the debtor, which is for the benefit of general unsecured creditors whom the trustee represents.

The trustee is responsible to furnish such information concerning the estate and its administration as is requested by a party in interest. If the business of the debtor is authorized to be operated, then the trustee is required to file with governmental units charged with the responsibility for collection or determination of any tax arising out of the operation of the business periodic reports and summaries of the operation, including a statement of receipts and disbursements, and such other information as the court requires. He is required to give constructive notice of the commencement of the case in the manner specified under section 342(b).

AMENDMENTS

1986—Par. (8). Pub. L. 99–554, § 217(1), inserted '', with the United States trustee,'' after ''with the court'' and ''the United States trustee or'' after ''information as''.

Par. (9). Pub. L. 99–554, § 217(2), inserted ''with the United States trustee'' after ''court''.

1984—Par. (1). Pub. L. 98–353, § 474, substituted ''close such estate'' for ''close up such estate''.

Pars. (3) to (9). Pub. L. 98–353, § 311(a), added par. (3) and redesignated former pars. (3) to (8) as (4) to (9), respectively.

EFFECTIVE DATE OF 1986 AMENDMENT

Effective date and applicability of amendment by Pub. L. 99–554 dependent upon the judicial district involved, see section 302(d), (e) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 1106, 1202, 1302, 1304 of this title; title 29 section 1342.

§ 705. Creditors' committee

(a) At the meeting under section 341(a) of this title, creditors that may vote for a trustee under section 702(a) of this title may elect a committee of not fewer than three, and not more than eleven, creditors, each of whom holds an allowable unsecured claim of a kind entitled to distribution under section 726(a)(2) of this title.

(b) A committee elected under subsection (a) of this section may consult with the trustee or the United States trustee in connection with the administration of the estate, make recommendations to the trustee or the United States trustee respecting the performance of the trustee's duties, and submit to the court or the United States trustee any question affecting the administration of the estate.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2605; Pub. L. 99–554, title II, § 218, Oct. 27, 1986, 100 Stat. 3100.)

HISTORICAL AND REVISION NOTES
LEGISLATIVE STATEMENTS

Section 705(a) of the House amendment adopts a provision contained in the Senate amendment that limits a committee of creditors to not more than 11; the House bill contained no maximum limitation.

SENATE REPORT NO. 95–989

This section is derived from section 44b of the Bankruptcy Act [section 72(b) of former title 11] without substantial change. It permits election by general unsecured creditors of a committee of not fewer than 3 members and not more than 11 members to consult with the trustee in connection with the administration of the estate, to make recommendations to the trustee respecting the performance of his duties, and to submit to the court any question affecting the administration of the estate. There is no provision for compensation or reimbursement of its counsel.

AMENDMENTS

1986—Subsec. (b). Pub. L. 99–554 inserted ''or the United States trustee'' in three places.

EFFECTIVE DATE OF 1986 AMENDMENT

Effective date and applicability of amendment by Pub. L. 99–554 dependent upon the judicial district involved, see section 302(d), (e) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

§ 706. Conversion

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

(b) On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time.

(c) The court may not convert a case under this chapter to a case under chapter 12 or 13 of this title unless the debtor requests such conversion.

(d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2606; Pub. L. 99–554, title II, § 257(q), Oct. 27, 1986, 100 Stat. 3115; Pub. L. 103–394, title V, § 501(d)(22), Oct. 22, 1994, 108 Stat. 4146.)

HISTORICAL AND REVISION NOTES
LEGISLATIVE STATEMENTS

Section 706(a) of the House amendment adopts a provision contained in the Senate amendment indicating that a waiver of the right to convert a case under section 706(a) is unenforceable. The explicit reference in title 11 forbidding the waiver of certain rights is not intended to imply that other rights, such as the right to

center among a small select group of individuals unless the circumstances are such that it would be warranted. The public record of appointments to be kept by the clerk will provide a means for monitoring the appointment process.

*Subdivision (b)* provides a convenient source for public review of fees paid from debtors' estates in the bankruptcy courts. Thus, public recognition of appointments, fairly distributed and based on professional qualifications and expertise, will be promoted and notions of improper favor dispelled. This rule is in keeping with the findings of the Congressional subcommittees as set forth in the House Report of the Committee on the Judiciary, No. 95–595, 95th Cong., 1st Sess. 89–99 (1977). These findings included the observations that there were frequent appointments of the same person, contacts developed between the bankruptcy bar and the courts, and an unusually close relationship between the bar and the judges developed over the years. A major purpose of the new statute is to dilute these practices and instill greater public confidence in the system. Rule 2013 implements that laudatory purpose.

NOTES OF ADVISORY COMMITTEE ON RULES—1987
AMENDMENT

In subdivisions (b) and (c) the word awarded is substituted for the word paid. While clerks do not know if fees are paid, they can determine what fees are awarded by the court.

NOTES OF ADVISORY COMMITTEE ON RULES—1991
AMENDMENT

*Subdivision (a)* is deleted. The matter contained in this subdivision is more properly left for regulation by the United States trustee. When appointing trustees and examiners and when monitoring applications for employment of auctioneers, appraisers and other professionals, the United States trustee should be sensitive to disproportionate or excessive fees received by any person.

*Subdivision (b)*, redesignated as subdivision (a), is amended to reflect the fact that the United States trustee appoints examiners subject to court approval.

*Subdivision (c)*, redesignated as subdivision (b), is amended to furnish the United States trustee with a copy of the annual summary which may assist that office in the performance of its responsibilities under 28 U.S.C. §586 and the Code.

The rule is not applicable to standing trustees serving in chapter 12 cases. See §1202 of the Code.

## Rule 2014. Employment of Professional Persons

(a) APPLICATION FOR AND ORDER OF EMPLOYMENT. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to §327, §1103, or §1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any

other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

(b) SERVICES RENDERED BY MEMBER OR ASSOCIATE OF FIRM OF ATTORNEYS OR ACCOUNTANTS. If, under the Code and this rule, a law partnership or corporation is employed as an attorney, or an accounting partnership or corporation is employed as an accountant, or if a named attorney or accountant is employed, any partner, member, or regular associate of the partnership, corporation, or individual may act as attorney or accountant so employed, without further order of the court.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

*Subdivision (a)* is adapted from the second sentence of former Bankruptcy Rule 215(a). The remainder of that rule is covered by §327 of the Code.

*Subdivision (b)* is derived from former Bankruptcy Rule 215(f). The compensation provisions are set forth in §504 of the Code.

NOTES OF ADVISORY COMMITTEE ON RULES—1991
AMENDMENT

This rule is amended to include retention of professionals by committees of retired employees pursuant to §1114 of the Code.

The United States trustee monitors applications filed under §327 of the Code and may file with the court comments with respect to the approval of such applications. See 28 U.S.C. §586(a)(3)(H). The United States trustee also monitors creditors' committees in accordance with 28 U.S.C. §586(a)(3)(E). The addition of the second sentence of subdivision (a) is designed to enable the United States trustee to perform these duties.

*Subdivision (a)* is also amended to require disclosure of the professional's connections with the United States trustee or persons employed in the United States trustee's office. This requirement is not intended to prohibit the employment of such persons in all cases or to enlarge the definition of "disinterested person" in §101(13) of the Code. However, the court may consider a connection with the United States trustee's office as a factor when exercising its discretion. Also, this information should be revealed in the interest of full disclosure and confidence in the bankruptcy system, especially since the United States trustee monitors and may be heard on applications for compensation and reimbursement of professionals employed under this rule.

The United States trustee appoints committees pursuant to §1102 of the Code which is applicable in chapter 9 cases under §901. In the interest of full disclosure and confidence in the bankruptcy system, a connection between the United States trustee and a professional employed by the committee should be revealed in every case, including a chapter 9 case. However, since the United States trustee does not have any role in the employment of professionals in chapter 9 cases, it is not necessary in such cases to transmit to the United States trustee a copy of the application under subdivision (a) of this rule. See 28 U.S.C. §586(a)(3)(H).

## Rule 2015. Duty to Keep Records, Make Reports, and Give Notice of Case or Change of Status

(a) TRUSTEE OR DEBTOR IN POSSESSION. A trustee or debtor in possession shall:

(1) in a chapter 7 liquidation case and, if the court directs, in a chapter 11 reorganization case file and transmit to the United States trustee a complete inventory of the property

of the debtor within 30 days after qualifying as a trustee or debtor in possession, unless such an inventory has already been filed;

(2) keep a record of receipts and the disposition of money and property received;

(3) file the reports and summaries required by § 704(a)(8) of the Code, which shall include a statement, if payments are made to employees, of the amounts of deductions for all taxes required to be withheld or paid for and in behalf of employees and the place where these amounts are deposited;

(4) as soon as possible after the commencement of the case, give notice of the case to every entity known to be holding money or property subject to withdrawal or order of the debtor, including every bank, savings or building and loan association, public utility company, and landlord with whom the debtor has a deposit, and to every insurance company which has issued a policy having a cash surrender value payable to the debtor, except that notice need not be given to any entity who has knowledge or has previously been notified of the case;

(5) in a chapter 11 reorganization case, on or before the last day of the month after each calendar quarter during which there is a duty to pay fees under 28 U.S.C. § 1930(a)(6), file and transmit to the United States trustee a statement of any disbursements made during that quarter and of any fees payable under 28 U.S.C. § 1930(a)(6) for that quarter; and

(6) in a chapter 11 small business case, unless the court, for cause, sets another reporting interval, file and transmit to the United States trustee for each calendar month after the order for relief, on the appropriate Official Form, the report required by § 308. If the order for relief is within the first 15 days of a calendar month, a report shall be filed for the portion of the month that follows the order for relief. If the order for relief is after the 15th day of a calendar month, the period for the remainder of the month shall be included in the report for the next calendar month. Each report shall be filed no later than 21 days after the last day of the calendar month following the month covered by the report. The obligation to file reports under this subparagraph terminates on the effective date of the plan, or conversion or dismissal of the case.

(b) CHAPTER 12 TRUSTEE AND DEBTOR IN POSSESSION. In a chapter 12 family farmer's debt adjustment case, the debtor in possession shall perform the duties prescribed in clauses (2)–(4) of subdivision (a) of this rule and, if the court directs, shall file and transmit to the United States trustee a complete inventory of the property of the debtor within the time fixed by the court. If the debtor is removed as debtor in possession, the trustee shall perform the duties of the debtor in possession prescribed in this paragraph.

(c) CHAPTER 13 TRUSTEE AND DEBTOR.

(1) *Business Cases*. In a chapter 13 individual's debt adjustment case, when the debtor is engaged in business, the debtor shall perform the duties prescribed by clauses (2)–(4) of subdivision (a) of this rule and, if the court directs, shall file and transmit to the United

States trustee a complete inventory of the property of the debtor within the time fixed by the court.

(2) *Nonbusiness Cases*. In a chapter 13 individual's debt adjustment case, when the debtor is not engaged in business, the trustee shall perform the duties prescribed by clause (2) of subdivision (a) of this rule.

(d) FOREIGN REPRESENTATIVE. In a case in which the court has granted recognition of a foreign proceeding under chapter 15, the foreign representative shall file any notice required under § 1518 of the Code within 14 days after the date when the representative becomes aware of the subsequent information.

(e) TRANSMISSION OF REPORTS. In a chapter 11 case the court may direct that copies or summaries of annual reports and copies or summaries of other reports shall be mailed to the creditors, equity security holders, and indenture trustees. The court may also direct the publication of summaries of any such reports. A copy of every report or summary mailed or published pursuant to this subdivision shall be transmitted to the United States trustee.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 23, 2012, eff. Dec. 1, 2012.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule combines the provisions found in former Rules 218, 10–208, 11–30 and 13–208 of the Rules of Bankruptcy Procedure. It specifies various duties which are in addition to those required by §§ 704, 1106, 1302 and 1304 of the Code.

In *subdivision (a)* the times permitted to be fixed by the court in clause (3) for the filing of reports and summaries may be fixed by local rule or order.

*Subdivision (b)*. This subdivision prescribes duties on either the debtor or trustee in chapter 13 cases, depending on whether or not the debtor is engaged in business (§ 1304 of the Code). The duty of giving notice prescribed by subdivision (a)(4) is not included in a nonbusiness case because of its impracticability.

*Subdivision (c)* is derived from former Chapter X Rule 10–208(c) which, in turn, was derived from § 190 of the Act. The equity security holders to whom the reports should be sent are those of record at the time of transmittal of such reports.

NOTES OF ADVISORY COMMITTEE ON RULES—1987
AMENDMENT

*Subdivision (a)* is amended to add as a duty of the trustee or debtor in possession the filing of a notice of or a copy of the petition. The filing of such notice or a copy of the petition is essential to the protection of the estate from unauthorized post-petition conveyances of real property. Section 549(c) of the Code protects the title of a good faith purchaser for fair equivalent value unless the notice or copy of the petition is filed.

NOTES OF ADVISORY COMMITTEE ON RULES—1991
AMENDMENT

This rule is amended to provide the United States trustee with information needed to perform supervisory responsibilities in accordance with 28 U.S.C. § 586(a)(3) and to exercise the right to raise, appear and be heard on issues pursuant to § 307 of the Code.

*Subdivision (a)(3)* is amended to conform to the 1986 amendments to § 704(8) of the Code and the United States trustee system. It may not be necessary for the

court to fix a time to file reports if the United States trustee requests that they be filed within a specified time and there is no dispute regarding such time.

*Subdivision (a)(5)* is deleted because the filing of a notice of or copy of the petition to protect real property against unauthorized postpetition transfers in a particular case is within the discretion of the trustee.

The new subdivision (a)(5) was added to enable the United States trustee, parties in interest, and the court to determine the appropriate quarterly fee required by 28 U.S.C. §1930(a)(6). The requirements of subdivision (a)(5) should be satisfied whenever possible by including this information in other reports filed by the trustee or debtor in possession. Nonpayment of the fee may result in dismissal or conversion of the case pursuant to §1112(b) of the Code.

Rule X–1007(b), which provides that the trustee or debtor in possession shall cooperate with the United States trustee by furnishing information that the United States trustee reasonably requires, is deleted as unnecessary. The deletion of Rule X–1007(b) should not be construed as a limitation of the powers of the United States trustee or of the duty of the trustee or debtor in possession to cooperate with the United States trustee in the performance of the statutory responsibilities of that office.

*Subdivision (a)(6)* is abrogated as unnecessary. See §1106(a)(7) of the Code.

*Subdivision (a)(7)* is abrogated. The closing of a chapter 11 case is governed by Rule 3022.

New *subdivision (b)*, which prescribes the duties of the debtor in possession and trustee in a chapter 12 case, does not prohibit additional reporting requirements pursuant to local rule or court order.

NOTES OF ADVISORY COMMITTEE ON RULES—1996 AMENDMENT

*Subdivision (a)(1)* provides that the trustee in a chapter 7 case and, if the court directs, the trustee or debtor in possession in a chapter 11 case, is required to file and transmit to the United States trustee a complete inventory of the debtor's property within 30 days after qualifying as trustee or debtor in possession, unless such an inventory has already been filed. Subdivisions (b) and (c) are amended to clarify that a debtor in possession and trustee in a chapter 12 case, and a debtor in a chapter 13 case where the debtor is engaged in business, are not required to file and transmit to the United States trustee a complete inventory of the property of the debtor unless the court so directs. If the court so directs, the court also fixes the time limit for filing and transmitting the inventory.

*GAP Report on Rule 2015.* No changes since publication, except for a stylistic change in the first sentence of the committee note.

COMMITTEE NOTES ON RULES—2002 AMENDMENT

*Subdivision (a)(5)* is amended to provide that the duty to file quarterly disbursement reports continues only so long as there is an obligation to make quarterly payments to the United States trustee under 28 U.S.C. §1930(a)(6).

Other amendments are stylistic.

*Changes Made After Publication and Comments.* No changes were made.

COMMITTEE NOTES ON RULES—2008 AMENDMENT

Subparagraph (a)(6) implements §308 of the Code, added by the 2005 amendments. That section requires small business chapter 11 debtors to file periodic financial and operating reports, and the rule sets the time for filing those reports and requires the use of an Official Form for the report. The obligation to file reports under this rule does not relieve the trustee or debtor of any other obligations to provide information or documents to the United States trustee.

The rule also is amended to fix the time for the filing of notices under §1518, added to the Code in 2005. Former subdivision (d) is renumbered as subdivision (e).

Other changes are stylistic.

*Changes Made After Publication.* No changes were made after publication.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

COMMITTEE NOTES ON RULES—2012 AMENDMENT

*Subdivision (a)(3).* Subdivision (a)(3) is amended to correct the reference to §704. The 2005 amendments to the Code expanded §704 and created subsections within it. The provision that was previously §704(8) became §704(a)(8). The other change to (a)(3) is stylistic.

## Rule 2015.1. Patient Care Ombudsman

(a) REPORTS. A patient care ombudsman, at least 14 days before making a report under §333(b)(2) of the Code, shall give notice that the report will be made to the court, unless the court orders otherwise. The notice shall be transmitted to the United States trustee, posted conspicuously at the health care facility that is the subject of the report, and served on: the debtor; the trustee; all patients; and any committee elected under §705 or appointed under §1102 of the Code or its authorized agent, or, if the case is a chapter 9 municipality case or a chapter 11 reorganization case and no committee of unsecured creditors has been appointed under §1102, on the creditors included on the list filed under Rule 1007(d); and such other entities as the court may direct. The notice shall state the date and time when the report will be made, the manner in which the report will be made, and, if the report is in writing, the name, address, telephone number, email address, and website, if any, of the person from whom a copy of the report may be obtained at the debtor's expense.

(b) AUTHORIZATION TO REVIEW CONFIDENTIAL PATIENT RECORDS. A motion by a patient care ombudsman under §333(c) to review confidential patient records shall be governed by Rule 9014, served on the patient and any family member or other contact person whose name and address have been given to the trustee or the debtor for the purpose of providing information regarding the patient's health care, and transmitted to the United States trustee subject to applicable nonbankruptcy law relating to patient privacy. Unless the court orders otherwise, a hearing on the motion may not be commenced earlier than 14 days after service of the motion.

(Added Apr. 23, 2008, eff. Dec. 1, 2008; amended Mar. 26, 2009, eff. Dec. 1, 2009.)

COMMITTEE NOTES ON RULES—2008

This rule is new and implements §333 of the Code, added by the 2005 amendments. Subdivision (a) is designed to give parties in interest, including patients or their representatives, sufficient notice so that they will be able to review written reports or attend hearings at which reports are made. The rule permits a notice to



# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

# LOCAL RULES OF
# BANKRUPTCY PROCEDURE

Revised as of: March 2021
Effective Date: August 2, 2021

        iii.      pay any and all fees associated with use of the Internet Auction Mechanism, each without further order of the Court.

**(j)**    Nothing in this Rule shall limit applicability of the requirements of Local Bankr. R 6005-1 with respect to any auctioneer hired by an estate representative to provide services beyond access to an Internet Auction Mechanism.

**(k)**    Unless the Court orders otherwise, a listing placed on an Internet Auction Mechanism shall state the bankruptcy case name and number and that the sale procedure has been approved by the United States Bankruptcy Court for the District of Connecticut.

**Local Bankr. R. 6004-2**      **Sales and Sale Procedures Motions.**

**(a)**    **Applicability of Rule**. Except as otherwise provided in these Local Rules or ordered by the Court, this rule applies to motions to sell property of the estate under 11 U.S.C. § 363(b) ("Sale Motions") and motions seeking approval of sale, bid or auction procedures in anticipation of or in conjunction with a Sale Motion ("Sale Procedures Motions").

**(b)**    **Sale Motions.** In addition to the filing and service of a separate Local Form Notice of Sale of Estate Property (Appendix O) in accordance with Local Bankr. R. 6004-1, Sale Motions shall be scheduled for a hearing in accordance with Appendix N. Except as otherwise provided in these Local Rules, the Bankruptcy Code, the Bankruptcy Rules, or an Order of the Court, all Sale Motions shall attach or include the following:

    **(1)**    If applicable, a copy of the proposed purchase agreement, or a form of such agreement substantially similar to the one the Debtor reasonably believes it will execute in connection with the proposed sale;

    **(2)**    A copy of a proposed form of sale order;

    **(3)**    A request, if necessary, for the appointment of a consumer privacy ombudsman under 11 U.S.C. § 332; and

    **(4)**    A description of the means by which the movant determined the fair market value of the property to be sold.

**(c)**    **Provisions to be Highlighted.** The Sale Motion must highlight material terms, including but not limited to: (a) whether the proposed form of sale order and/or the underlying purchase agreement constitutes a sale or contains any provision of the type set forth below; (b) the location of any such provision in the proposed form of order or purchase agreement; and (c) the justification for the inclusion of the following material provisions:

    **(1)**    **Sale to Insider**. If the proposed sale is to an insider, as defined in 11 U.S.C. § 101(31), the Sale Motion must: (a) identify the insider; (b) describe the insider's relationship to the Debtor; and (c) set forth any measures taken to ensure the fairness of the sale process and the proposed transaction.

**(2)** **Agreements with Management.** If a proposed buyer has discussed or entered into any agreements with management or key employees regarding compensation or future employment, the Sale Motion must disclose: (a) the material terms of any such agreement; and (b) what measures have been taken to ensure the fairness of the sale and the proposed transaction in the light of any such agreements.

**(3)** **Releases.** The Sale Motion must highlight any provisions pursuant to which an entity, individual or party is being released or claims against any entity are being waived or otherwise satisfied. The Sale Motion must also describe the consideration, if any, to the estate for any such release.

**(4)** **Private Sale/No Competitive Bidding.** The Sale Motion must disclose whether an auction is contemplated and highlight any provision in which the Debtor has agreed not to solicit competing offers for the property subject to the Sale Motion or to otherwise limit shopping of the property.

**(5)** **Closing and Other Deadlines**. The Sale Motion must highlight any deadlines for the closing of the proposed sale or deadlines that are conditions to closing the proposed transaction.

**(6)** **Good Faith Deposit**. The Sale Motion must highlight whether the proposed purchaser has submitted or will be required to submit a good faith deposit and, if so, the conditions under which such deposit may be forfeited.

**(7)** **Interim Arrangements with Proposed Buyer.** The Sale Motion must highlight any provision pursuant to which a Debtor is entering into any interim agreements or arrangements with the proposed purchaser, such as interim management arrangements (which, if out of the ordinary course, also must be subject to notice and a hearing under 11 U.S.C. § 363(b) of the Bankruptcy Code) and the terms of such agreements.

**(8)** **Use of Proceeds.** The Sale Motion must highlight any provision pursuant to which a Debtor proposes to release sale proceeds on or after the closing without further Court order, or to provide for a definitive allocation of sale proceeds between or among various sellers/lenders or collateral.

**(9)** **Tax Exemption.** The Sale Motion must highlight any provision seeking to have the sale declared exempt from taxes under 11 U.S.C. § 1146(a) of the Bankruptcy Code, the type of tax (e.g., recording tax, stamp tax, use tax, capital gains tax) for which the exemption is sought. It is not sufficient to refer simply to "transfer" taxes and the state or states in which the affected property is located.

**(10)** **Record Retention.** If the Debtor proposes to sell substantially all of its assets, the Sale Motion must highlight whether the Debtor will retain, or have reasonable access to, its books and records to enable it to administer its bankruptcy case.

(11)   **Sale of Avoidance Actions.** The Sale Motion must highlight any provision pursuant to which the Debtor seeks to sell or otherwise limit its rights to pursue avoidance claims under Chapter 5 of the Bankruptcy Code.

(12)   **Requested Findings and Order as to Successor Liability**. The Sale Motion and proposed Order should highlight any provisions relating to the proposed purchaser's responsibility as a successor.

(13)   **Sale Free and Clear of Unexpired Leases.** The Sale Motion must highlight any provision by which the Debtor seeks to sell property free and clear of a possessory leasehold interest, license, or other right.

(14)   **Credit Bid**. The Sale Motion must highlight any provision by which the Debtor seeks to allow, disallow, or affect in any manner, credit bidding pursuant to 11 U.S.C. § 363(k).

(15)   **Relief from Bankruptcy Rule 6004(h).** The Sale Motion must highlight any provision whereby the Debtor seeks relief from the fourteen-day stay imposed by FRBP 6004(h).

(16)   **Carve-Outs and/or "Gifts."** The Sale Motion must highlight any provision by which the lender(s) or party-in-interest is allowing the distribution of its collateral for the benefit of others.

(17)   **Residual Assets.** The Sale Motion must describe what residual assets, if any, will exist following the Sale Closing.

(d)   **Sale Procedures Motions.** A Sale Procedures Motion may be scheduled for a hearing in accordance with Appendix M. A party-in-interest may file a Sale Procedures Motion seeking approval of an order (a "Sale Procedures Order") approving bidding and auction procedures either as part of the Sale Motion or by a separate motion filed in anticipation of an auction and a proposed sale. The Sale Procedures Motion should highlight the following provisions in any Sale Procedures Order:

(1)   **Provisions Governing Qualification of Bidders.** Any provision governing an entity becoming a qualified bidder, including but not limited to, an entity's obligation to:

(A)   Deliver financial information by a stated deadline to the Debtor and other key parties (ordinarily excluding other bidders);

(B)   Demonstrate its financial wherewithal to consummate a sale;

(C)   Maintain the confidentiality of information obtained from the Debtor or other parties or execute a non-disclosure agreement; and

(D)     Make a non-binding expression of interest or execute a binding agreement.

**(2)     Provisions Governing Qualified Bids.** Any provision governing a bid being a qualified bid, including, but not limited to:

(A)     Any deadlines for submitting a bid and the ability of a bidder to modify a bid not deemed a qualified bid;

(B)     Any requirements regarding the form of a bid, including whether a qualified bid must be (a) marked against the form of a "stalking horse" agreement or a template of the Debtor's preferred sale terms, showing amendments and other modifications (including price and other terms), (b) for all of the same assets or may be for less than all of the assets proposed to be acquired by an initial or "stalking horse" bidder, or (c) remain open for a specified period of time;

(C)     Any requirement that a bid include a good faith deposit, the amount of that deposit, and under what conditions the good faith deposit is not refundable; and

(D)     Any other conditions a Debtor requires for a bid to be considered a qualified bid or to permit a qualified bidder to bid at an auction.

**(3)     Provisions Providing Bid Protections to "Stalking Horse" or Initial Bidder.** Any provisions providing an initial or "stalking horse" bidder a form of bid protection, including, but not limited to the following:

(A)     **No-Shop or No-Solicitation Provisions.** Any limitations on a Debtor's ability or right to solicit higher or otherwise better bids;

(B)     **Break-Up/Topping Fees and Expense Reimbursement.** Any agreement to provide or seek an order authorizing break-up or topping fees and/or expense reimbursement, and the terms and conditions under which any such fees or expense reimbursement would be paid;

(C)     **Bidding Increments.** Any requirement regarding the amount of the initial overbid and any successive bidding increments; and

(D)     **Treatment of Break-Up and Topping Fees and Expense Reimbursement at Auction.** Any requirement that the "stalking horse" bidder receive a "credit" equal to the break-up or topping fee and or expense reimbursement when bidding at the auction and in such case whether the "stalking horse" is deemed to have waived any such fee and expense upon submitting a higher or otherwise better bid than its initial bid at the auction.

(4)     **Modification of Bidding and Auction Procedures**. Any provision that would authorize a Debtor, without further order of the Court, to modify any procedures regarding bidding or conducting an auction.

(5)     **Closing with Alternative Backup Bidders.** Any provision that would authorize the Debtor to accept and close on alternative qualified bids received at an auction in the event that the bidder selected as the "successful bidder" at the conclusion of the auction fails to close the transaction within a specified period.

(6)     **Request for Prior Approval of Sale Terms and Conditions; Notice and Service**. In connection with any Sales Procedures Motion, any party may seek prior approval from the Court of the form and content of any notice of the terms and conditions of the sale to be served on parties, including but not limited to, the scope or limitation of the parties to be served with such notice, the requisite platforms for advertising of the sale, a description of the property to be sold, the sale process, the terms of sale, the necessity of subsequent Court approval, and opportunities for inspection of the property.

(e)     **Provisions Governing the Auction.** Unless otherwise ordered by the Court, the Sale Procedures Order shall:

(1)     Specify the date, time, and place at which the auction will be conducted, and the method for providing notice to parties of any changes thereto; and

(2)     Provide that each bidder participating at the auction will be required to certify in writing that it has not engaged and will not engage in any collusion with respect to the bidding or the sale.

(f)     **Expedited Sale Disclosures.** In connection with any hearing to approve the sale of substantially all assets at any time before sixty (60) days after the filing of the petition, a motion for an order authorizing a sale procedure and hearing or the sale motion itself when regularly noticed, should include factual information on the following points:

(1)     **Creditors' Committee.** If a creditors' committee existed pre-petition, indicate the date and manner in which the committee was formed, as well as the identity of the members of the committee and the companies with which they are affiliated.

(2)     **Counsel for Committee.** If the pre-petition creditors' committee retained counsel, indicate the date counsel was engaged and the selection process, as well as the identity of committee counsel.

(3)     **Sale Contingencies.** Statement of all contingencies to the sale agreement, together with a copy of the agreement.

(4)     **Creditor Contact List**. If no committee has been formed, a list of contact persons, together with available contact information for each of the twenty (20) largest unsecured creditors.

(5)     **Administrative Expenses.** Assuming the sale is approved, an itemization and an estimate of administrative expenses relating to the sale to be incurred before closing and the source of payment for those expenses.

(6)     **Deductions from Proceeds of Sale.** Itemize all deductions, including any applicable taxes, that are to be made from gross sale proceeds and include a brief description of the basis for any such deductions. If the amount of a deduction will not be fixed until the date of the closing, an estimate may be provided.

(7)     **Debt Structure of Debtor.** A brief description of the Debtor's debt structure, including the amount of the Debtor's secured debt, priority claims, and general unsecured claims.

(8)     **Need for Quick Sale**. An extensive description of why the assets of the estate must be sold on an expedited basis. Include a discussion of alternatives to the sale.

(9)     **Negotiating Background.** A description of the length of time spent in negotiating the sale, and which parties-in-interest were involved in the negotiation, along with a description of the details of any other offers to purchase, including, without limitation, the potential purchaser's plans in connection with the retention of the Debtor's employees.

(10)    **Marketing of Assets.** A description of the manner in which the assets were marketed for sale, including the period of time involved and the results achieved.

(11)    **Decision to Sell.** The date on which the Debtor accepted the offer to purchase the assets.

(12)    **Relationship of Buyer.** A statement identifying the buyer and setting forth all of the buyer's (including its officers, directors and shareholders) connections with the Debtor, creditors, any other party-in-interest, their respective attorneys, accountants, the United States Trustee or any person employed in the office of the United States Trustee.

(13)    **Post Sale Relationship with Debtor.** A statement setting forth any relationship or connection the Debtor (including its officers, directors, shareholders, and employees) will have with the buyer after the consummation of the sale, assuming it is approved by the Court.

(14)    **Relationship with Secured Creditors.** If the sale involves the payment of all or a portion of secured debt(s), a statement of all connections between Debtor's officers,

directors, employees, or other insiders and each secured creditor involved (for example, release of insider's guaranty).

**(15)** **Insider Compensation.** Disclosure of current compensation received by officers, directors, key employees, or other insiders pending approval of the sale.

**(16)** **Successor Liability.** Any sale requesting findings or the entry of relief regarding successor liability shall delineate the scope and form of notice and the relief requested.

**(g)** **Service of Sale Motions and Sale Procedure Motions.**

In addition to compliance with FRBP 2002(a)(2), Motions to Sell must be served by the Movant on all parties indicating interest in the purchase of the property, and, if the trustee was not represented by a broker, at least one trade publication or website organized for the purpose of permitting bankruptcy trustees to advertise the sale of estate property.

**(h)** **Sales Motions by Debtors under Chapter 13.**

If a Motion for the sale free and clear of liens under 11 U.S.C. § 363 by a Chapter 13 debtor proposes a sale which will satisfy a lien or liens the Chapter 13 Trustee is paying under the terms of a confirmed Chapter 13 Plan (the "Lien"), the motion shall seek an order:

**(1)** Requiring the Chapter 13 Trustee to state on the docket the balance due on the Lien under the confirmed Chapter 13 Plan, with a calculation of the commission due on the portion of the Lien to be paid through the confirmed Chapter 13 Plan, within a reasonable period of time from the date of the order;

**(2)** Requiring that the Debtor attach a closing statement to the statement required under FRBP 6004(f)(1);

**(3)** Providing that the docketing of the closing statement and the statement under FRBP 6004(f)(1) shall contain a declaration by the Debtor and his or her closing attorney that the Lien was satisfied in full at closing;

**(4)** Stating whether the Chapter 13 Trustee's commission due on the portion of the Lien paid through the confirmed Chapter 13 Plan will be paid at closing; and

**(5)** Providing that the docketing of the closing statement and the statement under FRBP 6004(f)(1) shall relieve the Chapter 13 Trustee of any obligation to pay the Lien through the confirmed Chapter 13 Plan.

**Local Bankr. R. 6004-3 Statement under FRBP 6004(f)(1).**

**(a)** Statements filed under FRBP 6004(f)(1) shall contain:

**U.S. DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR UNITED STATES TRUSTEES**

# HANDBOOK FOR CHAPTER 7 TRUSTEES

Effective October 1, 2012



**1) DETERMINATION AND ADMINISTRATION OF ASSET CASES**

Prior to administering a case as an asset case, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors. The trustee must review the bankruptcy schedules to make a preliminary determination as to whether there appears to be assets in the case or areas warranting further inquiry at the meeting of creditors. The trustee should not rely upon any designation by the Clerk of the Bankruptcy Court as to whether the case is an asset or no-asset case. The trustee must conduct an independent investigation to make this determination. 11 U.S.C. § 704.

**2) DETERMINATION AND ADMINISTRATION OF NO-ASSET CASES**

If the trustee determines after the meeting of creditors that the case is a no-asset case, then the trustee must timely file a report of no distribution ("NDR"). 11 U.S.C. § 704(a)(9).

The trustee shall file the NDR with the court within 60 days after the initial examination of the debtor at the meeting of creditors. Failure to timely file NDRs may result in an appropriate remedial action.

The purpose of the NDR is to close administration of the case. The NDR certifies that the trustee has reviewed the schedules, investigated the facts, and determined that there are no assets to liquidate for the benefit of creditors. It also certifies that the trustee has examined the debtor's claimed exemptions and concluded that there is no purpose served to object to their allowance, and that all security interests and liens against non-exempt property are properly documented, perfected, and not subject to attack as preferences or otherwise voidable.

If the trustee discovers assets to administer for the benefit of creditors after the NDR is filed, the trustee must: (1) withdraw the NDR in writing to administer the assets and (2) seek to have the case reopened if the case is closed. See Handbook Chapter 4.N.3 for additional procedures concerning reopening closed cases. The trustee should consider a complaint to deny or revoke the debtor's discharge if the debtor intentionally failed to disclose the assets. See Handbook Chapter 4.G.

**3) FURTHER CONSIDERATIONS IN DETERMINING WHETHER TO ADMINISTER ASSETS**

**a. INVENTORY OF ESTATE PROPERTY**

The trustee should inventory the debtor's property, unless the trustee accepts as that inventory the debtor's Schedule A - Real Property and Schedule B - Personal Property. Fed. R. Bankr. P. 2015(a)(1). Given the debtor's duty to cooperate with the trustee in preparation of this inventory, the trustee must verify at the meeting of creditors that the debtor's inventory, as shown on Schedules A and B or other documents, is complete and satisfactory. There may be instances when Schedules A and B do not provide sufficient detail in order to properly administer the assets. For example, if the debtor has listed Furs and Jewelry at $10,000, the trustee will need to obtain a detailed list of the items. In addition to a written list, the trustee

should consider using other methods to document the assets, such as videotaping the assets. The inventory must be sufficient to enable a trustee to later verify whether an auctioneer or other liquidator has accounted for all property turned over for sale. In addition, see Chapter 4.C.10.e and Chapter 4.C.10.g which further discuss the trustee's responsibilities: 1) to supervise professionals who take possession of estate assets, and 2) to monitor the status and safeguarding of the assets held by the professionals. 11 U.S.C. § 704, Fed. R. Bankr. P. 2015. [Language amended April 1, 2017.]"

b.  **AUTOMATIC STAY**

Pursuant to sections 362(c)(3) and (c)(4), the automatic stay terminates or never goes into effect for repeat or serial filers. Depending upon the law in the particular jurisdiction, the trustee may need to take immediate action to request the court to continue the stay until the trustee can determine if there is equity in property of the estate.

If a repeat filer has had an earlier case pending within the preceding year, the automatic stay terminates after 30 days. If a repeat filer has had two or more cases pending within the preceding year, the stay does not go into effect at all. The law is unsettled as to whether, in addition to termination of the stay with respect to the debtor, these provisions also terminate the stay with respect to property of the estate. The trustee should determine the state of the law in the trustee's district.

c.  **EXEMPTIONS**

A debtor must list property claimed as exempt on the schedule of exempt property filed with the court. Fed. R. Bankr. P. 4003 (a). Only individuals may claim exemptions; corporations and partnerships may not.

Specific exemptions are not addressed in depth in this Handbook. Section 522(d) sets forth allowable exemptions under federal bankruptcy law. The trustee must know which states have opted out of the federal exemptions. 28 U.S.C § 586. If a state has opted out, the state property exemptions apply instead of those provided in section 522(d), although other non-bankruptcy federal exemptions will apply. If a state has not "opted out," a debtor may still elect either state or federal exemptions.

The trustee must review the circumstances of the debtor's domicile to ensure that the debtor qualifies for the exemptions scheduled. Generally, a debtor may elect a state's exemptions only if that state was the debtor's domicile for the 730 days immediately before the petition was filed. If the debtor did not have a domicile located in a single state for that 730-day period, then the debtor may elect the exemptions in the state that was the debtor's domicile for 180 days immediately before the 730-day period, or for a longer portion of such 180-day period than in any other place. 11 U.S.C. § 522(b)(3)(A). Trustees must be aware of state exemption statutes that may allow exemptions based on factors other than domicile.

The trustee must object to a claimed exemption if doing so benefits the estate. For example, if allowing the improperly claimed exemption would remove assets from

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| HAROLD E. COLE, | ) | CASE NO. 10-50091 |
| Debtor | ) | |
| | ) | |
| KARA S. RESCIA, | ) | |
| Movant | ) | |
| v. | ) | |
| | ) | |
| TOWN OF WOODBURY, | ) | |
| TAX COLLECTOR, | ) | |
| JOHN A. LOVETERE, ESTATE | ) | |
| OF NANCY D. LOVETERE | ) | |
| Respondents | ) | JULY 1, 2016 |
| | ) | |

## MOTION FOR ORDER AUTHORIZING AND APPROVING PRIVATE SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES

Now comes Kara S. Rescia, Trustee in the above Chapter 7 case, by and through her counsel, Rescia, Katz & Shear, LLP, and hereby moves, pursuant to 11 U.S.C. § 363(b) and (f) and 11 U.S.C. § 725 and Bankruptcy Rule 6004(c), for authority to sell, by private sale, certain property belonging to the estate, specifically the real property with buildings and improvements thereon located at 35 Joshua Hill Road, Woodbury, Connecticut 06798 (the "Property") and recover the value of the Debtor's interest in the Property from any proceeds from the sale pursuant to 11 U.S.C. § 363 for the bankruptcy estate, free and clear of all liens, encumbrances and claims of every kind and description to BTJ Inc. (the "Purchaser"), for the total sum of $250,000.00 cash. A corresponding Proposed Notice of Intended Private Sale of Property, Solicitation of Counteroffers, and Deadline for Submitting Objections and Higher Offers and Hearing Date ("Notice of Intended Sale") is filed simultaneously herewith. As grounds therefore, the Trustee respectfully represents the following:

1.  On January 15, 2010 ("Petition Date"), Harold E. Cole ("Debtor") filed a Voluntary Petition pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code ("Code") with the United States Bankruptcy Court for the District of Connecticut ("Court"). By Order dated February 5, 2015 this case was converted to a Chapter 7 bankruptcy.

2.  On February 5, 2015, the Trustee accepted an appointment as Chapter 7 Trustee of the Debtor's Bankruptcy Estate and continues to serve in such capacity.

3.  Among the Debtor's assets is several parcels of real estate including the Property.

4.  On February 24, 2010, the Debtor listed that he is sole owner of the Property on his Schedule A filed with the Court, having a value of $650,000.00 subject to a judgment lien and real estate taxes to the Town of Woodbury.

5.  On February 25, 2010, on Schedule C filed with the Court, the Debtor did not claim an exemption in the Property.

6.  On March 23, 2010, the Respondents, John A. Lovetere and Estate of Nancy D. Lovetere (the "Loveteres") filed secured proofs of claim, numbers 10 and 11, respectively, each in the amount of $138,824.48. The claims are secured claims based upon a judgment lien recorded in August of 2008 on six parcels of real estate owned by the Debtor, including the Property. However, interest has continued to accrue and the payoff of this lien as of June 30, 2016 is $210,888.42.

7.  On June 26, 2015, the Trustee filed an Application to Employ Ed Sutton of Keller Williams Greater Hartford as Real Estate Broker in order to market several parcels of real estate, including the Property, for sale (Doc. Id. 533). The fee for the real estate broker is a contingent fee of 5% of the sales price. Said Application was granted by the Court on July 13, 2015 (Doc. Id. 535).

8.  The Purchaser offered the estate the total sum of $250,000.00 cash subject to Bankruptcy Court approval and has provided a deposit of $40,000.00, which the trustee is holding in escrow subject to the Court's approval of the proposed sale to the highest bidder.

9.  A copy of the Real Estate Purchase and Sale Contract dated May 5, 2016 is attached hereto as Exhibit "A" and made a part hereof.

10. For approximately 10 months the Property was marketed for sale and the consideration proposed in the offer represents the current fair market value of the Property and will be subject to higher and better offers.

11. The Loveteres have agreed to accept partial payment of $100,000.00 toward the total debt owed and provide the Trustee a full release of their judgment lien on the Property upon receipt of the $100,000.00 which is to be paid out of the proceeds of the sale of the Property.

12. The Respondent, Town of Woodbury, Tax Collector holds a real estate tax lien on the Property with outstanding real estate taxes owed through June 30, 2016 totaling $75,115.20. Counsel to the Town of Woodbury has informed the Trustee that the additional accrued interest for the month of July 2016 will be $682.53.

13. Upon information and belief, the Purchaser is purchasing the Property in good faith and is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and is therefore entitled to the protection of that provision.

14. The Property shall be sold free and clear of any and all interests, claims, liens, and encumbrances.

15. The Trustee believes that a sale of the Property by private sale is in the best interest of the estate. The Trustee believes that this offer is fair and reasonable based on the current liquidation value of the Property. The real estate broker has not received any other offers. This proposed sale price is the highest and best offer received by the Trustee to date.

16. As set forth in the proposed Notice of Intended Sale filed simultaneously herewith, the Trustee will solicit any cash offers for the Property in an amount of $275,000.00 or more to be accompanied by a deposit of at least 10% of the proposed offer.

17. Please take notice that any objections or higher and better offers to this private sale must be filed with the Clerk of the United States Bankruptcy Court, 915 Lafayette Boulevard, Bridgeport, Connecticut 06604, on or before the deadline set forth in the Notice of Intended Sale with a copy to the Chapter 7 Trustee, Kara S. Rescia, Esq., Rescia, Katz, & Shear, LLP, 5104A Bigelow Commons, Enfield, Connecticut 06082, or by email: kara@ctmalaw.com and to the Purchaser BTJ, Inc. P.O. Box 251, Woodbury, Connecticut 06798 and the Purchaser's Attorney, Paul Garlasco, Esq. A83 Park Lane Road, New Milford, CT 06776 or by email: ATTYGARLA@aol.com.

18. Any objections or higher offers must state the name and docket of this case. Any objection must identify the party objecting to the proposed sale and must state the specific reasons for the objection. Any reasons not set forth therein may be deemed to be waived.

19. If no objection or higher offer is timely filed, the sale may be approved without further notice or hearing.

20. In the event that an objection or higher offer is timely filed, the Court will schedule a hearing on whether or not the intended sale should be approved. Any party filing an objection or counteroffer will be expected to appear at the hearing, be available telephonically, or have a representative appear on their behalf and to submit a sealed bid. At that hearing, the Court may take further action without further notice to parties in interest.

**WHEREFORE,** the Trustee respectfully prays:

1. That this Court authorize the Trustee's Motion for Order Authorizing and Approving

Private Sale of Property of the Estate of the Property described herein to BTJ, Inc., free and clear of all liens and encumbrances;

2. That the Trustee be authorized to execute such documents as are reasonably necessary to complete the sale;

3. That the Trustee be authorized to pay the real estate broker 5% of the sale price;

4. That the Trustee be authorized to pay any other reasonable closing costs;

5. That any encumbrances shall attach to the proceeds of the sale, to the extent that they are valid and perfected, in the same priority as they are entitled to under applicable law; and

6. For such further relief as this Court deems just and proper.

> KARA S. RESCIA, TRUSTEE
> For the Estate of Harold E. Cole
> BY HER COUNSEL
>
> /s/Kara S. Rescia, Esq.
> Kara S. Rescia, Esq. Federal Bar No. CT18001
> Elizabeth D. Katz, Esq. Federal Bar No.: CT29196
> Rescia, Katz & Shear, LLP
> 5104A Bigelow Commons
> Enfield, CT 06082
> Tel. No. (860) 452-0052
> kara@ctmalaw.com
> liz@ctmalaw.com



# REAL ESTATE CONTRACT



**EXHIBIT**
"A"

**NOTICE:** This is a legal and binding Contract for the purchase and sale of property. It is appropriate for most BUT NOT ALL such transactions and is not intended for use with commercial property or new construction. If this form does not appear to either BUYER or SELLER to be appropriate for a particular transaction, you are urged to discuss the purchase or sale with an attorney *BEFORE YOU SIGN*. Most, but not all provisions of this Contract are subject to negotiation prior to signing.
Once signed by BUYER and SELLER, it is a legally binding Contract.

1. **PARTIES, OFFER, ACCEPTANCE AND PROPERTY DESCRIPTION:**

   **BUYER(S):** BTJ Inc.

   **ADDRESS:**
   agree to purchase from

   **SELLER(S):** Kara Rescia, Chapter 7 Trustee of the Bankruptcy Estate of Harold E. Cole

   **ADDRESS:** Rescia & Katz, LLP 5104A Bigelow Commons Enfield CT 06082
   and SELLER(S) agrees to sell to BUYER(S) property known as:
   35 Joshua Hill Road

   Town of Woodbury _____ , State of Connecticut

2. **FIXTURES AND PERSONAL PROPERTY:**
   All fixtures and all items permanently attached to the property on the date the BUYER signed this Contract and all screens, storm windows/doors, TV antenna/satellite dish, security, fire, and smoke alarms, garage door openers with controls, wall to wall carpet, plumbing and heating fixtures, hot water heater, sump pump, light fixtures, garbage disposal, water softener, all built in appliances, trees and shrubbery, are included in the sale. Unless mentioned in the attached Property Inclusion/Exclusion Addendum, all personal property is excluded.

3. **PRICE:**
   The Sale Price shall be payable as follows:

   | | |
   |---|---:|
   | Sale Price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 250,000.00 | |
   | Initial Deposit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 2,000.00 |
   | Additional Deposit to be paid on or before _upon fully executed contract_ $ | 38,000.00 |
   | By Proceeds of: Financing as specified in Paragraph 4 below . . . . . . . . . . . . . . . . $ | 0 |
   | Balance at closing by Bank Check, Certified Check or Attorney's Check if acceptable by local Bar custom . . . . . . . . . . . . . . . . . . . . . . $ | 210,000.00 |
   | Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 250,000.00 |

4. **MORTGAGE CONTINGENCY:**
   a. BUYER will use best efforts to obtain a written commitment for a Mortgage from a bank or other lending institution and furnish and deliver a copy of commitment to the SELLER or the SELLER'S agent on or before _____NA_____ (Mortgage Commitment Date). BUYER agrees to apply for such financing within _____NA_____ business days after this contract is signed by both parties, and to pursue such application with diligence. BUYER will pay all application fees, points, and other charges in accordance with policies established by the applicable lender. The Mortgage will be applied for on the following terms:

   Amount: $ _____NA_____ . Maximum Interest Rate: _____NA_____ %. Term: _____NA_____ years.

   **TYPE OF FINANCING: (Check the following as applicable)**

   ☐ CHFA   ☐ FHA   ☐ VA   ☐ CONVENTIONAL (Fixed Rate)

   ☐ CONVENTIONAL (Variable Rate)   ☐ SELLER (Attach Seller Financing documentation)

   ☑ CASH (No Mortgage Contingency): Documented Proof of Funds will be required at the time of offer.

   ☐ OTHER: _____

Buyer's Initials _____   Seller's Initials _____

© 2013 Copyright The Greater Waterbury Board of REALTORS®, Inc. All rights reserved.
RECONTRACT (Rev. 12/13)

Phone:     Fax:
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



## REAL ESTATE CONTRACT

PAGE 2 OF 4



b. If BUYER has not obtained a written commitment for the Mortgage by the Mortgage Commitment Date, BUYER must notify SELLER or their agent not later than 5:00 PM on the Mortgage Commitment Date by written notice of BUYER's failure to obtain such commitment. If SELLER is not willing to extend the Mortgage Commitment Date upon receiving such notice, then SELLER may elect to terminate this Contract. If SELLER does not elect to terminate this Contract, then BUYER may elect to terminate this Contract.

c. If BUYER and SELLER do not choose to terminate this Contract, the Financing Contingency shall be deemed satisfied and the Contract shall remain in full force and effect without this mortgage contingency. If BUYER or SELLER should choose to terminate this Contract, BUYER or SELLER must notify the other party or their agent by written notice within two calendar days after receipt of such notice of BUYER's failure to obtain such commitment. Upon receipt of such election to terminate, all deposits will be refunded to BUYER and this Contract shall be null and void.

5. **INSPECTIONS AND CONDITIONS OF THE PROPERTY:**

a. Unless expressly stated herein, BUYER acknowledges that he has physically inspected the property. BUYER further acknowledges that he has been urged to carefully inspect the property and, if desired, to have the property inspected by a qualified inspector. The BUYER understands that there are areas of the property of which SELLER or an agent of the SELLER have no knowledge. Any representations or statements by the SELLER or any agent of the SELLER are not warranties of any kind and are not a substitute for any inspections or warranties the BUYER may obtain. If there is no Inspection Contingency Addendum attached to this Contract, the Buyer does NOT choose to have any inspections performed and WAIVES any rights to object to any defects in the property that would have been disclosed by a full and complete inspection.

☑ BUYER WAIVES inspection (Buyers' initials) _____ _____ _____ _____ or
☐ BUYER does not waive inspections.

b. SELLER agrees to allow access to the property for the purpose of any inspections requested by the BUYER or their Lender. Such inspections shall be governed by the terms of the Addenda attached to and made a part of this Contract and shall be paid for by the BUYER.

c. SELLER agrees to deliver the property to BUYER at closing in its present condition except for reasonable wear and tear. Risk of loss or damage to the property will be upon the Seller until closing.

NOTICE Regarding Hazardous Waste Facilities, Environmental Matters and Hunting and Shooting Sports Pursuant to Section 20-327f of the Connecticut General Statutes, BUYERS are advised that:

(a) Commissioner of Environmental Protection is required to provide to the Town Clerk of the municipality a list of hazardous waste facilities located within the municipality; and

(b) A list of local properties upon which hunting or shooting sports regularly take place may also be available at the Town Clerk of the municipality; and

(c) Information concerning environmental matters can be obtained from the federal Environmental Protection Agency, the National Response Center, the Department of Defense and third party providers. If the BUYER has concerns about such matters, it is her/his responsibility to investigate such matters.

6. **DEPOSIT:**

Unless otherwise agreed in writing by both SELLER and BUYER, all deposits shall be made by check payable to the listing Broker and be held by the Listing Agency or SELLER's attorney until transfer of title except as provided in Sections 4 & 11. Time is of the essence with respect to the payment of any deposit payable under the terms of this Contract and should any deposit payable under this Contract not be paid by BUYER at the stated time, and continue unpaid for two additional calendar days, SELLER shall have the option to declare BUYER to be in default and to terminate this Contract by written notice to the BUYER and SELLER shall be relieved of all obligation hereunder. In the case of a dispute between SELLER and BUYER, the Listing Agency or SELLER's attorney reserves the right to hold all deposits, without interest or other liability, until the parties' rights to the deposit are agreed upon or adjudicated. Should legal action be taken by either party for recovery of deposit, it is agreed by the parties hereto that the non-prevailing party shall pay all costs (including without limitation, attorneys' fees and court costs) incurred by the prevailing party and any real estate broker that was acting as escrow agent. All deposits shall be held in compliance with Connecticut law.

7. **CLOSING:**

a. Closing and transfer of title shall take place on or about _____ 5 / 15 / 16 _____ or such other time as the parties may agree.

b. BUYER shall have the right to make a final walk-through inspection of the property prior to the closing.

c. The closing will be held at the offices of the BUYER'S attorney or at such other place as BUYER'S mortgage lender may reasonably require.

Buyer's Initials _____  Seller's Initials _____

© 2013 Copyright The Greater Waterbury Board of REALTORS®, Inc. All rights reserved.
RECONTRACT (Rev. 12/13)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com



## REAL ESTATE CONTRACT



**8. OCCUPANCY:**
The BUYER shall be entitled to have exclusive possession and occupancy at the time of closing. The property shall be transferred in broom clean condition, free and clear of debris. Conditions shall be the same as they were in on the date of this Contract, subject to ordinary wear and use, except as otherwise agreed in writing by the parties. SELLER agrees (unless the property is a common interest community and SELLER is not responsible for the grounds) to continue to maintain the grounds until closing including but not limited to lawn maintenance, leaf and/or snow removal.

**9. TITLE, AFFIDAVITS AND RELEASES:**
a. SELLER covenants and warrants that SELLER is the fee title owner of the Property and has the authority and capacity to enter into this Contract and consummate the transaction contemplated herein. The property is to be conveyed by a good and sufficient Warranty Deed of the SELLER (unless the SELLER is an executor, conservator, or administrator, in which case BUYER will receive a Fiduciary's Deed), conveying a good marketable title to the Property, free from all encumbrances, except as may be acceptable to BUYER and BUYER'S Lender, if any, and except zoning and other municipal regulations, the Inland-Wetlands law and any other state of facts that an accurate survey of the Property may reveal. BUYER shall, at BUYER'S own expense, conduct a timely title examination of the Property. BUYER shall notify SELLER of any defects in title that render title to the Property unmarketable, as defined by the Standards of Title of the Connecticut Bar Association, disclosed by such examination. If SELLER is unable to remove such title defects within thirty (30) days of notification of the defect of Title, or Closing of Title, whichever date is later, BUYER shall have the option to:

(a) accept such title as SELLER is able to convey without abatement or reduction of the Purchase Price, provided however, SELLER shall pay any additional premium or post whatever bond and execute such affidavits and indemnity agreements as may be required by BUYER'S title insurer to write title insurance over the defect or

(b) cancel this Contract and receive a return of all Deposits. SELLER shall in addition, pay to BUYER any expenses actually incurred by BUYER for attorney fees, non-refundable fees of lending institutions, survey costs and inspection fees.

b. SELLER agrees to furnish such affidavits concerning title, encroachments, mechanics liens and other items and in such form as BUYER'S title insurance company may require in order to obtain title insurance coverage on the Property or to waive exceptions to the title policy that are objectionable to BUYER'S lender.

**10. ADJUSTMENTS:**
The following are to be apportioned as of 11:59 PM of the day before closing:
a. Taxes, water charges, sewer charges, Association Fees and Condo Fees on the basis of the period for which payment is made;
b. Fuel;
c. Rents as when collected;
d. Rental securities plus interest due thereon as provided by law; and
e. Utilities (for those utilities for which a separate meter reading and final billing cannot be obtained at closing).

If the closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation. Any errors or omissions in computing apportionments at closing shall be corrected. This provision shall survive the closing.

Special assessment liens shall be: ☑ paid by the SELLER ☐ assumed by the BUYER. Pending special assessment liens or special assessments that are pending but have not yet been fixed as to an amount shall be assumed by the BUYER, provided however, that if the improvement has been substantially completed as of the date of this Contract, the SELLER shall credit the BUYER at closing with an amount equal to the latest estimate by the public body charged with levying the special assessment for the improvement.

**11. DEFAULT:**
In the event that the BUYER shall fail to perform any of the obligations and duties as provided in this Contract and SELLER is not in default, then this Contract may, at the option of the SELLER, be terminated and SELLER shall have the right to elect to either retain any payments made hereunder as liquidated damages or to seek whatever remedy may be available under equity or law to recover damages resulting from BUYER's default. In the event that SELLER shall fail to perform any of the obligations and duties as provided in this Contract and SELLER is not in default, then BUYER may seek whatever remedy may be available under equity or law to recover the property or damages resulting from SELLER's default. Should legal action be taken by either party to enforce any provision of this Contract, it is agreed by the parties hereto, that the non-prevailing party shall pay all costs (including without limitation, attorneys' fees and court costs) incurred by the prevailing party and any real estate broker made a party to such action, who has not significantly contributed to the default.

**12. PROPERTY CONDITION REPORT:**
A written Residential Property Condition Report is required by statute (CT Gen. Stat. 20-327b et seq.) and if Seller has not provided BUYER with the required report, SELLER will credit BUYER with the sum of $500 at closing.

Buyer's Initials _____                    Seller's Initials _____

© 2013 Copyright The Greater Waterbury Board of REALTORS®, Inc. All rights reserved.
RECONTRACT (Rev. 12/13)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com



# REAL ESTATE CONTRACT



**13. BROKER:**
Both BUYER and SELLER agree that the following agent(s) is/are the sole broker(s) and agent(s) who negotiated the sale of the Property.

LISTING AGENCY: Keller Williams
SELLING AGENCY: _____

ADDRESS: _____
ADDRESS: _____

LISTING AGENT: Ed Sutton
SELLING AGENT: _____

☐ Dual Agent - If the Listing Agent is acting as a Dual Agent, a Dual Agency Consent Agreement shall be attached.

**14. USE OF ELECTRONIC RECORD:**
The parties agree that they may use an electronic record, including fax or e-mail to make and keep this agreement. Either party has the right to withdraw consent to have a record of this Contract provided to them or made available to them in electronic form, but that does not permit that party to withdraw consent to the Contract itself once it has been signed. A party's agreement to use an electronic record applies only to this particular real estate transaction and not to all real estate transactions.

For access to and retention of faxed records, there are no special hardware or software requirements beyond access to a fax machine or fax modem and accompanying software connected to a personal or laptop computer. For access to and retention of e-mail records, you will need a personal or laptop computer, Internet account and e-mail software.

SELLER wishes to use: (check one): ☐ Fax    BUYER wishes to use (check one): ☐ Fax
                                     ☐ E-Mail                                   ☑ E-Mail

The BUYER and SELLER agree to provide their fax phone number and/or e-mail address to the Broker representing them in this transaction.

**15. ADDENDA:**

The following addenda are attached to and made a part of this Agreement:

☐ Residential Property Condition Disclosure Report    ☐ Inspection Contingency Addendum
☐ Lead-Based Paint Disclosure for Sales               ☐ Dual Agency Consent Agreement
☐ "For Your Protection - Get a Home Inspection"       ☐ Real Estate Agency Disclosure Notice
☐ Multi-Family Addendum                               ☐ Common Interest Community Addendum
☐ Hubbard Clause Addendum                             ☐ Property Inclusion/Exclusion Addendum
☐ Other _____

**16. OTHER CONDITIONS, IF ANY:**
Buyer to complete satisfactory due diligence by 4/30/16
_____
_____
_____
_____

**17. BINDING AGREEMENT:**
This contract and all addenda attached hereto contain the entire Agreement between BUYER and SELLER. It may not be changed or altered unless such change is in writing signed by both BUYER and SELLER. NOTICE: Rights under this Agreement are not automatic and may have to be resolved in a court of law. This Agreement may not be assigned by either party without the written consent of the other. It shall be binding upon the heirs, executors, administrators and successors of the parties hereto.

| Buyer Signature | 4/9/16 Date | Seller Signature | Date |
|---|---|---|---|
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |

© 2013 Copyright The Greater Waterbury Board of REALTORS®, Inc. All rights reserved.
RECONTRACT (Rev. 12/13)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

1/16/2016                                                     Matrix

· ·

**Agent - 1 Page**

**35 Joshua Hill Rd, Woodbury, CT 06798-3518**          **County:** Litchfield              **MLS:** G10077261
**Status:**        Active                           **PropType:**   Commercial/Investment ~ Business      **Price:**   $500,000
**Turnpike:**                                       **Neighborhood:** Woodbury (137)                       **Price Desc:**

| | | | |
|---|---|---|---|
| **Stories:** 2 | **Tenants:** 1 | **% Leased:** | **ADOM:** 134 |
| **PAR ID:** 932986 | | | **Lease Purch** No |
| **Occupied/Occupancy:** Yes | | | **Year Built:** 1900 |
| **Zoning Code/Source:** PI / | | | **Elev Cert:** |
| **Zoning Description:** PI | | | **Flood Zone:** No |
| **Yrs Remaining on Lease:** 0 | | | **Lease Opt Yrs:** |
| **Acres/Source:** 9.87 / Public Records | | | **Lot Sqft** 429,937 |
| **HOA/Fee:** | **Oth Fee/Desc:** | | **Horse Prop:** No |
| **REO:** No | **Pot Short Sale:** No | | **Photo Req/Opt:** No |
| **Waterfront:** No | | | |
| **Contingency Exclusions:** No | | | |
| **# Bldgs:** 5 | **Expandable:** No | | **Divisible:** Unknown |
| **Equip Incl:** | **# Docks:** 0 | | **Drive-In Doors:** 0 |
| **Landlord Responsible:** None | | | |
| **Tenant Responsible:** None | | | |
| **Taxes:** $7,839 | **Mill Rate:** 26.07 | | **Total Value:** $300,710 |
| **Year:** 2015 | **Land:** | | **LP/Total Value:** 1.66 |
| **Building:** | | | **Tax Phase In:** No |
| **Other:** | **Environment:** Unknown | | **Other Taxes:** No |
| **Original LP:** $500,000 | | | **Prior LP:** |

───────────── Square Footage & Financial Information ─────────────

**Total Sqft:** 1,500              **Includes Below Grade:**           **Source:**  Owner
**Minimum Space:** 0               **Available Building:**             **Building:**
**Depth Approximate:**            **Frontage Approximate:** 50         **Price/SF:**   $333.33

**Gross Annual Expenses:**         **Gross Annual Income:**            **Net Operating Income:**   0

───────────── Agent & Office Information ─────────────

Keller Williams Realty (KWGH01)          **O/Fax:** 860-313-0302       **O/Ph:**       860-313-0700
Edward M. Sutton JR (SUTTONE)            **Direct:** 860-313-0700      **Preferred:**   860-569-1114
          **Email:**  edsutton@kw.com
**Show Instructions:**    USE SHOW ASSIST LINK                        **ByAgtComp:** 2.5 %
**List Type/Desc:**  Exclusive Right to Sell/Lease Listing Agreement/Full Service   **List Date:**  09/04/2015
**Lockbox Desc/Type:**  None/N/A                                      **Sign:**   No

**Remarks:**   Currently operates as lumber mill and specialized wood company, 2 Separate houses and 3 barns
**Agent:**     SUBJECT TO BANKRUPTCY COURT APPROVAL; SELLER IS A TRUSTEE ESTATE WITH NO KNOWLEDGE OF THE LAND OR POSSIBLE USES. BUYER
               ADIVSED TO COMPLETE DUE DILLIGENCE
**Directions:** RT6 to Perk to Joshua Hill

──────────────────── Units ────────────────────

──────────── Additional Information ────────────

**Commercial Category:**  Business Opportunity, Industrial, Land, Retail
**Documents Available:**  No
**Flooring:**         Wood                              **# of Restrooms:**       1
**Garage/Desc:**      /Lot                              **Parking Spaces:**       10       **Parking 100 sqft:**
**Handicap Features:** No

──────────────────── Utilities ────────────────────

                     Window Unit              **Electrical/Amperage:** /
                     Other                    **Tank Desc:** Non Applicable          **Undrgrd Fuel Tank:** Unknown
                     Private Well             **Est Annl Fuel Cost:**
**Sewage System:**   Septic                   **Est Annl Sewer Fee:**                **Sewer Use Fee:**

**Agent Full 1-Page**                Prepared By: Timothy Drakeley            Saturday, January 16, 2016    2:59 PM

Copyright 2016 CT MLS, Inc. All Rights Reserved. The information contained in these MLS listings has been assembled from various sources of varying degrees of reliability. Any information that is critical to a buying decision should be independently verified.



Seller, Kara S. Rescia, Chapter 7 Trustee warrants that she is the Bankruptcy Trustee in the case of Harold Cole Case No. 10-50091, pursuant to 11 U.S.C. Section 541 she is the owner of all right title and interest in the subject property and agrees to transfer said interest by Trustee's Deed in accordance with the Rules for the United States Bankruptcy Court for the District of Connecticut.

The property is being sold in "As Is" "Where Is" condition. Trustee makes no representations or warranties express or implied or of any nature about the condition of the property. The Trustee will not make any repairs to the property, there are no proration for rent or security deposit, and Buyer to pay conveyance taxes. Both Seller and Broker are released from any liability.

Sale is subject to bankruptcy court approval. Trustee will file a motion to sell the property with the United States Bankruptcy Court as soon as the Buyer's contingencies are satisfied. However, she has no control over the docketing of the motion or the entry of the order.

Date: May 5, 2016

Kara S. Rescia
Chapter 7 Trustee
Case No. 10-50091
Bankruptcy Estate of Harold Cole.

BUYER
BTJ, Inc.

_____

By
Its
Duly authorized