# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| HAROLD E. COLE,<br>*Appellant*,<br><br>v.<br><br>KARA RESCIA, TRUSTEE,<br>*Appellee*. | Case No. 3:21-cv-01130-MPS |

## RULING ON APPEAL FROM BANKRUPTCY COURT ORDERS

Harold E. Cole ("Cole"), a Chapter 7 debtor, appeals from the orders of the United States Bankruptcy Court for the District of Connecticut denying his Third Amended Motion to Remove Chapter 7 Bankruptcy Trustee ("Motion to Remove") and his Motion for Leave to File Amended Civil Action Against Chapter 7 Bankruptcy Trustee ("Motion for Leave"). The Bankruptcy Court denied the motions after finding that (1) Cole lacked standing because he had failed to establish there was a reasonable possibility that a surplus would remain after creditors' claims were satisfied, and (2) Cole's motions failed on the merits. For the reasons set forth below, I affirm the Bankruptcy Court's orders.

## I.   BACKGROUND

The underlying bankruptcy case commenced on January 15, 2010 when Cole filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Bankr. D.E. 1.[1] Cole

---

[1] Citations to the Bankruptcy Court's docket in *In re Harold E. Cole*, Bankruptcy Case No. 10-50091 (JAM) begin with the prefix "Bankr. D.E." Citations to this Court's docket, *In re Cole*, Case No. 21-cv-01130 (D. Conn.), begin with the prefix "D.E."

filed his first Chapter 11 reorganization plan on February 22, 2011, Bankr. D.E. 150, and his Fifth Amended Chapter 11 Plan was confirmed by the Bankruptcy Court two and a half years later on October 2, 2013.  Bankr. D.E. 379.  The Plan set forth that Cole "plan[ned] to make payments to creditors from (i) the sale, refinance or development of the Bethlehem property and/or the sale, refinance or development of those properties and from cash flow of the business for which Debtor receives bona fide fair market value offers (ii) the operations of Debtor's antique business (iii) the operations of Debtor's woodworking business (iv) any post-confirmation monetary awards Debtor may realize from the Property Litigation and (v) the re-development of any real property parcels."  Bankr. D.E. 379-1 at 9.  However, Cole failed to make a single payment to his creditors in accordance with the Plan.  *See* D.E. 19 at 6:13-24; 7:17-25.  Secured creditors seeking enforcement of a state court judgment against Cole moved for an order dismissing the case or converting it to a Chapter 7 case on November 18, 2014.  *See* Bankr. D.E. 469 at 1-4.  By an order of the Bankruptcy Court, the case was converted to a Chapter 7 bankruptcy proceeding on February 5, 2015, and Appellee Kara Rescia ("the Trustee") was appointed as Chapter 7 Trustee of the estate.  Bankr. D.E. 494.

### A.  The Estate[2]

"The assets of [Cole's] estate include a voluminous collection of antiques," Bankr. D.E. 1224 at 2, several parcels of undeveloped land, as well as some improved real property located in Woodbury, Connecticut, mixed commercial and residential property located in Wiscasset, Maine, and assorted personal property belonging to Cole.  *See* Bankr. D.E. 518, 535, 879.  Some of these assets were liquidated to pay creditors over the course of the next several years.[3]  In

---

[2] I will discuss the estate only in general terms, as neither party cites evidence indicating the nature and number of claims against the estate, the total value of those claims, or the total value of the estate's assets.

[3] The Trustee states in her brief in opposition that she was able to sell only the improved real property in Woodbury, and Cole does not contest this.  *See* D.E. 27 at 16.

particular, the Trustee, over objections from Cole, *see* Bankr. D.E. 664, sold the improved real property located in Woodbury on October 25, 2016 after the Bankruptcy Court entered an order approving the sale.  *See* Bankr. D.E. 699.  Over the objections of Cole and with the approval of the Bankruptcy Court, a portion of the antiques assets were sold at auction on November 12 and 13, 2016.  *See* Bankr. D.E. 724.  A "majority" of Cole's remaining personal property and antiques were sold—again over objections from Cole and with court approval—at auction on October 25 and 26, 2019.  *See* Bankr. D.E. 1007.  A third auction of the estate's interest in some of the remaining antiques assets and Cole's personal property was held on February 13, 2021 after some of these assets were "released back to [Cole] and his agents," Bankr. D.E. 1194 at 3, following negotiations between Cole, the Trustee, and the auctioneer hired by the Trustee over whether certain of these items belonged to the bankruptcy estate.  *Id.*[4]

### B.  Cole's Motions

Cole filed the Third Amended Motion to Remove Chapter Seven Bankruptcy Trustee ("Motion to Remove") on January 21, 2021.  Bankr. D.E. 1186.  Cole also filed a Memorandum of Law in Opposition to the United States Trustee's Response and the Chapter 7 Trustee's Objection to Debtor's Second Amended Motion to Remove Chapter 7 Bankruptcy Trustee on January 29, 2021 ("Memorandum of Law") in conjunction with his Second and Third Amended Motions to Remove the Trustee to address the issue of Chapter 7 debtor standing.  *See* Bankr. D.E. 1187 at 1.  The U.S. Trustee filed a response to the Third Motion to Remove and Memorandum of Law on February 2, 2021, Bankr. D.E. 1188, and the Trustee filed an objection to the Third Motion to Remove and a response to the Memorandum of Law on February 10,

---

[4] A subset of the antiques assets controlled by another party were also sold for the benefit of the estate under a settlement agreement.  *See* Bankr. D.E. 578; 594.

2021, Bankr. D.E. 1190.  Cole filed a Motion for Leave to File Amended Civil Action on April 5, 2021, Bankr. D.E. 1216, to which he attached a draft state court complaint naming the Trustee as defendant, Bankr. D.E. 1216-1.  The Trustee filed an objection to Cole's Motion for Leave on July 16, 2021.  Bankr. D.E. 1237.

A hearing on the Motion to Remove and the Motion for Leave was held by the Bankruptcy Court for August 10, 2021.  Prior to the hearing, in an order granting an application for compensation and reimbursement, the Bankruptcy Court held that "[t]he arguments in the Memorandum of Law attempting to establish [Cole's] standing are without merit," Bankr. D.E. 1224 at 7, after finding that "[Cole] has not made a showing that there is at least a reasonable possibility that this could be a surplus case."  *Id.* at 8.  "Without making such a showing," the Bankruptcy Court stated, "[Cole] has not demonstrated that he has standing."  *Id.*

### C.  The August 10, 2021 Hearing

During the August 10, 2021 hearing, the Bankruptcy Court reminded Cole of his burden to demonstrate standing, stating that "as we've discussed in prior hearings, the case law is very clear that in a Chapter 7 case, a debtor doesn't have standing to raise issues unless there is going to be some surplus from the estate, and we've had this discussion on several occasions."  D.E. 17 at 11:5-9.  In response, Cole's attorney pointed the Court to Cole's Memorandum of Law, D.E. 17 at 13:9-14:9.  He also proposed witness testimony to establish standing, *see* D.E. 17 at 13:14-14:9, to which the Court responded that counsel was "presuming [Cole had] standing because [Cole wants] to have an evidentiary hearing.  If [Cole doesn't] have standing, [he doesn't] have a right to a hearing, evidentiary or otherwise.  And so, you're putting the cart before the horse."  D.E. 17 at 14:10-14.  Cole's attorney offered no additional argument on the issue of standing and proceeded to argue the merits of Cole's Motion to Remove—namely, that "during the course of

all of these [asset] sales, the sales that occurred before I was involved, and subsequent to my

involvement in the case…Trustee Rescia sold items that were post-Chapter 7 items.  Including,

Your Honor, an item in one sale that was purchased by Mr. Cole in the sale and was later taken

back and sold again by the auctioneers under the direction and supervision of [the Trustee]."

D.E. 17 at 14:25-15:7.

In response, the Bankruptcy Court pressed Cole's attorney to "[t]ell me the exact item,

Attorney Rogan, because we went through this.  We had lists of items.  We had dates by which

[Cole's daughter acting on Cole's behalf] had to submit information to the trustee that said that

this was not property of the estate."  D.E. 17 at 15:8-12.  This process, the Bankruptcy Court

explained, permitted Cole to present objections to the sale of specific assets by "produc[ing]

evidence to establish" ownership, submitting that evidence to the Trustee, "and if [the evidence]

didn't establish ownership, then those assets were deemed to be assets of the estate and then

were able to be sold."  D.E. 17 at 15:1-10.  As a result of this process, the Bankruptcy Court

noted, "plenty of items were not sold when [Cole's daughter] established through evidence,

through documents, that assets were not property of the estate."  D.E. 17 at 15:12-15; *see id.* at

17:15-24.  The Bankruptcy Court also stated that Cole was making an impermissible collateral

attack on an order authorizing the sale of assets that he had failed to appeal:

> So you can make whatever representations and claims you want to make, but…this isn't a
> collateral attack.  We're not going to allow a collateral attack or an appeal of existing
> orders that you didn't appeal.  That's essentially what you're trying to do.  You're trying
> to use the process of removing a trustee to undo things that that trustee was authorized to
> do under the existing bankruptcy statutes and court orders, because at the end of the day
> you don't like the results.  I understand that.  Sometimes the results, people aren't happy
> with the results.  But you don't get to…attack those results in any other way than
> appealing those orders.
>
> D.E. 17 at 16:14-17:1.

Cole's attorney then turned to the second auction in the case, again arguing that "there were items taken that were not properly part of the Chapter 7 [b]ankruptcy estate," D.E. 17 at 18:21-22, for which Cole's daughter "on behalf of the debtor Harold Cole, as power of attorney, [had previously] filed…a limited objection to the sale," D.E. 17 at 21:11-13.  Counsel's request to swear in and hear testimony from Cole's daughter on the allegedly impermissible sale of these assets, D.E. 17 at 18:9-11, was denied, *id.* at 12-17, and the Bankruptcy Court ultimately rejected this argument as an impermissible collateral attack as well:

> So that was what the debtor filed on August 22nd, 2019.  Then there was a hearing held on August 27, 2019, where all of these issues were discussed, and on August 28, 2019, there was an order entered, [Bankr. D.E.] 986, granting the [T]rustee's right to sell all of these assets…This was all subsequent to the objection that was interposed by [Cole's daughter], Attorney Rogan, and so the objection was overruled to the extent that this order allows the sale of those assets.  There was no appeal taken of that order.  So therefore, you are attempting to collaterally attack that order.  There is no -- there is then a second order that enters after that, at which we had another hearing, and the trustee was allowed to continue the sale of the assets.

D.E. 17 at 23:23-24:16.

Cole's attorney then argued that the Trustee had sold non-estate property by referencing items from another sale—specifically "lots 831, 102, 103, and 1025," D.E. 17 at 27:6-7, which, he contended, had been purchased by Cole and another party and then re-sold by the Trustee, *id.* at 26:14-27:10, and which, he further argued, the Trustee was not authorized to sell, *id.* at 27:19-24.  The Court again rejected these arguments as impermissible collateral attacks on its prior orders:

> So you're seeking to attack a sale that occurred in 2016 that was approved by this Court...And now you're [also] seeking to…attack two other sales that were approved by this Court in 2019 and 2020.  So explain to me again, Attorney Rogan, how that's not a collateral attack on existing orders.

D.E. 17 at 27:11-18.

The Bankruptcy Court then asked the Trustee and other parties present at the hearing if they "had any information that [they'd] obtained from [Cole's daughter] or [Cole's attorney] that establishes that there are assets that [the Trustee] sold that belong to some other party than the bankruptcy estate of Harold Cole?"  D.E. 34 at 14-17.  The Trustee replied that she had not, D.E. 17 at 34:18, as did counsel for the Trustee, D.E. 17 at 36:1-7, and the two other parties questioned by the Court, D.E. 17 at 34:20-35:10; D.E. 17 at 35:14-24.

After hearing argument from the Trustee, counsel for the Trustee, counsel for the U.S. Trustee's Office, and others, *see* D.E. 17 at 27- 36, the Bankruptcy Court issued the following ruling:

> [Cole's counsel], you've made your arguments that the trustee has acted outside of her authority, both under the bankruptcy code, the orders of this Court, and the Chapter 7 Trustee Handbook, which as we've read what its provisions state -- and you've also stated that the trustee has a conflict of interest because the estate has a claim against her. However, as correctly pointed out by Trustee Rescia, [Cole's daughter], on behalf of her father, is not the estate.  She is the equity of the estate if there is any equity.  The estate is the creditors of the estate, and there's no information or any documentary evidence submitted to this Court that the estate somehow has a cause of action against Trustee Rescia.  Aside from the issues with regard to the standing, which I again believe your client has not established that [he] has standing to make the arguments, nonetheless, the Court has allowed it now for years in this case, and now a Chapter 7 case.  Those arguments all fail, they are without merit, and your motion is denied.

D.E. 17 at 37:1-20.[5]

Turning to Cole's Motion for Leave, the Bankruptcy Court found that "based upon [its] ruling[] that [Cole's] amended motion to remove the trustee is denied…the motion for leave to file an amended civil action against the trustee[] is also denied."  D.E. 17 at 38:13-17.

---

[5] The Court reaffirmed its ruling on Cole's Motion to Remove later in the hearing, explaining it had denied the motion "based upon the facts and circumstances of this case, the orders of this Court, the history of this proceeding, the docket and record of this case, and the fact that [Cole's] arguments did not meet [his] burden to grant the relief requested in the motion to remove."  D.E. 17 at 50:16-21.

Following the hearing, the Court entered orders denying both motions "for the reasons stated on the record during the [August 10th] hearing."  Bankr. D.E. 1246; 1247.  Cole timely filed notices of appeal of those orders on August 23, 2021.  Bankr. D.E. 1252; 1253.

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by a bankruptcy court.  28 U.S.C. § 158(a)(1).  On appeal, a district court reviews the bankruptcy court's legal determinations *de novo* and its factual findings for clear error.  *In re Robert Plan. Corp.*, 777 F.3d 594, 596 (2d Cir. 2015).  "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *New York Progress and Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (citation and internal quotations marks omitted).

"[A] bankruptcy court's denial of a motion to remove the Trustee [is reviewed] for abuse of discretion."  *In re Ampal-Am. Israel Corp.*, 691 F. App'x 12, 16 (2d Cir. 2017).  The same standard applies to a bankruptcy court's denial of a motion for leave to sue a trustee.  *See, e.g.*, *In re Beck Indus., Inc.*, 725 F.2d 880, 889 (2d Cir. 1984).  "A bankruptcy court abuses its discretion when its ruling '(1) rests on an error of law ... or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions.'"  *In re Ampal-Am. Israel Corp.*, 691 F. App'x 12, 16 (2d Cir. 2017) (*quoting In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007)).

## III.     DISCUSSION

The Bankruptcy Court denied both of Cole's motions on the record at the August 10, 2021 hearing after concluding that Cole had "not established that [he] has standing," that he was not entitled to an evidentiary hearing on the issue of standing, and that his claims against the

Trustee were without merit.  *See* D.E. 17 at 37:1-20; 38:13-17; 49:17-51:8.  On appeal, Cole

raises the same claims about actions by the Trustee in administering the estate that he raised in

the Bankruptcy Court, *see* D.E. 26 at 23-43, and further contends that he has standing to bring

those claims because "[t]here can be no question[] that this was a surplus estate."  D.E. 26 at 16.

Cole also argues that the Bankruptcy Court erred in declining to hold an evidentiary hearing on

the issue of standing, as the evidence "would…show that Debtor did have standing and the

Trustee's failure to recognize it caused severe harm and damages to the Debtor as well as the

other interested parties including the creditors."  D.E. 26 at 13-14.  In response, the Trustee

contends that Cole lacks standing to pursue either motion or this appeal because "[t]he

bankruptcy estate does not have a surplus of funds available after all creditors are paid in full.

Therefore, [Cole] does not have a pecuniary interest in the bankruptcy estate and has no standing

to intervene in its administration nor appeal orders concerning its administration."  D.E. 27 at 12.

The Trustee also contends that "it was within the Bankruptcy Court's discretion to [decline to]

hold an evidentiary hearing before denying [Cole's] motion[s]," D.E. 27 at 31, and that Cole

failed to meet his burden on the merits for either motion, *see* D.E. 27 at 33-34 (discussing Cole's

burden regarding his Motion to Remove); 38-39 (discussing Cole's burden regarding his Motion

for Leave).  I address each of these arguments below.

### A.  Standing

"Because standing is jurisdictional under Article III of the United States Constitution… it

is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have

their claims litigated in federal court."  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114,

117 (2d Cir. 1991) (citation omitted).  "The burden to establish standing remains with the party

claiming that standing exists."  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.

1995).

Additional requirements beyond those imposed by Article III apply in bankruptcy cases. "The current Bankruptcy Code prescribes no limits on standing beyond those implicit in Article III of the United States Constitution." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (citing *In re Gucci*, 126 F.3d 380, 388 (2d Cir.1997)). "Nevertheless, for practical reasons [the Second Circuit] and others have 'adopted the general rule, loosely modeled on the former Bankruptcy Act, that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be 'a person aggrieved'—a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court.'" *Id.* at 88–89 (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir.1991)). This test "is stricter than Article III's 'injury in fact' test for standing" due to "a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997) (internal citations and quotations marks omitted).

"It is well-established that a Chapter 7 debtor…has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir.2000). "To establish standing, the Chapter 7 debtor has the burden of showing that there is at least a reasonable possibility of a surplus." *In re Licata*, 659 F. App'x 704, 706 (2d Cir. 2016) (citing *In re 60 East 80th St. Equities, Inc.*, 218 F.3d 109, 115–16 (2d Cir. 2000)). "A bankruptcy court's finding that a reasonable possibility of a surplus does not exist is a finding of fact reviewed for clear error." *Id.*; *see also In re 60 E. 80th Street Equities, Inc.*, 218 F.3d at 116 ("Both the Bankruptcy Court and the District Court in this case found that

10

there was 'no evidence that a surplus is a reasonable possibility in these proceedings,'.... These findings of fact are not clearly erroneous.").

The sole pieces of evidence cited by Cole to demonstrate a reasonable possibility of a surplus in his opening brief are Bankr. D.E. 1136 and Bankr. D.E. 1147.  *See* D.E. 26 at 17.[6] According to Cole, Bankr. D.E. 1136, a document titled "Assets [o]f the Bankruptcy Estate of Harold Cole As of September 2015," Bankr. D.E. 1136 at 1, establishes that "the Trustee's appraisals alone showed assets totaling $1,353,060," which, Cole argues, exceeded the estate's "$236,506.21 in claims," a figure Cole draws from Bankr. D.E. 1147.  D.E. 26 at 16-17.  In addition, Cole cites in his reply two other pieces of evidence: "the appraisals of Bruce Gamage and Julia's," which, according to Cole, "clearly show that there was a 'reasonable possibility' that this could be a surplus case and as such [he] had and has standing."  D.E. 30 at 14.[7]  Cole points to nothing in the record showing that he proffered any of this evidence in support of his motions before the Bankruptcy Court, either in a brief or during the hearing on his motions.  The Court will nevertheless address each of these items below.

The document titled "Assets [o]f the Bankruptcy Estate of Harold Cole As of September 2015" sets forth a listing of real properties and dollar figures under the heading "Real Estate Per Listing Contracts…," a dollar figure next to the words, "Antiques Inventory," and a line indicating "subtotal Estate Assets $1,353,060.00."  Bankr. D.E. 1136 at 1.  There are no other figures listed.  Cole dubs this document "the Trustee's appraisals," D.E. 26 at 16-17, but

---

[6] Cole also asserts, without citation, that the "Trustee's inventory"—even excluding the "the value of the Debtor's business" and "his personal collection" of antiques—"was over five times the claims amount."  D.E. 26 at 16.  As he points to no evidence to support this assertion, I will not address it.

[7] Generally, "[a] reply memorandum must be strictly confined to a discussion of matters raised by, and must contain references to the pages of, the memorandum to which it replies."  D. Conn. Civ. R. 7(d).  Here, after seeking leave of this Court, the Trustee filed a sur-reply for the express purpose of addressing new arguments raised by Cole.  *See* D.E. 31; D.E. 33.  The Court will therefore consider Cole's new arguments to the extent that they bear on the Court's analysis.

provides no additional information or context about the document or the figures contained therein. *See id.* at 16. According to the Trustee, however, "[t]he figures in [Bankr. D.E.] 1136 are not appraisal estimates, as labeled in [Cole]'s Brief, but initial gross listing prices from 2015 for certain real estate of [Cole] and a portion of the assets of the bankruptcy estate valued by the Bankruptcy Court-appointed auctioneer, The Hamilton Group LLC." D.E. 27 at 16. These figures "have no relevance to the question of standing[,]" the Trustee argues, because they "do not contemplate the current fair market value of the assets of the bankruptcy estate, nor the various secured claims against the real estate and accrued and delinquent real estate taxes." *Id.*

I agree with the Trustee that the document that appears at Bankr. D.E. 1136 at 1 is insufficient to demonstrate the value of estate assets. Cole's own "assertions regarding the [assets'] 'true' value are conclusory and speculative," *In re Friedberg*, 634 F. App'x 333, 335 (2d Cir. 2016), and he offers no information about the author or authenticity of the document, the circumstances under which it was prepared—including whether the author was actually charged with preparing an appraisal—the qualifications of the author to prepare any such appraisal, or the methodologies used to arrive at the figures set forth in the document. *See* Fed. R. Evid. 702 (setting forth requirements for opinion testimony, including that the witness be shown to be an expert qualified "by knowledge, skill, experience, training, or education."); *King v. Wang*, 2021 WL 5237195, at *14 (S.D.N.Y. Nov. 9, 2021) (excluding art appraiser's opinions under Rule 702). The document is also hearsay to the extent it is offered to show the value of the properties it lists; and while it is possible Cole could offer the document in a form showing that it would not be inadmissible hearsay (such as with a showing that it satisfies the hearsay exception for business records, Fed. R. Evid. 803(6), or in the form of an affidavit, *cf.* Fed R. Civ. P. 56(c)), he has not attempted to do so. Finally, if anything, the document supports the Trustee's

interpretation.  As noted, immediately above the listing of real estate and corresponding dollar figures is the subheading "Real Estate Per Listing Contracts," suggesting that the figures are listing prices rather than estimates of fair market value, and attached to the document are real estate listing contracts reflecting prices that match the figures in the document.  Bankr. D.E. 1136 at 2-13.  As noted above, only one of the real properties actually sold – apparently for half the listing price shown on this document.  *Compare* Bankr. D.E. 1136 at 1 (listing 35 Joshua Hill Road for $500,000) *with* Bankr. D.E. 699 at 1-2 (showing sale of 35 Joshua Hill Road generated proceeds of $250,000).[8]

The second document on which Cole relies is Bankr. D.E. 1147, which is titled "ANALYSIS OF CLAIMS and FUNDS Of the Bankruptcy Estate of Harold Cole," Bankr. D.E. 1147 at 1.  Cole cites this document as evidence of the value of the claims against the estate, D.E. 26 at 17.  In response, the Trustee argues that "[t]he figures in [Bankr. D.E.] 1147 were prepared by [Cole], not an accountant for the bankruptcy estate, and are grossly inaccurate." D.E.  27 at 16-17.  Furthermore, the Trustee argues, the information in the "Analysis" is incomplete—"[f]or example, those figures do not reflect the accumulated Chapter 7 and Chapter 11 administrative expenses, nor several disbursements authorized by the Bankruptcy Court related to various asset sales, including but not limited to secured creditor claims, sales tax, real estate tax, and real estate broker and auctioneer commissions and expenses." *Id.* at 17.  Cole

---

[8] In his reply, Cole argues that the Trustee's claim that a "fair market value was not contemplated [in Bankr. D.E. 1136] is false," because "a market or sales approach to value was used."  D.E. 30 at 10.  For this assertion, Cole cites page 13 of Bankr. D.E. 1151.  Pages 13 and 14 of Bankr. D.E. 1151 appear to be excerpts of an appraisal report prepared "to provide valuation information to the Chapter 7 Trustee in her management of the case regarding the assets of Harold E. Cole Antiques & Art," Bankr. D.E. 1151 at 14.  These two pages bear no apparent relation to Bankr. D.E. 1136.  They also contain no information about real estate valuations—the information in both pages is directed exclusively at the antiques assets, and neither page even includes a valuation of those assets.  *See* Bankr. D.E. 1151 at 13-14.  Furthermore, there is no indication in either Bankr. D.E. 1151 or Bankr. D.E. 1136 of where these pages were excerpted from, who prepared them, how the pages relate to the figures in Bankr. D.E. 1136, or any other necessary information.

makes no response to these arguments in his reply brief, and there is no indication in the document about where these figures were derived from.  Further, even a cursory examination of the document shows that it includes no listing of secured claims, and yet the record in the Bankruptcy Court makes multiple references to secured creditors.  *See, e.g.*, Bankr. D.E. 150 at 2, 379-1 at 2, 469 at 1.

Finally, Cole cites what he calls "appraisals" by Julia's and Gamage to show there was a reasonable likelihood of a surplus based on the appraisal value of the antique assets.  Cole contends that "Julia's, one of the top galleries in this industry, had a policy of advancing 50% of their low estimate to their consignors."  D.E. 30 at 20.  Because, according to Cole, Julia's was "willing to advance $200,000 to the [Trustee] prior to the sale and the balance needed to pay off the bankruptcy estate after the sale[,]" and because Cole "had a zero commission agreement with Julia's," "[i]f only the $200,000 advance was achieved[,] the bankruptcy estate would have netted over $65,000 more than [the] seller selected by the [Trustee] netted."  D.E. 30 at 21. [9]

The document held out by Cole as an "appraisal" of antiques by James D. Julia, Inc. is a one-page, unsigned letter agreement stating that James D. Julia, Inc. and an entity known as Harold E. Cole and Bettina Krainin Antiques, LLC, which is referred to in the document as "the Client," "have reached a verbal agreement to advance $200,000 to the client," to be "repaid from the proceeds from the sale of consignments made by the Client to upcoming auctions."  Bankr. D.E. 1154 at 3.  The document says nothing regarding an appraisal of Cole's antiques assets and does not mention any "policy of advancing 50%" of a "low estimate."

---

[9] The Trustee does not directly address the documents Cole associates with Julia's and Gamage in her sur-reply; instead, she broadly asserts that "[Cole] has alleged no fact in the Reply Brief which would imbue him with standing."  D.E. 33 at 8.

The Gamage document—which is, according to Cole, "a proposal from Bruce Gamage to liquidate [Cole's] antiques inventory" "provided [to] [the Trustee]" "[i]n May of 2015," D.E. 30 at 19—is similarly unilluminating.  This document, Cole suggests, establishes that the Trustee's selection of Gamage to auction the antiques "would have resulted in a net of $480,000-$640,000 to the bankruptcy estate," based on Gamage's proposal "to sell them for $600,000-800,000 at a flat rate cost of 20%." D.E. 30 at 20. The Gamage document—a one-page letter signed by Bruce Gamage of Bruce Gamage, Jr. Antiques—"estimate[s] that the value of this collection would fall between $600,000 - $800,000 and possibly more," and indicates a commission of 20%.  Bankr. D.E. 1151 at 2.  This document is inadequate for the same reasons the list of real estate in Bankr. D.E. No. 1136 is.  "First, the [appraisals are] inadmissible—[they]…consist[] of hearsay…and express[] an opinion unsupported by any indication of methodology, the qualifications of the author, or any other indicia of reliability." *Licata v. Coan*, 2015 WL 9699304, at *6 (D. Conn. Sept. 22, 2015), *aff'd sub nom. In re Licata*, 659 F. App'x 704 (2d Cir. 2016).  As in *Licata*, Cole offers the statements in the Gamage document "to prove the truth of the matter asserted by [the author], i.e., [his] valuation estimates.  They are therefore inadmissible hearsay.  *See* Fed.R.Evid. 801, 802.  Finally, the opinion on valuation does not meet the requirements of Fed.R.Evid. 702: the letter does not set forth the author's qualifications, and provides no information allowing the reader to ascertain whether the opinion expressed is the product of reliable principles and methods.  In short, the letter did not constitute admissible evidence of the value" of Cole's antiques assets. *Id.* [10]

---

[10] I also note that the letter – apparently sent by Gamage to solicit auction business – sets forth a very broad, even vague, valuation range: "$600,000-$800,000 and possibly more."  I further note that, according to the Trustee, Cole never amended his Schedule B, which listed the value of the antiques assets at $300,750, D.E. 52 at 1, to reflect Gamage's much higher estimate of the value of those assets.  D.E. 27 at 15.

Aside from a handful of unverified and inadmissible pieces of evidence, none of which Cole apparently brought to the Bankruptcy Court's attention during the arguments about standing, Cole points this Court to no evidence that a surplus was a reasonable possibility in this case. Because Cole offered no credible evidence to carry his burden on appeal, and because he fails to point to anything in the record showing that he presented evidence of a reasonable possibility of a surplus before the Bankruptcy Court, I conclude that the Bankruptcy Court's finding that he lacked standing was not clearly erroneous.

### B. Denial of Evidentiary Hearing

Cole also asserts that the Bankruptcy Court erred in concluding he was not entitled to an evidentiary hearing on the issue of standing. "By failing to hold an evidentiary hearing," Cole argues, "the Court was in essence preventing the Debtor from putting forward the evidence necessary to prove standing thus Debtor is being deprived of the rights standing afforded him and to seek relief as allowed by law." D.E. 26 at 17. This failure, he contends, "was an abuse of discretion." D.E. 30 at 22.

Generally, a trial court "may, but is not required to, hold an evidentiary hearing on the standing issue. 'As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.'" *Access 4 All, Inc. v. G & T Consulting Co., LLC*, 2008 WL 851918, at *6 (S.D.N.Y. Mar. 28, 2008) (quoting *Gibbs v. Buck*, 307 U.S. 66, 71-72(1939)). The same is true in the bankruptcy context. "[A] bankruptcy court is not required to hold a formal evidentiary hearing in all cases; rather, the court must grant only 'such opportunity for a hearing as is appropriate in the particular circumstances.'" *Drake v. United States*, 2014 WL 6883104, at *4 (N.D.N.Y. Dec. 4, 2014), *aff'd sub nom. Drake v. U.S. ex rel. I.R.S.*, 622 F. App'x 42 (2d Cir. 2015) (quoting *Turney v. F.D.I.C.*, 18 F.3d 865, 859 (10th Cir.1994)). A

bankruptcy court's refusal to hold an evidentiary hearing is reviewed for abuse of discretion. *See, e.g.*, *In re Markus*, 620 B.R. 31, 39 (S.D.N.Y. Sept. 30, 2020) (reviewing bankruptcy court's decision not to hold evidentiary hearing on turnover motion for abuse of discretion).

The time for Cole to present evidence of standing – such as affidavits or other documents showing that there was evidence of a reasonable possibility of surplus that could be presented in admissible form – was, at the latest, in pleadings filed before the August 10th hearing.  As noted above, however, in his brief in this Court, Cole points to no place in the record where he presented evidence of standing to the Bankruptcy Court.  Indeed, during the August 10th hearing, he did not even cite the documents discussed above; he apparently is raising the arguments based on those documents for the first time in this Court.  *See In re Grubb & Ellis Co.*, 523 B.R. 423, 442 n.12 (S.D.N.Y. 2014) (recognizing that "'[i]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.' *Bogle-Assegai v. Connecticut,* 470 F.3d 498, 504 (2d Cir.2006)" and that "[i]n accordance with this rule, district courts considering appeals from bankruptcy court refuse to consider arguments that were not properly presented to the bankruptcy court").[11]  It was not the Bankruptcy Court's job, and it is not this Court's job, to search the record for Cole's unspecified "documentary evidence placed on the record both as part of the Trustee's reporting process and the Debtor's list of witnesses and exhibits filed for hearings which were never held," D.E. 26 at 16.  Because Cole fails to show that he presented any facts related to standing to the Bankruptcy Court that might have warranted further exploration in an evidentiary hearing, I find that the Bankruptcy Court did not abuse its discretion in declining to hold such a hearing.

---

[11] In the Bankruptcy Court, Cole filed a Memorandum of Law addressing standing, *see* Bankr. D.E. 1187, which set forth various legal arguments, all of which the Bankruptcy Court rejected and none of which he raises in this Court. That Memorandum of Law makes no reference to the documents discussed above.

### C.  The Merits: The Bankruptcy Court's Denial of Cole's Motions

As noted, when, as in this case, a Chapter 7 debtor fails to show a reasonable possibility of a surplus, he generally lacks standing to challenge actions taken by the Trustee.  Nonetheless, one of Cole's arguments raised in the Bankruptcy Court and in this Court is that the Trustee sold assets that were not part of the estate.  Although the parties do not address the issue and the Court has found no case law on point, Cole might have standing to raise this argument despite his failure to show a reasonable possibility of a surplus, provided he put forth specific facts showing that any particular non-estate assets sold belonged to him and that he thus suffered an injury from the Trustee's actions.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff "must set forth by affidavit or other evidence specific facts" to satisfy burden to show standing).  Therefore, in an abundance of caution, I will address the merits of his motions with respect to this specific issue.

Cole makes two specific assertions about the sale of non-estate property in his briefs: (1) that the "Trustee took non-estate assets belonging *solely* to [his] business partner[,] thus not part of the bankruptcy estate in the first sale," D.E. 26 at 37 (emphasis added); and (2) that "the majority of the items sold by the Trustee in the third sale were post chapter 7 assets," *id.* at 38. Cole does not have standing to make the first argument because it involves assets he describes as belonging "solely" to his business partner.  A litigant lacks standing to assert the rights of third parties, *Warth v. Seldin*, 422 U.S. 490, 499 (1975), unless "three important criteria are satisfied: The litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests."  *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (internal citations and quotation marks

omitted).  Cole makes no attempt to satisfy any of these three requirements in relation to his business partner's property.  Therefore, I will not address this argument as it relates to his motions.  I will, however, address his second point in the merits discussion below.

### 1)  Denial of Motion to Remove

Cole's Motion to Remove, filed under to 11 U.S.C. § 324(a), argued that cause to remove the Trustee existed based on "an illustrative, but not exclusive, list of actions taken, or not taken, by the Chapter 7 Bankruptcy Trustee which would warrant her immediate removal."  Bankr. D.E. 1186 at 2.  According to Cole, this list of actions by the Trustee—including, as is relevant here, the allegation that the auctioneers retained by the Trustee "took items that were not part of the bankruptcy estate" and, "[e]ven after notice that said items were not part of the bankruptcy estate, they sold said items," Bankr. D.E. 1186 at 5 ¶ 12—established cause to remove the Trustee.  *See also, e.g.*, D.E. 26 at 33 ("The antiques that were inventoried were not described at a level of detail sufficient to administer [the estate] which has resulted in the sale of assets not part of the bankruptcy estate.").

11 U.S.C. § 324(a) provides that "[t]he court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause."  11 U.S.C. § 324(a).  "Cause, which is not defined by the Code, must be determined by courts on an ad hoc basis."  *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990).  "In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud."  *Id.*; *see also In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965) (recognizing same).  "[A] bankruptcy court's denial of a motion to remove the Trustee [is reviewed] for abuse of discretion."  *In re Ampal-Am. Israel Corp.*, 691 F. App'x 12, 16 (2d Cir. 2017).

The Bankruptcy Court denied Cole's Motion to Remove "based upon the facts and circumstances of this case, the orders of this Court, the history of this proceeding, the docket and record of this case, and the fact that your arguments did not meet your burden to grant the relief requested in the motion to remove."  D.E. 17 at 50:16-21.

In his briefs, Cole does not identify the non-estate assets he contends the Trustee impermissibly sold, state clearly whether those assets belonged to him (as opposed to his business partner or the LLC bearing his and his business partner's name), or point to evidence in the record supporting his accusation.  Cole was only slightly more specific about the evidence supporting this charge during the August 10th hearing.  When asked by the Bankruptcy Court "what specifically can you point to…that demonstrates that the trustee did not have authority to sell certain assets in accordance with the bankruptcy code or orders of this Court," D.E. 17 at 24:17-21, Cole's attorney listed four lot numbers—Lots 102, 103, 831, and 1025—as examples of sales supporting Cole's claim, D.E. 17 at 27:5-10.  Aside from a last-minute request to swear in Cole's daughter to testify about "items taken that were not properly part of the Chapter 7 [b]ankruptcy estate," *id.* at 18:21-22, 18:9-11, which the Bankruptcy Court denied, *id.* at 18:12-13, in part due to its finding that Cole's daughter "had an opportunity to prove that, and she didn't," *id.* at 18:24-25, he provided no additional support during the hearing for Cole's contention that items in these lots belonged to him or contained non-estate property.  Notably, on appeal, Cole doesn't even mention these lots in his briefs, much less explain how they demonstrate the Trustee should be removed for cause.

In response to Cole's argument, the Trustee asserts that she "did not sell assets she was not authorized to sell," D.E. 27 at 28, and points to hearing transcripts and docket entries in the Bankruptcy Court record—including a Notice of Sale outlining the procedure by which Cole

could raise objections to the third sale of assets, one in which he claimed the Trustee sold non-estate property—and reciting a series of orders authorizing the sale. *Id.* at 28-29; *see* Bankr. D.E. 1183.  The Notice of Sale, issued prior to the third sale and dated December 10, 2020, provided that "the list of Selected Remaining Assets may be amended if [Cole] and/or his authorized agents provide documentation to the Trustee…which establishes, in the sole discretion of the Trustee, that certain items on the list of Selected Remaining Assets are not property of the [Cole's] bankruptcy estate."  Bankr. D.E. 1183 at 2.  Cole did not appeal any of the orders authorizing this sale, *see* D.E. 17 at 16:16-22; instead, he complied with the procedures set forth in the Notice and submitted evidence to the Trustee to establish ownership of certain of the assets.  *See id.* at 16:1-8.  As explained by the Bankruptcy Court at the August 10th hearing, if the evidence Cole submitted "didn't establish ownership, then those assets were deemed to be assets of the estate and then were able to be sold."  *Id.* at 16:8-10.  As a result of this process, "plenty of items were not sold when [Cole's daughter] established through evidence…that assets were not property of the estate."  D.E. 17 at 15:12-15.

In addition, Cole's objection, Bankr. D.E. 1213, to the final application by the auctioneer for compensation and reimbursement of expenses, Bankr. D.E. 1196, related to the third sale makes no mention of any sale of non-estate assets by the Trustee or the Trustee's auctioneer, despite asserting numerous other complaints.  *See* Bankr. D.E. 1213 at 1-5.  This is a striking omission because the auctioneer's final application details the process the auctioneer and the Trustee pursued in compliance with the Notice to identify non-estate property, concluding as follows: "As a result of the foregoing efforts by the Auctioneer and the Trustee, of the 641 lots originally selected, 231 lots were released back to the Debtor and his agents…" before the sale. Bankr. D.E. 1196 at 4.  The Bankruptcy Court issued an order approving the auctioneer's final

application after a hearing and noting that the auctioneer's work had been complicated by "the Debtor routinely – and in contravention of Court orders to the contrary – contesting that the Antiques are property of the Debtor's estate." Bankr. D.E. 1224 at 5. Cole filed no appeal from this order. Given Cole's failure to point to specific evidence supporting his claims and his failure to appeal the Bankruptcy Court's orders relating to the sale and the associated fees and expenses, I find it was not an abuse of discretion for the Bankruptcy Court to deny Cole's Motion to Remove.

Nor was it an abuse of discretion to deny Cole's request for an evidentiary hearing on his Motion to Remove. Cole argues that his "responsibility to show 'cause' supported by specific facts required the opportunity to present the specifics." D.E. 26 at 20. As stated previously, a bankruptcy court is not required to hold an evidentiary hearing in all circumstances. And as discussed, Cole failed to point the Bankruptcy Court to sufficiently specific evidence about the sale of non-estate property to warrant further evidentiary hearings. The Bankruptcy Court also acted reasonably in determining that Cole had had multiple previous opportunities to present such evidence to the Trustee and to object to (and appeal) orders relating to the sale.

### 2) Denial of Motion for Leave to Sue

A party who seeks to bring an action against a trustee "for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court," *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993), must first obtain leave of court to do so. *In re Lehal Realty Assocs.*, 101 F.3d 272 (2d Cir. 1996). The Second Circuit in *In re Lehal Realty Assocs.* explained the leave requirement as follows:

> A trustee in bankruptcy is an officer of the court that appoints him. We have held that there is no question that a trustee in bankruptcy may be held personally liable for breach

22

> of his fiduciary duties…At the same time, the court that appointed the trustee has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties.  A well-recognized line of cases starting with *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881), extends such protection by requiring leave of the appointing court before a suit may go forward in another court against the trustee.

*In re Lehal Realty Assocs.*, 101 F.3d at 276 (internal citations and quotation marks omitted).

"Before leave is granted, a bankruptcy court must determine that the prospective plaintiff has ma[de] out a prima facie case against the trustee." *Bongiovanni v. Grubin*, 2013 WL 5437330, at *6 (E.D.N.Y. Sept. 27, 2013) (internal quotation marks omitted); *see also In re Biebel*, 2009 WL 1451637, at *4 (Bankr. D. Conn. May 20, 2009).[12]  A bankruptcy court's denial of a motion for leave to sue a trustee is also reviewed for an abuse of discretion.  *See, e.g.*, *In re Beck Indus., Inc.*, 725 F.2d 880, 889 (2d Cir. 1984).

Cole did not make any attempt to establish a prima facie case against the Trustee in his motion for leave to sue; instead, Cole simply attached to his motion a draft of the complaint he wished to file in state court.  *See* D.E. 1216 and 1216-1.  He put forth no evidence before the Bankruptcy Court to make a case against the Trustee and, as noted, as to the only issue as to which he might have standing – the sale of non-estate assets – he failed to show that the Trustee did anything wrong.  Therefore, I find that the Bankruptcy Court did not abuse its discretion in denying Cole's motion for leave to sue the Trustee.

## IV.   Conclusion

The Bankruptcy Court's Orders are AFFIRMED.  The Clerk is directed to close this case.


IT IS SO ORDERED.

---

[12] While "[t]here are two exceptions to the *Barton* Doctrine," *In re Biebel*, 2009 WL 1451637 at *4, Cole does not argue that either exception applies in this case.  I therefore will not address them here.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              September 28, 2022